IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MICHAEL HESTER, on behalf of himself**
**and all others similarly situated,**
      **PLAINTIFF**

      **V.**                                    **CASE NO. 5:18-CV-05225-TLB**

**WALMART, INC.,**                                **DEFENDANT**

**MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION**
**<u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

Page No.

Table of Authorities .................................................................................................. iii

Introduction.............................................................................................................. 1

I.     Background .................................................................................................... 1

II.    Summary of the Settlement Agreement ....................................................... 5

III.   The Court Should Grant  Preliminary Approval Of The Settlement. ................................ 7

       A.     The Agreement Satisfies Rule 23(e)(2) Standards................................. 9

            1.     The Representation Was Adequate........................................... 9

            2.     The Settlement Was Negotiated At Arm's Length. ................................. 10

            3.     The Proposed Relief Is Adequate. .......................................... 10

                 i.     The Costs, Risks, And Delay Of Trial And Appeal..................... 10

                 ii.    The Method Of Distributing Relief................................. 12

                 iii.   The Terms Of Any Proposed Award<br>                      Of  Attorney's Fees, Including Timing Of Payment.................... 12

                 iv.   Any Agreement Required To<br>                      Be Identified Under Rule 23(e)(3)................................. 13

             4.     The Proposal Treats Class Members Equitably Relative To Each Other...... 13

       B.     The Factors That Eighth Circuit Courts<br>            Traditionally Use To Assess  Whether The<br>            Settlement Is Fair, Reasonable, And Adequate Are Satisfied. ............................ 14

IV.   The Court Should Grant Conditional Certification Of The Class................................. 15

       A.     The Proposed Class Meets All Of The Rule 23(a) Requirements. ...................... 16

            1.     The Proposed Class Is Likely Ascertainable. ........................... 17

            2.     The Class Is Likely Sufficiently Numerous............................. 18

            3.     There Are Likely Questions Of Law Or Fact Common To The Class. .... 18

            4.     Plaintiff's Claims Are Likely Typical Of The Claims Of The Class........ 19

5.      Plaintiff Has Likely Satisfied The Adequacy Requirement....................... 20

B.     Plaintiff Has Likely Satisfied The Requirements Of Rule 23(b)(3). .................... 21

1.      Plaintiff Has Likely Satisfied the Predominance Requirement. ............... 21

2.      A Class Action Is A Superior
Method For Adjudicating This Controversy............................................. 23

V.      The Poposed Notice Plan Is The Best Practicable. ........................................................... 24

VI.     Plaintiff's Counsel Should Be Appointed Class Counsel. .................................................. 26

VII.    Qualified Settlement Fund ...................................................................................... 27

VIII.   Conclusion ...................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alpern v. UtiliCorp United,*
  84 F.3d 1525 (8th Cir. 1996).................................................................. 20

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................... 21, 24

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds,*
  568 U.S. 455 (2013) ........................................................................ 22

*Ark. Educ. Ass'n v. Bd. of Educ.,*
  446 F.2d 763 (8th Cir. 1971)................................................................ 18

*Baer v. G&T Trucking Co.,*
  No. 03-03460, 2005 WL 563107 (D. Minn. Mar. 1, 2005)................................... 18

*Benacquisto v. Am. Express Fin. Corp.,*
  No. 00-1980, 2015 WL 4661936 (D. Minn. Aug. 5, 2015) ................................. 25

*Boswell v. Panera Bread Co.,*
  311 F.R.D. 515 (E.D. Mo. 2015).......................................................... 22

*Briseno v. ConAgra Foods, Inc.,*
  844 F.3d 1121 (9th Cir. 2017)............................................................ 17

*Chaffin v. Rheem Mfg. Co.,*
  904 F.2d 1269 (8th Cir. 1990)............................................................ 19

*Donaldson v. Pillsbury Co.,*
  554 F.2d 825 (8th Cir. 1977)............................................................. 20

*Ebin v. Kangadis Food Inc.,*
  297 F.R.D. 561 (S.D.N.Y. 2014)........................................................... 23

*Fath v. Am. Honda Motor Co.,*
  No. 18-01549, 2019 WL 6799796 (D. Minn. Dec. 13, 2019)............................Passim

*Fochtman v. DARP, Inc.,*
  No. 18-5047, 2019 WL 406146 (W.D. Ark. Jan. 31, 2019)................................... 17

*Grove v. Principal Mut. Life Ins. Co.,*
  200 F.R.D. 434 (S.D. Iowa 2001) ........................................................ 24

iii

*Halliburton Co. v. Erica P. John Fund*,
    134 S. Ct. 2398 (2014) .................................................................................. 22

*Hammer v. JP's Sw. Foods, L.L.C.*,
    No. 08-0339, 2010 WL 11509076 (W.D. Mo. Sept. 20, 2010) ................................ 25

*Hartley v. Suburban Radiologic Consultants, Ltd.*,
    295 F.R.D. 357 (D. Minn. 2013) ...................................................................... 24

*Huyer v. Buckley*,
    849 F.3d 395 (8th Cir. 2017) ............................................................................ 12

*Huyer v. Wells Fargo & Co.*,
    314 F.R.D. 621 (S.D. Iowa 2016) ..................................................................... 7

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*,
    276 F.R.D. 336 (W.D. Mo. 2011) ..................................................................... 11

*In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*,
    No. 16-02709, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) ................................ 17

*In re Domestic Air Transp. Antitrust Litig.*,
    141 F.R.D. 534 (N.D. Ga. 1992) ...................................................................... 25

*In re GSE Bonds Antitrust Litig.*,
    No. 19-1704, 2019 WL 5848960 (S.D.N.Y.) ..................................................... 15

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................ 22

*In re Lithium Ion Batteries Antitrust Litig.*, No. 13-02420,
    No. 13-02420, 2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) ................................ 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................................. 19

*In re Prempro*,
    230 F.R.D. 555 (E.D. Ark. 2005) ...................................................................... 11

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
    716 F.3d 1057 (8th Cir. 2013) ........................................................................... 7

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
    No. 11-MD-2247, 2012 WL 13065005 (D. Minn. Jan. 19, 2012) ........................... 25

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011) .................................................................... 22

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
   921 F.2d 1371 (8th Cir.1990) .................................................................... 7

*Marshall v. Nat'l Football League*,
   787 F.3d 502 (8th Cir. 2015) .................................................................... 13

*Mednick v. Precor, Inc*.,
   320 F.R.D. 140 (N.D. Ill. 2017) .............................................................. 19

*Mojica v. Securus Techs., Inc.*,
   No. 14-5258, 2018 WL 3212037 (W.D. Ark. June 29, 2018)..................... 11

*Moore v. PaineWebber, Inc*.,
   306 F.3d 1247 (2d Cir. 2002) .................................................................. 23

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................ 25

*Mullins v. Direct Dig., LLC*,
   795 F.3d 654 (7th Cir. 2015) .................................................................... 17

*Paxton v. Union Nat. Bank*,
   688 F.2d 552 (8th Cir. 1982) .............................................................. 18, 20

*Pollard v. Remington Arms Co., LLC*,
   320 F.R.D. 198 (W.D. Mo. 2017) ............................................................ 24

*Randolph v. J.M. Smucker Co*.,
   303 F.R.D. 679 (S.D. Fla. 2014) .............................................................. 19

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
   821 F.3d 992 (8th Cir. 2016) .................................................................... 17

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) .................................................................... 15

*Swinton v. SquareTrade, Inc.*,
   No. 18-00144, 2019 WL 6177, 91 (S.D. Iowa Feb. 14, 2019)...........Passim

*Taylor v. ANB Bancshares*, Inc.,
   No. 08-5170, 2010 WL 4627841 (W.D. Ark. Oct. 18, 2010) .............. 18, 20

*Tyson Foods, Inc. v Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................... 22

*U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ............................................................... 12

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ........................................................... Passim

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 18

**Statutes**

Ga. Code Ann. § 10-1-370 ............................................................................ 2

Ga. Code Ann. § 10-1-390 ............................................................................ 2

**Rules**

Federal Rule of Civil Procedure ("Rule") 12 ................................................ 3
Federal Rule of Civil Procedure ("Rule") 23 .......................................... Passim

**Regulations**

26 C.F.R. § 1.468B ....................................................................................... 27

Treasury Regulation § 1.468B-1 .................................................................. 27

**Other Authorities**

*McLaughlin on Class Actions* § 4:2 (15th ed. 2018) ................................... 18

*Manual for Complex Litigation*  § 21.632 (4th ed.2004) .............................. 4

*Manual for Complex Litigation* § 21.311, at 288 (4th ed. 2004) ................. 25

## <u>INTRODUCTION</u>

Plaintiff Dr. Michael Hester, individually and on behalf of the putative class, respectfully submits this Memorandum of Law in support of his uncontested motion for preliminary approval of a Class Action Settlement Agreement ("Settlement") with Defendant Walmart, Inc. ("Defendant" or "Walmart").

As detailed below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement Agreement because, among other things, it provides substantial benefits to Settlement Class Members while avoiding the risks and costs entailed in further litigation, includes a comprehensive Notice Plan, and satisfies the requirements of Fed. R. Civ. P. 23(e).  Plaintiff therefore respectfully seeks entry of an order that will (1) preliminarily approve the Settlement; (2) direct that notice be given to all Settlement Class members of the Settlement in the form, method, and manner set forth in the proposed Preliminary Approval Order; (3) find that such notices constitute the best notices practicable under the circumstances; (4) schedule various dates by which the Parties and Settlement Class members must take certain action (*e.g.*, submit proof of claims, request exclusion from the Settlement Class, and object to the Settlement) as more fully described in the proposed Preliminary Approval Order; (5) set a hearing date for the final approval of the proposed Settlement, an award of attorneys' fees and expenses, and the grant of a service award to Plaintiff; and (6) appoint Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") and Carney Bates & Pulliam, PLLC ("CBP") as Settlement Class Counsel and Dr. Michael Hester as Settlement Class Representative.

## I.    <u>BACKGROUND</u>

Under its Onn private brand, Walmart sells power banks ("Power Banks") that consumers use to charge their personal electronic devices ("PEDs"), such as laptops, tablets, and

cellphones.  Dkt. No. 34, First Amended Complaint ("FAC"), ¶¶ 15, 21.  The capacity of a

Power Bank is measured in milliampere-hours ("mAh").  *Id.*  The amount of mAh available to

charge PEDs controls how frequently a consumer may charge their PEDs and how much power

is available to the consumer for each charge.  *Id.* ¶ 14.  Therefore, this information is essential to

consumers' purchasing decisions, and Defendant prominently displays the mAh of its Power

Banks on the Power Banks' packaging and on Walmart.com listings.  *Id.* ¶ 15.

Plaintiff alleges that Power Banks' actual capacities are substantially lower than what

Walmart represents.  *Id.* ¶ 3.  Plaintiff supports these allegations with results from a skilled and

experienced testing company.  *Id.* ¶ 17.  Defendant bases its mAh representations, not on the

mAh its Power Banks are capable of delivering to recharge PEDs, but on the internal battery

cells contained within a Power Bank.  *See* Decl. of D. Greg Blankinship, dated June 15, 2020

("Blankinship Dec.") ¶ 6.[1]  Because the internal circuitry in a Power Bank uses power that

cannot be used to recharge a PED, and owing to voltage conversion losses, a Power Bank is

incapable of delivering all of its internal battery capacity.  Expert Report of Dr. Michael Pecht ¶

24 (the "Pecht Report" is at Dkt No. 46-3).  Plaintiff therefore alleges that it is misleading and

deceptive to label a Power Bank with a specific mAh when it is only the internal battery cells

that have that mAh capacity, and Plaintiff's expert Dr. Michael Pecht agrees.  *Id.* at ¶¶ 41-42.

Accordingly, on November 14, 2018, Plaintiff filed a class action complaint against

Defendant, asserting violations of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code

Ann. § 10-1-370, *et seq.*; violations of Georgia's Unfair Business Practices Act Ga. Code Ann. §

---

[1] A Power Bank is comprised of internal rechargeable battery cells and the circuitry required to
safely convert battery voltage for PED use.  *Id.* ¶ 21.

10-1-390, *et seq.*, violations of materially identical state consumer protection statutes; breach of express warranty; and unjust enrichment. Dkt. No. 1 at ¶¶ 29-91.[2]

This case was hard fought. On June 10, 2019, Defendant filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Dkt. Nos. 18-19. After fully briefing the matter, Dkt. Nos. 20, 23-24, Plaintiff filed the FAC, Dkt. No. 34, alleging the same causes of action brought in the Complaint.

On January 23, 2020, following fact discovery (including depositions of both Plaintiff and a corporate representative for Defendant, Brandon Gomez, Senior Quality Manager for Walmart), Plaintiff filed his Motion for Class Certification (Dkt. No. 46). Plaintiff sought to certify four classes: 1) a Rule 23(b)(3) class of Georgia consumers; 2) a Rule 23(b)(3) multistate class of consumers from 11 states; 3) a Rule 23(b)(2) class of Georgia consumers; and 4) a Rule 23(b)(2) multistate class of consumers from 11 states.

In support of certification, Plaintiff proffered two expert reports. Dkt. Nos. 46-3,4. Plaintiff submitted an expert report by Dr. Michael Pecht, who opined that it is deceptive and improper for Defendant to label Power Banks based on internal cell capacities, Dkt. No. 46-3, and Dr. Steve Hamilton, who explained the process for using common econometric data (which Walmart has stipulated can be collected during the merits phase of this litigation) to calculate common class pecuniary damages stemming from Walmart's deceptive mAh misrepresentations. Dkt. No. 46-4 ("Hamilton Report").

---

[2] Walmart does not concede Plaintiff's allegations, nor does it concede all of the factual statements set forth in the motion for preliminary approval and accompanying documents, but, for purposes of this Settlement, Walmart does not object to the filing of the motion, to the certification of class for settlement purposes or to the granting of preliminary approval.

Throughout the duration of the litigation, Plaintiff has actively protected the claims in the interests of the class.  Dr. Hester responded to written discovery requests, preserved his Power Bank, and sat for a deposition.  He also demonstrated an understanding of both the basis of the claims and the role of a class representative.  Blankinship Dec. ¶ 9.

On March 13, 2020, the Parties engaged in a full-day mediation session before mediator Frank Hamlin. That mediation was followed by continued negotiation through the mediator.  It was only after extended arm's-length negotiations that the Parties reached an agreement in principle with respect to a compromise and settlement of this action.  Blankinship Dec. ¶¶ 7-8.

Plaintiff submits that the Court has good cause to grant preliminary approval of this Settlement, which is the product of arm's-length negotiations by experienced counsel aided by an independent mediator.  The resulting Settlement is a fair, reasonable, and adequate resolution of all claims.  Preliminary approval of the Settlement will allow the Parties to notify Settlement Class members of the Settlement and of their rights, among others, to submit a claim, object to the Settlement, or request to be excluded from the Settlement Class.  Preliminary approval does not require the Court to rule on the ultimate fairness of the proposed Settlement, but only to make a "preliminary determination" of the "fairness, reasonableness, and adequacy" of the proposed Settlement.  *See* Federal Judicial Center, Manual for Complex Litigation (Fourth) § 21.632 (2004).  Plaintiff respectfully requests that the Court order notice of the Settlement to be sent to Settlement Class members, as the Settlement, for the reasons discussed further below, is fair, reasonable, and adequate, and the proposed Notice Plan is the best notice practicable under the circumstances and comports with due process.

## II.   <u>SUMMARY OF THE SETTLEMENT AGREEMENT</u>

In exchange for the release of all claims asserted in this action by Plaintiff and the Settlement Class, Defendant has agreed to establish a non-reversionary settlement fund ("Settlement Fund") in the amount of $1,100,000.00 by depositing into escrow within 10 days of the Preliminary Approval Order funds sufficient to cover the Notice and Claims Administration Costs, and within 14 days of the Final Approval Order, the entire Settlement Fund, less any amount previously funded.  Settlement § 11.1.  After notice and administration costs, attorneys' fees and costs, and any service award for Plaintiff the Court approves, the remaining funds will all be proportionally distributed to Settlement Class Members who submit valid claim forms based on the number and model of Power Banks purchased.  Settlement §§ 6.2.4, 11.1. Claimants will not need to present proof of purchase for up to five Power Banks; but if making a claim for more than five Power Banks, Claimants must submit written proofs of purchase for any Power Banks, above five, claimed.  *Id.*  Thus, the proposed Settlement offers substantial benefits to Settlement Class Members and avoids the delay, expense, and risks inherent in litigating claims through trial and appeal. Defendant has also agreed, subject to court approval, to not oppose a service award to Dr. Hester of up to $5,000 and attorney's fees and expenses to be paid from the Settlement Fund.

The Settlement also provides for injunctive relief.  In addition to monetary relief, under the Settlement, Defendants agreed to substantially change the way it markets Power Banks with respect to capacity.  In particular, Defendant has agreed to identify both the rated and actual capacity of its Onn Power Banks on the packaging, so that consumers will know the actual mAh that they can expect to be able to use to charge PEDs.  Settlement § 6.3.

As more fully described in the Declaration of Steven Weisbrot from Angeion Group, the

proposed notice plan ("Notice Plan") provides for a media notice campaign consisting of state-of-the-art internet advertising combined with a custom social media campaign.  The Notice Plan also includes a dedicated settlement website and a toll-free telephone line where Settlement Class Members can view the Summary Notice which informs them about their rights and options pursuant to the terms of the Settlement.  The proposed Summary Notice is attached as Schedule 2.17 to the Settlement Agreement.  Blankinship Dec. Exhibit 1.

The Notice Plan is designed to deliver an approximate 70% reach with an average frequency of 3.1 times. What this means in practice is, separate and apart from the dedicated settlement website and toll-free telephone line (which are difficult to measure in terms of reach percentage, but will nonetheless aid in informing Settlement Class Members of their rights and options under the Settlement), 70% of the putative class will see a digital advertisement concerning the Settlement an average of 3.1 times each.[3]

The claims procedure is simple and convenient.  Each Settlement Class Member will sign and submit a Claim Form (either electronically on the Settlement Website or in paper form) that states the total number and model of purchased Power Banks. The claimant will sign the Claim Form under an affirmation.  The proposed Claim Form is attached the Settlement Agreement as Schedule 6.4.5.

In return for making these Settlement benefits available to all Settlement Class Members, the Class Representatives' claims against Defendant will be dismissed with prejudice, and all Settlement Class Members (other than those who properly request to be excluded from the Class) will release

---

[3]  The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm."  Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges", at 27 (3d Ed. 2010).

and be permanently barred from pursuing any "Released Claims" against Defendant and other "Released Parties" in accordance with the provisions of the Settlement Agreement and the proposed Order and Judgment to be entered upon final approval of the Settlement.  A copy of the proposed Order and Judgment is attached as Schedule 2.15 to the Settlement Agreement.

All Parties have investigated the facts and analyzed the relevant legal issues. While Plaintiff believes the claims asserted have merit, Defendant disputes the factual allegations made by Plaintiff and denies liability with respect to any of the claims alleged by Plaintiff.  Plaintiff has weighed the costs and benefits to be obtained under the Settlement Agreement, including revision of the Power Banks' labels, as balanced against the costs, risks, and delays associated with the continued prosecution of this complex and time-consuming class action and the likely appeals of any rulings in favor of either the Class or Defendant.  As a result, Plaintiff believes that the Settlement provides substantial benefits to the Class and is fair, reasonable, adequate, and in the best interests of Plaintiff and the Class.  Against this backdrop, and in the interest of avoiding protracted and costly litigation, the Parties have agreed to the proposed Settlement.

## III.   THE COURT SHOULD GRANT <u>PRELIMINARY APPROVAL OF THE SETTLEMENT.</u>

A settlement agreement is "presumptively valid."  *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1,* 921 F.2d 1371, 1391 (8th Cir.1990)).  "This is particularly so in this case, where the parties settled the case with the aid of an experienced mediator."  *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017).  Notwithstanding, before granting preliminary approval of a class settlement, the district court must consider whether it is "fair, reasonable, and adequate."  *Van Horn v. Trickey*,

840 F.2d 604, 606 (8th Cir. 1988)

In turn, "[t]he district court must consider a number of factors in determining whether a

settlement is fair, reasonable, and adequate." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.

1988).  Rule 23(e)(2) provides:

> If the proposal would bind class members, the court may approve it only after a
> hearing and only on finding that it is fair, reasonable, and adequate after considering
> whether:
>> (A) the class representatives and class counsel have adequately
>> represented the class;
>> (B) the proposal was negotiated at arm's length;
>> (C) the relief provided for the class is adequate, taking into account:
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing
>>> relief to the class, including the method of processing class-
>>> member claims;
>>> (iii) the terms of any proposed award of attorney's fees,
>>> including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3);
>>> a
>> (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

Rule 23(e)(2) codifies the practices of federal courts in determining whether to approve a

class action.[4]  In fact, "[t]he Eighth Circuit has set forth its own largely overlapping test to

ascertain the fairness and adequacy of a proposed settlement." *Fath v. Am. Honda Motor Co.*,

No. 18-01549, 2019 WL 6799796, at *2 (D. Minn. Dec. 13, 2019).  These "*Van Horn*" factors

include: (i) the merits of the plaintiff's case, weighed against the terms of the settlement; (ii) the

---

[4] The Advisory Committee Notes to the 2018 Amendments indicate that "this process codifies
the 'preliminary approval' process that is customary in class action settlements." *Swinton v.
SquareTrade, Inc.*, No. 18-00144, 2019 WL 617791, at *4 (S.D. Iowa Feb. 14, 2019); *see also*
Advisory Committee's Notes on 2018 Amendments to Fed. R. Civ. P. 23, 324 F.R.D. 904, 915
("Advisory Committee Notes") ("As amended, Rule 23(e)(1) provides that the court must direct
notice to the class regarding a proposed class-action settlement only after determining that the
prospect of class certification and approval of the proposed settlement justifies giving notice.
This decision has been called 'preliminary approval' of the proposed class certification in Rule
23(b)(3) actions.").

defendant's financial condition; (iii) the complexity and expense of further litigation; and (iv) the amount of opposition to the settlement. *Van Horn*, 840 F.2d at 607.

For the reasons set forth below, the Settlement satisfies both the Rule 23(e)(2) and Eighth Circuit guidance regarding preliminary approval.

A.   **The Agreement Satisfies Rule 23(e)(2) Standards.**

1.      **The Representation Was Adequate.**

Dr. Hester and his counsel have adequately represented the Settlement class.  Adequate representation exists when "[t]he Court is not aware of a conflict of interest or anything else that would render the Named Plaintiffs' representation of the proposed settlement class deficient"; "the proposed settlement was the result of arms-length negotiation"; and "the proposed settlement provides adequate relief to the proposed settlement class members." *Fath*, 2019 WL 6799796, at *2, 3, 3.  Here, all of these factors support approval of the Agreement.

Like in *Fath*, there is no "conflict of interest or anything else that would render the named Plaintiffs' representation of the proposed settlement class deficient."  *Fath*, 2019 WL 6799796, at *2; *see also Swinton*, 2019 WL 617791, at *5 ("[T]hey are accomplished litigators with ample experience in class actions and complex litigation.").  As described in their declarations, counsel for Plaintiff are qualified, experienced, and able to conduct the litigation. Blankinship Dec. ¶¶ 11-15, Exhibit 2; Pulliam Dec. ¶¶ 2-6, Exhibit 1.  Counsel diligently investigated these claims before filing the Complaint.  Blankinship Dec. ¶ 4.  Through this process, counsel also learned that no conflicts of interest were present.

The named Plaintiff also provided adequate representation.  Plaintiff worked diligently with counsel throughout the litigation.  Among other things, he provided counsel with information used to draft the complaint and complete discovery.  The discovery process included

responding to written discovery requests, producing documents relating to his purchases of Defendant's Products, and sitting for a deposition.  Blankinship Dec. ¶¶ 5, 9.

Accordingly, Plaintiff and his counsel have adequately represented the settlement class.

### 2.    The Settlement Was Negotiated At Arm's Length.

Second, the Settlement is a product of arm's-length negotiations.  "[I]t was negotiated between experienced, capable counsel knowledgeable in complex class action litigation. And an experienced, capable mediator was also involved."  *Fath*, 2019 WL 6799796, at *3.

### 3.    The Proposed Relief Is Adequate.

Rule 23(e)(3)(C) lists several factors courts "may take into account" in determining whether "the relief provided for the class is adequate."  These factors include: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  For the reasons set forth below, each factor is satisfied.

### i.    The Costs, Risks, And Delay Of Trial And Appeal.

It is well settled that the prosecution of any class action all the way to trial entails substantial costs, risks, and delay.  As Judge Rose held:

> If the settlement fails and this matter proceeds, it will likely take years to resolve, assuming it makes it to trial. Although all of this is subject to the parties' litigation strategies, the matter is likely to include . . . protracted discovery, class certification, and summary judgment. There would likely be interlocutory appeals on some of those issues. The case would then proceed to trial and possibly appeal. All of this would incur substantial legal costs, both in the form of attorney's fees and the general expenses that accompany litigation.

*Swinton*, 2019 WL 617791, at *6.

Here, there will certainly be substantial costs incurred by both parties should this matter

proceed to a trial, not to mention the substantial expenditure of Court resources. While Plaintiff has filed a motion for class certification, Defendant has yet to depose Plaintiff's experts, it will be forced to retain and pay its own class certification experts, and it will incur substantial attorneys' fees to oppose class certification. Should the Court certify a class, the parties will then have to engage in merits discovery and another round of expert discovery. There will also almost certainly be substantial motion practice, including motions to compel discovery and summary judgment motions. And of course a trial will entail substantial costs for all parties.

There is also a significant risk that Plaintiff will not win a verdict at trial. In particular, there is always a substantial risk that a court will not certify a class, particularly given that Plaintiff seeks certification of a multi-state class. *See, e.g.*, *Mojica v. Securus Techs., Inc.*, No. 14-5258, 2018 WL 3212037, at *1 (W.D. Ark. June 29, 2018) (Brooks, J.); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 276 F.R.D. 336, 341 (W.D. Mo. 2011) (denying motion for class certification and holding that "[t]here are many problems with Plaintiffs' proposal, all of which stem from the immense difficulties involved in insuring their conclusions about the vagaries and commonality of state law are correct. The difficulties involved in comparing and contrasting all of the nuances of the laws of fifty-one jurisdictions is undeniably complicated. Several courts have indicated the mere need to engage in such an analysis -- and the exponential increase in the potential grounds for error -- demonstrates a class action is inappropriate."); *In re Prempro*, 230 F.R.D. 555, 566 (E.D. Ark. 2005) (denying class certification and holding that "in multi-state class actions, variations in state law may swamp any common issues and defeat predominance.") (citation and internal alterations omitted).

Finally, there is no question that absent this Settlement, any relief for the class will be delayed as it will be years before a trial is concluded and all appeals exhausted.

### ii. The Method Of Distributing Relief

Class members who make claims will receive a proportionate monetary award depending on the model and number of Power Banks they purchased.  Settlement ¶ 6.2.4.  Following final approval of the settlement, the Claims Administrator will distribute awards to Settlement Class Members by check or by electronic transfer via check, PayPal, Venmo, or ACH deposit.  Weisbrot Dec. ¶¶ 36.  This method of distribution is appropriate.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-02420, 2019 WL 3856413, at *6 (N.D. Cal. Aug. 16, 2019) (granting preliminary approval of settlement and holding that "Rule 23(e)(2)(C) also instructs the Court to take into account the 'effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.'  Plaintiffs' proposed distribution plan will maximize the effectiveness of the distribution of the settlement proceeds . . . claimants . . . [can] receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods.  Epiq also will mail physical checks to Settlement Class Members who have requested to receive compensation in that manner.") (reversed in part on other grounds).

### iii. The Terms Of Any Proposed Award Of Attorney's Fees, Including Timing Of Payment

Rule 23(e)(2)(C)(iii) requires courts to consider "the terms of any proposed award of attorney's fees, including timing of payment."  This requirement is satisfied as long as the fee amount is reasonable, and a fee award of one-third of the settlement fund is reasonable, especially when counsel operates on a contingency basis.  *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (finding an award of one-third of the settlement fund reasonable).  "Indeed, courts have frequently awarded attorneys' fees ranging up to 36% in class actions.  *Id.* (citing *U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)).  Thus, the award of one-third of the settlement fund in this case, during which Plaintiff's counsel worked without compensation, is

reasonable.

The timing of the fee award also supports a finding of adequacy.  In *Fath*, 2019 WL 6799796, at *4, the Court found adequacy, in part, because "the Settlement Agreement provide[d] that this sum will be paid out when an order and judgment approving the Settlement Agreement becomes final."  The same is true here.  Settlement ¶ 11.1.2.

### iv.        Any Agreement Required To Be Identified Under Rule 23(e)(3)

Rule 23(e)(3) requires that the party seeking approval "file a statement identifying any agreement made in connection with the proposal."  Because no such agreement exists, the Court need not consider whether such an agreement should be identified.  *See Swinton*, 2019 WL 617791, at *8.

Accordingly, Plaintiff respectfully requests that the Court find that the relief provided in the Settlement agreement is adequate.

### 4.        The Proposal Treats Class Members Equitably Relative To Each Other.

The final Rule 23(e)(3) factor requires that "the proposal treats class members equitably relative to each other."  Rule 23(e)(2)(D).  "There is no requirement that all class members in a settlement be treated equally."  *Marshall v. Nat'l Football League*, 787 F.3d 502, 510 (8th Cir. 2015).  Here, the Settlement Agreement provides that class members who purchased more expensive Power Bank models will receive a higher proportion of the Settlement Fund, as will Settlement Class Members who purchased multiple Power Banks.  Settlement §§ 6.2.4, 11.1. Accordingly, each class member's individual awards is proportionate to their respective injuries, and all class members are treated equitably relative to each other.

**B.      The Factors That Eighth Circuit Courts Traditionally Use To Assess
        Whether The Settlement Is Fair, Reasonable, And Adequate Are Satisfied.**

In considering whether a settlement is fair, reasonable, and adequate, courts in the Eighth

Circuit consider four separate factors: (i) "the merits of the plaintiff's case, weighed against the

terms of the settlement"; (ii) "the defendant's financial condition; (iii) "the complexity and

expense of further litigation"; (iv) "and the amount of opposition to the settlement." *Van Horn*,

840 F.2d at 607 (8th Cir. 1988).  Here, each factor supports, or is neutral to, approval of the

Settlement Agreement.

As discussed above, Plaintiff faces substantial risks in taking this case to trial.  On the

other hand, the Settlement provides immediate and substantial cash benefits.  Based on the sales

revenue data provided by Defendant for its Onn Power Banks and related expert opinion, it is

most likely that any class award won at trial could be limited to $7,500,000.  Blankinship Dec. ¶

10.  The $1,100,000 obtained through the settlement is a significant portion of that amount,

particularly on light of all the risks, costs, and delays inherent in procuring this class action to

verdict and beyond.  *See Fath*, 2019 WL 6799796, at *4; *Swinton*, 2019 WL 617791, at *9

(finding the merits of the plaintiff's case, weighed against the terms of the settlement, and the

complexity and expense of further litigation both satisfied by the Rule 23(e)(2)(C) adequacy

factors).

The Settlement is also justified because it obtains injunctive relief that cures the alleged

misrepresentation at issue.  The Settlement, which will (with Court approval) be incorporated

into the final approval order, requires Walmart to indicate both the rated and actual capacities of

its Power Banks.  This information allows consumers to make informed choices regarding the

capabilities of Power Banks.  Moreover, this result is all but unprecedented.  One of Walmart's

defenses will likely be that some other power bank sellers use the same rating practices, and

indeed the false labelling of power banks is a widespread practice (as demonstrated by the numerous other cases recently brought against a number of power bank sellers for the same misconduct at issue here).[5]  Wresting a significant label change from a premier retailer like Walmart is a significant achievement that may well lead to substantial changes in the power bank market for the benefit of consumers everywhere.  Such significant injunctive relief augers in favor of approving the Settlement.[6]

The two remaining factors, "the defendant's financial condition . . . and the amount of opposition to the settlement, *Van Horn*, 840 F.2d at 607, are not salient to this determination.  In *Fath*, 2019 WL 6799796, at *4, the Court found the defendant's financial condition neutral to approval, because "there is no indication that Honda is financially incapable of either paying the settlement or continuing with this litigation."  Similarly, there is no indication that Walmart lacks the resources to pursue this litigation.  Thus, this factor is neutral.  Furthermore, as notice has not yet been issued and there has been no opportunity for objectors to oppose the settlement, this factor also has no bearing on the Court' adequacy determination.

Accordingly, the *Van Horn* factors support a finding of adequacy.

## IV.    THE COURT SHOULD GRANT CONDITIONAL CERTIFICATION OF THE CLASS.

Rule 23 allows the Court to conditionally certify the class for settlement purposes.  The Court need only find that "it will *likely* be able to certify the class for purposes of judgment on the proposal."  *Fath*, 2019 WL 6799796, at *4 (citing *in re GSE Bonds Antitrust Litig.*, No. 19-

---

[5] *See, e.g., Mancuso v. RFA Brands*, No. 18-0687 (W.D.N.Y.); *Burgos, et al. v. Sunvalleytek Int'l, Inc.*, No. 18-06910 (N.D. Cal.); *Brady, et al. v. Anker Innovations Limited, et al.*, No. 18-11396 (S.D.N.Y.); *Young, et al. v. Mophie, Inc.*, 18-00827 (C.D. Cal.); *Geske v. PNY Technologies, Inc.*, 19-05170 (N.D. Il.).

[6] *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 (3d Cir. 2011) ("[Objector] fails to acknowledge the injunctive relief offered by the settlement . . . which is intended to benefit all class members regardless of individual monetary recovery.").

1704, 2019 WL 5848960, at *8 (S.D.N.Y.)); *Swinton*, 2019 WL 617791, at *9 ("If a court

determines certification is likely and that it will likely approve the settlement proposal under

Rule 23(e)(2), it may authorize the distribution of notice.").

Pursuant to Rule 23(a), "[o]ne or more members of a class may sue or be sued as

representative parties on behalf of all members only if":

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff seeks the conditional certification of the following class under Rules 23(a) and

23(b)(3) for purposes of effectuating the Settlement:

> All persons who purchased Power Banks during the Class Period within the United States.[7]

The Class Period is November 14, 2014 to the date the Court enters the Preliminary

Approval Order.

The Class meets each of the Rule 23(a) and 23(b)(3) prerequisites for certification

## A.    <u>The Proposed Class Meets All Of The Rule 23(a) Requirements.</u>

As previously noted, there are five Rule 23(a) requirements (numerosity, commonality,

typicality, adequacy, and ascertainability).  The proposed settlement class meets these

requirements.

---

[7] Excluded from the Settlement Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

### 1.      The Proposed Class Is Likely Ascertainable.

An implicit requirement for any class certification inquiry involves a court's assessment as to the ascertainability of the class.  *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc*., 821 F.3d 992, 996-97 (8th Cir. 2016).  However, ascertainability does not require an independent analysis.  "[T]he Eighth Circuit simply adheres to a rigorous analysis of the Rule 23 factors, and while it recognizes that this analysis necessarily entails that a class be 'adequately defined and clearly ascertainable,' the focus of this threshold inquiry is on whether the proposed class definition identifies class members by objective criteria, rather than on the administrative concerns that are already taken into account by the Rule 23(b)(3) factors of predominance and superiority."  *Fochtman v. DARP, Inc*., No. 18-5047, 2019 WL 406146, at *3 (W.D. Ark. Jan. 31, 2019); *cf. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) ("We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement.") (emphasis added)).

In any event, here, ascertainability is likely satisfied.  All class members are purchasers of Onn Power Banks during a particular period of time.  That objective criteria can be ascertained through the submission of sworn statements by class members attesting to their purchase of Power Banks.  In consumer class actions, such as the present case involving low-cost products, it is sufficient for class members to self-identify by submitting sworn claims.  *See, e.g.*, *In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig*., No. 16-02709, 2019 WL 1418292, at *16 (W.D. Mo. Mar. 21, 2019) ("Self-identification affidavits are appropriate in 'consumer class actions concerning low-cost products . . . where class members are unlikely to retain purchasing records and financial incentives to falsify are low.'") (citing 1 *McLaughlin on Class Actions* § 4:2 (15th ed. 2018)); *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 667 (7th Cir.

2015) (in low-cost product cases, "the risk of dilution based on fraudulent or mistaken claims seems low, perhaps to the point of being negligible.").  Accordingly, the proposed class is likely ascertainable.

### 2.      The Class Is Likely Sufficiently Numerous.

Numerosity is also likely satisfied here.  While there are "[n]o arbitrary rules regarding the necessary size of classes," *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982), the Eighth Circuit has found that as few as twenty class members satisfied the numerosity requirement, *see, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (concluding class of twenty satisfied numerosity requirement); *Baer v. G&T Trucking Co.*, No. 03-03460, 2005 WL 563107, at *4 n.2 (D. Minn. Mar. 1, 2005) (noting showing of 40 or more potential class members warrants a finding of the requisite numerosity).  Walmart's records indicate that hundreds of thousands of Power Banks were sold in the states in which the multi-state class members reside.  Blankinship Dec. ¶ 3.  This is more than sufficient to likely satisfy the numerosity requirement.

### 3.      There Are Likely Questions Of Law Or Fact Common To The Class.

"Courts have held that commonality is a 'low hurdle' requirement that is easily surmounted." *Taylor v. ANB Bancshares*, Inc., No. 08-5170, 2010 WL 4627841, at *5–6 (W.D. Ark. Oct. 18, 2010).  The requirement of commonality does not mean "that every question of law or fact be common to every member of the class."  *Paxton*, 688 F.2d at 561.  Multiple common questions are not required in order to establish commonality.  "Even a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations in original, internal quotation marks and citation omitted).

18

The commonality requirement is generally found satisfied in consumer class actions where, as in the present case, all class members were exposed to the same false or misleading statement regarding a product. *See, e.g., In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1096-97 (C.D. Cal. 2015) ("There is no question that all class members were exposed to the product packaging; this suffices to show commonality."); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 151 (N.D. Ill. 2017) ("Courts routinely find that whether a product packaging, seen by all purchasers of the product, is misleading is an issue that satisfies commonality."); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 693 (S.D. Fla. 2014) ("[W]hether the 'All Natural' label is deceptive to an objective consumer is an issue common to all class members.").

Here, all class members were exposed to the same alleged false or misleading statement - - that the Power Banks have a specific mAh rating, when, in fact, the actual mAh output is significantly lower. This results in many common questions of fact or law, including: whether Defendant misrepresents Power Banks' mAh rating; whether misrepresentations about MAh constitute misrepresentations about the standard, quality, or grade of the Power Banks; whether Defendant's conduct was unfair or deceptive in violation of state consumer protection statutes; whether Defendant's representations constitute a breached express warranty; whether Defendant is unjustly enriched; whether class members will be harmed by Defendant's actions; and whether future misrepresentations can be prevented on a uniform basis. Accordingly, the Settlement Class will likely satisfy this requirement.

### 4.    Plaintiff's Claims Are Likely Typical Of The Claims Of The Class.

Rule 23(a)(3) provides that the claims of the class representative must be "typical of the claims of . . . the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is satisfied whenever "'there are other members of the class who have the same or similar grievances as the plaintiff.'" *Chaffin v.*

*Rheem Mfg.* Co., 904 F.2d 1269, 1275 (8th Cir. 1990) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)).  "Factual variations amongst plaintiffs will not preclude class certification 'if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory.'" *City of Pontiac Gen. Employees' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 12-01562, at *4 (W.D. Ark. Sept. 20, 2016) (quoting *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996)).  "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Taylor*, 2010 WL 4627841, at *6.

Here, the claims of Plaintiff and all class members arise out of a singular course of conduct -- substantially identical false and deceptive representatives regarding mAh capacity made in connection with the marketing and sale of Onn Power Banks.  Class members' claims are also premised on the same theories of liability -- that Walmart's conduct constitutes violations of consumer protection laws, breaches of express warranty, and unjust enrichment.  Accordingly, the typicality requirement is likely satisfied.

### 5.      Plaintiff Has Likely Satisfied The Adequacy Requirement.

The focus of the adequacy requirement is whether: "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63.

Here Plaintiff has the same common interests as all class members -- to obtain compensation for unlawful conduct and prevent future unlawful conduct.  *See Swinton*, 2019 WL 617791, at *11.  Notably, Plaintiff and other class members share the same objectives, and their claims arise from the same general factual position.  Plaintiff has no interests adverse to other

class members.  Dkt. No. 46-15, Deposition of Dr. Michael Hester at 42:19-43:9; 44:11-17.  He has vigorously prosecuted this case from the beginning and will continue to do so.  *Id.* at 56:1-58:14.

FBFG and CPB have also vigorously prosecuted this case on behalf of Plaintiff from the beginning and will continue to do so.  FBFG is a leading class action law firm.  It regularly prosecutes consumer claims and its attorneys are regularly appointed as class counsel in such actions.  Blankinship Decl. ¶ 14.  Indeed, FBFG is currently prosecuting several different actions around the country alleging similar claims premised on misrepresentations regarding the mAh capacity of power banks from other manufacturers.  The firm has both the experience and the resources to prosecute this action on behalf of the proposed classes.  A copy of the FBFG firm resume is annexed as Blankinship Decl. Exhibit 2.  CBP is a nationally recognized law firm with a strong presence in Arkansas that has extensive experience in complex class action litigation.  *See* Declaration of Randall Pulliam.  Thus, Plaintiff and class members will be represented by qualified attorneys who are willing and able to vigorously litigate this matter on behalf of the proposed class.

**B.**     **Plaintiff Has Likely Satisfied The Requirements Of Rule 23(b)(3).**

Rule 23(b)(3) provides that questions of law or fact common to class members must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In addition, Plaintiffs must demonstrate that "[a] class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Id.*

**1.**     **Plaintiff Has Likely Satisfied the Predominance Requirement.**

"The Rule 23(b)(3) predominance inquiry" is meant to "test[] whether proposed classes are sufficiently cohesive to warrant an adjudication by representation." *Amchem Products, Inc. v.*

*Windsor*, 521 U.S. 591, 623 (1997). "When determining 'whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings,' but that inquiry should be limited to determining whether, if the plaintiffs' 'general allegations are true, common evidence could suffice to make out a prima facie case for the class.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (citation omitted) (affirming grant of certification in warranty action). Moreover, Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those *questions* will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in the original).

A class action will meet the requirements of Rule 23(b)(3) as long as "one or more of the central issues in the action are common to the class and can be said to predominate." *Tyson Foods, Inc. v Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation and citation omitted); *accord*, *Halliburton Co. v. Erica P. John Fund*, 134 S. Ct. 2398, 2412 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.").

Predominance is likely to be found in cases such as the present action involving consumer claims premised on uniform misrepresentations. *See, e.g.*, *Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 531 (E.D. Mo. 2015), *aff'd*, 879 F.3d 296 (8th Cir. 2018) (certifying fraud class); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559–60 (9th Cir. 2019) (*en banc*) ("We have held that these types of common issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions."); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d at 619 (affirming grant of class certification) ("In the case of warranty and negligence claims premised on a universal and inherent product defect, however,

22

plaintiffs may rely on common evidence to establish a prima facie case because there is no similar individual reliance requirement for such claims."); *Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 569 (S.D.N.Y. 2014) ("[T]he predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class.") (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)).

Here, all class members were harmed by the same misrepresentation that goes to the heart of the quality and nature of the product at issue. The factual basis for the claims of each class member does not vary. Given its conspicuous nature, all purchasers necessarily saw the mAh capacity misrepresentation on product packaging. Indeed, the mAh representation is the only information provided to consumers regarding the products capacity to recharge PEDs. Those purchasers could not have reasonably interpreted a statement such as "2200 mAh" to mean anything other than that the power bank can produce 2200 mAh of power.

Common issues unquestionably predominate in this litigation. Accordingly, the Court should find that the Class satisfies the predominance requirement of Rule 23(b)(3).

## 2.    A Class Action Is A Superior Method For Adjudicating This Controversy.

Rule 23(b)(3) also requires a determination of whether a class action is the superior means to adjudicate the Class's claims. The Rule sets forth a list of relevant factors: class members' interest in bringing individual actions; the extent of existing litigation by class members; the desirability of concentrating the litigation in one forum; and potential issues with managing a class action. Fed. R. Civ. P. 23(b)(3)(A-D). Here, each of the factors weighs in favor of certification.

Each Class member's interest in bringing his or her own case is negligible if not economically irrational, given that the fees and other litigation costs would quickly outstrip any potential recovery. "Because all class plaintiffs are unlikely to bring their own claims for

[Defendant's violations], . . . a class action in this case is best suited to address 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 379 (D. Minn. 2013) (citing *Amchem Products*, 521 U.S. at 617). "Absent class certification, very few Plaintiffs would have the incentive or financial resources to press individual claims against [Defendant]." *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 441 (S.D. Iowa 2001).

Moreover, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of "time, effort and expense, and promote uniformity of decision." Fed.R.Civ.P. 23, Advisory Committee's Notes. *See also Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 208 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) ("[T]he settlement of the class members' claims avoids duplicative litigation, saving Plaintiffs and Defendants from expending resources to adjudicate common legal and factual issues.").

## V.   <u>THE PROPOSED NOTICE PLAN IS THE BEST PRACTICABLE.</u>

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state, in plain and easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(b)(2)(B).

As described in the Declaration of Steven Weisbrot ¶¶ 11-34, Plaintiffs propose to effect notice to the Settlement Class using a media notice campaign consisting of state-of-the-art internet advertising combined with a custom social media campaign.  The Notice Plan also includes a dedicated settlement website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement. Because there are no records that identify individual class members, this is the best notice practicable in the circumstances.  *See In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247, 2012 WL 13065005, at *5 (D. Minn. Jan. 19, 2012) (holding that "[t]he 'best notice practicable' does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable.  In situations such as this action, where Class Members cannot be identified for purposes of sending individual notice, notice by publication is sufficient." (citing *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548–53 (N.D. Ga. 1992); *Manual for Complex Litigation* § 21.311, at 288 (4th ed. 2004)).  *See also Hammer v. JP's Sw. Foods, L.L.C.*, No. 08-0339, 2010 WL 11509076, at *1 (W.D. Mo. Sept. 20, 2010) (holding that "if there is no reasonably possible or practicable way to give individualized notice, notice by publication will suffice.") (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)); *Benacquisto v. Am. Express Fin. Corp.*, No. CIV. 00-1980 DSD, 2015 WL 4661936, at *2 (D. Minn. Aug. 5, 2015) (approving notice by publication only).

Moreover, numerous courts have approved publication-only notice plans designed and administered by the Angeion Group.[8]

---

[8] *Petersen v. CJ America*, No. 14-02570, Dkt. Nos. 51-52 (S.D. Cal. Mar. 23, 25 2016); *In re Ashley Madison Customer Data Security Breach Litigation*, No. 15-02669, Dkt. No. 354 (E.D. Miss. Jul. 21, 2017); *Koller v. Med Foods*, No. 14-02400; Dkt. Nos. 152, 155 (N.D. Cal. Apr. 24,

Further, the proposed Settlement requires the Settlement Administrator to create a Settlement website which will, among other things, contain the Class Notice.  Settlement Schedule 2.17.  The Class Notice, which Settlement Class members can also obtain directly from the Settlement Administrator, provides a detailed description of the proposed Settlement, the requests by Class Counsel and the Class Representatives for an award of fees and expenses and a service award, respectively, and Settlement Class members' various rights and options.

Plaintiffs respectfully submit that, under the circumstances, the Notice Plan constitutes the best practicable notice under Federal Rule of Civil Procedure 23(c)(2)(B).

## VI. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL.

FBFG and CPB should be appointed as Class Counsel.  Rule 23(g) enumerates four factors for evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and types of claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).  All of these factors militate in favor of appointing FBFG and CPB as Class Counsel.  FBFG and CPB are at the forefront of class action litigation concerning false and misleading labeling cases and both firms have been appointed class counsel in numerous cases.  *See* Blankinship Decl. ¶ 14, Exhibit 2; *see also* Pulliam Decl. ¶¶ 2-3, Exhibit 1. Moreover, FBFG has more than sufficient resources to represent the Class.  Blankinship Decl. ¶

---

2018; Jun. 22, 2018); *Schneider v. Chipotle Mexican Grill*, No. 16-02200, Dkt. No. 219 (N.D. Cal. Jan. 31, 2020); *Retta v. Millennium Products*, No. 15-01801, Dkt. No. 115 (C.D. Cal. Jan. 31, 2017); *Vincent v. People Against Dirty PBC and Method Products PBC*, No. 16-06936, Dkt. No. 39 (S.D. Fla. Jan, 9, 2017*); Santiago v. Eternity Floors d/b/a L.A. Hardwood Flooring*, No. BC644600 (Sup Ct. Cal, Los Angeles Cnty. Dec. 5, 2019)

12.  Therefore, Plaintiffs respectfully asks that this Court appoint FBFG and CPB as Class Counsel.

## VII.    QUALIFIED SETTLEMENT FUND

Defendant will transfer the Settlement proceeds into a Qualified Settlement Fund ("QSF"), as described in Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-l.  The Parties propose to use a third-party settlement administration services provider, Angeion Group, to serve as Claims Administrator to administer the claims process and serve as the administrator for the QSF.   Establishing a QSF to receive and hold the settlement proceeds, and to have the funds distributed by the Claims Administrator in accordance with the terms of the Settlement Agreement and the Court's order, meets the requirements of the QSF regulations and would serve the best interests of the Parties.  The QSF will be a segregated bank account opened at a financial institution mutually agreed upon by the Parties.  The QSF will receive the settlement funds from Defendant and will hold that sum, and any earnings thereon, until the Claims Administrator has completed all administration of such funds and income thereon, as well as disbursements to Settlement Class Members, Settlement Class Representative and Class Counsel, and payment of taxes and administrative costs, as more fully set forth in Section 12 of the Settlement Agreement and subject to further approvals of this Court, if required.

## VIII.   CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement, approve the proposed notices and Claim Form, and enter the contemporaneously filed proposed Preliminary Approval Order.

Dated:      White Plains, New York
            June 15, 2020

                                   Respectfully submitted,

                                   By:  */s/  D. Greg Blankinship*

                                   D. Greg Blankinship (*pro hac vice*)
                                   **FINKELSTEIN, BLANKINSHIP,**
                                   **FREI-PEARSON & GARBER, LLP**
                                   One North Broadway, Suite 900
                                   White Plains, New York 10601
                                   Telephone: (914) 298-3290
                                   gblankinship@fbfglaw.com

                                   Randall K. Pulliam
                                   Joseph Henry (Hank) Bates
                                   **CARNEY BATES & PULLIAM, PLLC**
                                   519 West 7th Street
                                   Little Rock, Arkansas 72201
                                   Telephone: (501) 312-8500
                                   Facsimile: (501) 312-8505
                                   rpulliam@cbplaw.com
                                   hbates@cbplaw.com

                                   *Attorneys for Plaintiffs and the Settlement*
                                   *Class*