IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL HESTER, on behalf of himself
and all others similarly situated,
        PLAINTIFF

V.                          CASE NO. 5:18-CV-05225-TLB

WALMART, INC.,                                                      DEFENDANT

## DECLARATION OF D. GREG BLANKINSHIP

I, D. Greg Blankinship, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1.      I am a partner at the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), counsel for plaintiff Michael Hester ("Plaintiff") and, I respectfully submit this Declaration in support of Plaintiff's Motion for Preliminary Approval of the class action settlement (the "Motion").

### Background Of The Litigation And Settlement Discussions

2.      This action alleges that Walmart, Inc. ("Walmart" or "Defendant") engages in false labeling, marketing, and advertising by misrepresenting the charging capabilities of the power banks it manufactures, markets, and sells nationwide under the Onn label ("Power Banks").   Consumers use these Power Banks to charge their personal electronic devices ("PEDs"), such as laptops, tablets, and cellphones.

3.      Walmart's records indicate that each year Walmart sells hundreds of thousands of Onn Power Banks to consumers in United States.

4.      Before initiating this action, Plaintiff exhaustively investigated the viability of the claims against Defendant, identified the relevant products, and obtained examples of the allegedly false and misleading product labels and advertisements.  As part of this investigation, Plaintiff retained a skilled and experienced testing company to test the capacity of the Power Banks.  The results showed that the Power Banks were indeed incapable of delivering the

amount of mAh advertised on packaging and in marketing materials, including online listings and user specification.

5.      The Parties engaged in substantial discovery, serving and responding to requests for production of documents and interrogatories.  Walmart also deposed Plaintiff, and Plaintiff deposed a corporate representative for Defendant, Brandon Gomez, Senior Quality Manager for Walmart, pursuant to Rule 30(b)(6).

6.      Discovery confirmed the results of Plaintiff's investigation.  Instead of basing its mAh representations on the mAh its Power Banks can deliver to charge PEDs, Defendant bases its mAh representations on the capacity of the internal battery cells contained within a Power Bank.

7.      On March 13, 2020, counsel for the Parties participated in a mediation with Frank Hamlin acting as mediator, and, as a consequence of the mediation, agreed to settle all claims in the Litigation, including, but not limited to, a settlement of the claims related to Walmart's sale of the Products on a national class-wide basis.

8.      It was only after conducting extensive discovery and extended arm's length negotiations that the Parties agreed to a settlement.  The Parties then separately negotiated and reached an agreement concerning attorneys' fees, litigation expenses, and a service award payment to Plaintiff.  The Parties formalized the settlement on June 15, 2020.  *See* Class Action Settlement Agreement, attached hereto as Exhibit 1.  Plaintiff played an active role in this entire process.

9.      Throughout the duration of the litigation, Plaintiff has actively protected the claims and the interests of the class.  Dr. Hester responded to written discovery requests, preserved his Power Bank, and sat for a deposition. He also demonstrated an understanding of both the basis of the claims and the role of a class representative.

10.      Based on the sales revenue data provided by Defendant for its Onn Power Banks and related expert opinion, it is most likely that any class award won at trial could be limited to $7,500,000.

**FBFG Has Experienced Consumer Class Action Attorneys**

11.     FBFG will fairly and adequately represent the interests of all class members. FBFG has a proven track record of zealously and successfully advancing the interests of class members in consumer class actions.

12.     FBFG has more than sufficient resources to represent the class.  FBFG's attorneys are highly qualified and have extensive experience in complex civil litigation and consumer class actions, including cases alleging false and deceptive advertising.  We understand the duties imposed upon class counsel in consumer class actions and have proven adept at all phases of litigation, from discovery and motion practice to trial and appeal or settlement.

13.     FBFG's partners have been recognized as "Super Lawyers" and have been selected by their peers as amongst the New York area's "Best Lawyers."  The firm's lawyers have been selected for admission to the Top Trial Lawyers in America™ and to the Litigation Counsel of America's Trial Lawyer Honorary Society, as well as inducted as Fellows in the American Bar Foundation.

14.     FBFG attorneys have successfully litigated complex class actions in federal and state courts across the country, including other cases involving misrepresentations by Power Bank manufacturers and have obtained successful results for clients against some of the world's largest corporations.  FBFG attorneys have also been appointed class counsel numerous times.  A sampling of the Firm's more significant past and present cases can be found in the Firm's Resume, a copy of which is attached.

15.     FBFG attorneys have the requisite knowledge of the substantive and procedural law to prosecute this class action.  FBFG has committed its resources to the vigorous litigation of this case, has identified appropriate claims, and has aggressively pursued discovery to establish the evidence necessary to obtain class certification and to prevail on the merits.

**Exhibits**

16.     True and correct copies of the following are attached:

1.      Exhibit 1: Class Action Settlement Agreement

2.      Exhibit 2: FBFG Firm Resume

3

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2020 in White Plains, New York.

/s/ D. Greg Blankinship
D. GREG BLANKINSHIP

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
D. Greg Blankinship (*pro hac vice*)
One North Broadway, Suite 900
White Plains, New York 10601
gblankinship@fbfglaw.com
Telephone: (914) 298-3290
Facsimile: (914) 522-5561

# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT

### 1. PREAMBLE

1.1     This Class Action Settlement Agreement is made and entered into as of the dates of Execution set forth below, individually and on behalf of the Settlement Class Representative, Settlement Class Members, and Walmart Inc. ("Walmart").

### 2. DEFINITIONS

2.1     **"Agreement"** means this Class Action Settlement Agreement.

2.2     **"Approved Claimant"** means any Claimant whose Claim is approved by the Claims Administrator.

2.3     **"Attorneys' Fees and Litigation Expenses"** means the attorneys' fees and litigation expenses to be requested by Class Counsel, subject to Court approval in accordance with this Agreement.

2.4     **"Claim"** means a claim submitted by a Settlement Class Member by way of a Claim Form to receive a payment in accordance with the procedures set forth in this Agreement.

2.5     **"Claim Filing Deadline"** means the date by which Settlement Class Members must submit a Claim Form to the Claims Administrator in accordance with this Agreement in order to be eligible to receive a payment in accordance with this Agreement.

2.6     **"Claim Form"** means a form substantially in the form agreed and attached to the Agreement as Schedule 6.4.5, which Settlement Class Members shall use to submit Claims to the Claims Administrator.

2.7     **"Claimant"** means any Settlement Class Member who submits a Claim.

2.8     **"Claims Administration Costs"** means the costs which Class Counsel has agreed to pay to the Claims Administrator for the purposes of administering the Claims process and performing other settlement notice and administration functions in accordance with this Agreement, subject to Court approval.

2.9     **"Claims Administrator"** means, subject to Court approval, Angeion Group, the entity which shall perform certain notice and claims administration functions in accordance with this Agreement.

1

2.10    ***"Class Counsel"*** means D. Greg Blankinship and Todd S. Garber of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Randall K. Pulliam of Carney Bates & Pulliam, PLLC.

2.11    ***"Class Settlement Amount"*** means the maximum amount of money that Walmart will be obligated to pay under this Settlement, namely $1,100,000.00, as provided for in this Agreement. Under no circumstances shall Walmart be obligated to pay more than the Class Settlement Amount in connection with this Settlement.

2.12    ***"Court"*** means the United States District Court, Western District of Arkansas, Fayetteville Division, and any appellate court that may review any orders entered by the United States District Court, Western District of Arkansas, Fayetteville Division, related to this Settlement.

2.13    ***"Days"*** as used to calculate dates for events provided herein (unless the date is expressed in terms of "business days") has the same meaning as used when calculating days under the Federal Rules of Civil Procedure.

2.14    ***"Execution"*** means the signing of this Agreement by all signatories hereto.

2.15    ***"Final Judgment and Order of Dismissal"*** means the Final Judgment and Order of Dismissal approving the Settlement and dismissing the Litigation with prejudice as against Walmart, substantially in the form of the proposed Final Judgment and Order of Dismissal attached hereto as Schedule 2.15, which this Agreement contemplates will be entered and approved by the Court.

2.16    ***"Litigation"*** means the case of *Michael Hester, individually and on behalf of others similarly situated v. Walmart, Inc.,* United States District Court, Western District of Arkansas, Fayetteville Division, which was assigned Case No. 5:18-cv-05225-TLB.

2.17    ***"Notice"*** means the document substantially in the form of the document attached hereto as Schedule 2.17, which has been agreed to by the Parties subject to Court approval, and which shall be used for purposes of giving notice to the Settlement Class Members.

2.18    ***"Notice Period"*** means the minimum period of time during which Notice will be made as approved by the Court.

2.19    ***"Notice Plan"*** means the document describing the various methods by which notice will be provided to Settlement Class Members.  Subject to consultation with the Claims Administrator, the Notice Plan will be substantially in the form attached as Schedule 2.19.  The Notice Plan will be implemented no later than forty-five (45) days after the Court has

2

granted preliminary approval.

2.20    *"Opt Out Letter"* means a request by a Settlement Class Member to be excluded from this Settlement using the procedures set forth in this Agreement.

2.21    *"Parties"* means the Settlement Class Members and Walmart.

2.22    *"Person"* means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

2.23    *"Product"* means an Onn brand power bank, including but not limited to the following models: 1400 mAh; 1800 mAh; 2000 mAh; 2200 mAh; 3350 mAh; 4000 mAh; 4400 mAh; and, 6700 mAh.

2.24    *"Programmatic Relief"* means the packaging change described in Section 6.3.

2.25    *"QSF"* means the Qualified Settlement Fund to be set up in accordance with this Agreement.

2.26    *"Releasing Settlement Class Members"* means the Settlement Class Members, other than those who submit Opt-Out Letters.

2.27    *"Settlement"* means the compromise and settlement of the Litigation as contemplated by this Agreement.

2.28    *"Settlement Class"* means the following: all Persons who purchased any Product during the Settlement Class Period. Excluded from the Settlement Class are Walmart, including any parent, subsidiary, affiliate or controlled person of Walmart; Walmart's officers, directors, agents, employees, and their immediate family members, as well as the judicial officers assigned to the Litigation and members of their staffs and immediate families.

2.29    *"Settlement Class Member Payment Amount"* means the portion of the Class Settlement Amount which shall be used to make payments to Approved Claimants in accordance with this Agreement.

2.30    *"Settlement Class Member Released Claims"* means the claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liabilities that are released, acquitted and discharged by the Settlement Class Members pursuant to this Agreement.

3

2.31   **_"Settlement Class Members"_** means the Settlement Class Representative and all members of the Settlement Class.

2.32   **_"Settlement Class Period"_** means the period of time from January 1, 2013 to the date on which the Court grants preliminary approval.

2.33   **_"Settlement Class Representative"_** means Dr. Michael Hester.

2.34   **_"Settlement Class Representative Service Payment"_** means the amount Class Counsel shall request be paid to the Settlement Class Representative in accordance with this Agreement.

2.35   **_"Settlement Effective Date"_** means the first day after the last of the following occurrences:

> 2.35.1. The date that the time to appeal or seek permission to appeal of the entry of the Final Judgment and Order of Dismissal approving the Settlement and dismissing this Litigation with prejudice as to Walmart has expired with no appeal having been taken or sought; or

> 2.35.2. If an appeal has been taken or sought, the latest of: (i) the date that the Final Judgment and Order of Dismissal is finally affirmed by an appellate court with no possibility of subsequent appeal therefrom; or (ii) the date that the appeal(s) therefrom are finally dismissed with no possibility of subsequent appeal; or (iii) if remanded to the Court or to a lower appellate court following an appeal, the date that the Final Judgment and Order of Dismissal is entered by the Court after remand and the time to appeal or seek permission to appeal of the entry of that Final Judgment and Order of Dismissal has expired with no further appeal having been taken or sought. If further appeal is sought after a remand, the time periods in this subsection shall apply.

> 2.35.3. The provisions and deadlines in this Section apply even if there are no objections to the Settlement.

2.36   **_"Settlement Website"_** means the website created and managed by the Claims Administrator which will provide Settlement Class Members with access to the Notice, the online Claim Form, and other information regarding the Settlement.

2.37   **_"Walmart Released Parties"_** and **_"Walmart"_** mean Walmart Inc., and each of its current and former parents, subsidiaries, affiliates, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, partners, suppliers, contractors, attorneys,

representatives, and shareholders.

## 3.  RECITALS

3.1     On November 14, 2018, Plaintiff Michael Hester brought a putative class action against Walmart in the United States District Court, Western District of Arkansas, Fayetteville Division, which was assigned Case No. 5:18-cv-05225-TLB.  On May 16, 2019, Plaintiff filed a First Amended Complaint in the Litigation.  In the First Amended Complaint, Plaintiff alleged that Walmart engaged in unjust, unfair, and deceptive practices in misrepresenting the capacity of the Products. Plaintiff alleged Walmart is liable for breach of express warranty, violation of states' deceptive trade practices acts and unfair business practices acts, violation of states' consumer protection statutes, and unjust enrichment, and alleged Walmart should be required to accurately label the Products and pay restitution to Plaintiff and putative class members relating to the sale of the Products, all as more particularly set forth in the First Amended Complaint.  Walmart denies all of Plaintiff's allegations, as set forth in its Answer in the Litigation as well as in other Motions and Briefs filed in the Litigation. On January 28, 2020, the putative Plaintiff moved to certify classes of consumer residents of Georgia and residents of multiple states who purchased from Walmart the Products.

3.2     On March 13, 2020, counsel for the Parties participated in a mediation with Frank Hamlin acting as mediator, and, as a consequence of the mediation, agreed to settle all claims in the Litigation, including, but not limited to, a settlement of the claims related to Walmart's sale of the Products on a national class-wide basis.

3.3     The Settlement Class Representative believes this Litigation is meritorious. Class Counsel represents that they have conducted a thorough investigation, over more than 2 years, into the facts of this case, and have diligently pursued an investigation of the Settlement Class Members' claims against Walmart, including but not limited to: (i) reviewing relevant documents; (ii) researching the applicable law and the potential defenses; (iii) conducting a Fed. R. Civ. P. 30(b)(6) deposition; (iv) hiring and consulting with experts; (v) developing the argument for class certification; (vi) advocating for the rights of the Settlement Class; and, (vii) defending against a motion to dismiss. Based on their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class Members in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Walmart, trial risk, and appellate risk.

3.4     Walmart denies any liability or wrongdoing of any kind associated with the claims alleged and contends that this Litigation is not appropriate for class action treatment (outside of this proposed Settlement) pursuant to the Federal Rules of Civil Procedure or any other federal or state rule, statute, law, or provision. Walmart asserts that the Litigation fails to meet the prerequisites necessary for class action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because it

contends that the need to determine individualized issues makes the Litigation unmanageable consistent with due process. Walmart further asserts that it has complied with all applicable provisions of federal and state statutory law and common law. Walmart further states that, despite its good faith belief that it is not liable for any of the claims asserted, and despite its good faith belief that certification is not appropriate, Walmart will not oppose the Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement.  Other than for purposes of this Settlement, Walmart does not waive its objections to certification of the Settlement Class, or any other class, in this Litigation as a litigation class.

3.5     As of the Settlement Effective Date, the entry of Final Judgment in this Litigation shall dismiss with prejudice all claims which were or which could have been alleged in the Litigation against Walmart, with the exception of any claims which might be retained by Settlement Class Members who exclude themselves from the Settlement, if any, in accordance with the Opt Out process described in this Agreement. Walmart shall retain any existing defenses to such excluded claims. The Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement, to effectuate its terms, and, to the extent of the obligations set forth herein, to dismiss this Litigation against Walmart with prejudice.

3.6     Each of these Recitals is incorporated into this Agreement as if fully set forth herein.

## 4.  CERTIFICATION OF THE SETTLEMENT CLASS

4.1     Class Counsel shall request that the Court enter an order regarding conditional settlement class certification in this Litigation to cover the Settlement Class Period and all claims and individuals covered by this Settlement.  The form of class certification order shall, subject to Court approval, expressly state that the Parties and Class Counsel agree that certification of the Settlement Class is a conditional certification for settlement purposes only, and that Walmart retains its right to object to certification of this Litigation, or any other class action, under Federal Rules of Civil Procedure Rule 23 or any other applicable rule, statute, law, or provision.

4.2     Any certification of the Settlement Class is a conditional certification for settlement purposes only, and if for any reason the Court does not grant final approval of the Settlement, or if final approval is not granted following the appeal of any order by the Court, or if for any reason the Settlement Effective Date does not occur, the certification of the Settlement Class for settlement purposes shall be deemed null and void, and each Party shall retain all of their respective rights as they existed prior to execution of this Agreement, and neither this Agreement, nor any of its accompanying exhibits or any orders entered by the Court in connection with this Agreement, shall be admissible or used for any purpose in this Litigation.

4.3     Any certification of the Settlement Class for settlement purposes is in no way an admission by Walmart that class certification is proper in this Litigation or any other litigation

against Walmart. Moreover, Walmart continues to assert that this Litigation fails to meet the prerequisites necessary for class action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues makes the case unmanageable consistent with due process. The Parties and Class Counsel further agree that, other than to effectuate the Settlement of this Litigation in this jurisdiction, the certification of the Settlement Class for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, are only intended to be used under the specific facts and circumstances of this case and are not intended to be used in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding against Walmart.

## 5. SETTLEMENT CLASS

5.1   The Parties shall request that the Court enter a certification order and certify for settlement purposes only the Settlement Class as defined in this Agreement.

5.2   This Settlement is conditioned on the Court's certifying the Settlement Class for settlement purposes.

5.3   Walmart and Class Counsel may request that the Court certify additional settlement subclasses if appropriate.

## 6. TERMS OF SETTLEMENT

6.1   Subject to the other terms and conditions of this Agreement, and subject to Court approval, Walmart agrees to pay a Class Settlement Amount of $1,100,000.00. Under no circumstances shall Walmart be obligated to pay more than the Class Settlement Amount in connection with this Settlement.

6.2   The Class Settlement Amount shall be paid out as follows:

6.2.1   Reasonable Attorneys' Fees and Litigation Expenses. Class Counsel shall apply to the Court for an award of reasonable Attorneys' Fees and Litigation Expenses. Walmart takes no position on the amounts to be sought by Class Counsel for an award of Attorneys' Fees and Litigation Expenses, but does not object to a reasonable award of Attorneys' Fees and Litigation Expenses sought in accordance with this Agreement.

6.2.2   Reasonable Class Representative Service Payment. Class Counsel shall apply to the Court for a reasonable Settlement Class Representative Service Payment for the Settlement Class Representative. Walmart takes no position on the amount to be sought by Class Counsel for the Settlement Class Representative Service Payment, but does not object to a reasonable award of a Settlement Class Representative Service Payment sought in accordance with this Agreement. The denial by the Court of any such application by Class Counsel shall not affect the validity and enforceability of the settlement and shall not

be a basis for anyone to seek to void the Settlement.

6.2.3    Costs of Notice and also Claims Administration Costs incurred in accordance with this Agreement.

6.2.4    Payments to Settlement Class Members shall consist of the amount remaining up to the Class Settlement Amount, which shall be allocated as follows:

> 6.2.4.1.    The amount of each Settlement Class Member Payment Amount will be determined by: 1) deducting from the Class Settlement Amount the sum of the Attorneys' Fees and Litigation Expenses and Class Representative Service Payment and costs of Notice and Claims Administration Costs to arrive as the "Remaining Class Settlement Amount"; 2) assigning a claim value ("Claim Value") to each Settlement Class Member who makes a claim, such Claim Value to be calculated by adding 1 point for each 1400 or 1800 mAh Product the Settlement Class member purchased, 2 points for each 2000, 2200, or 3350 mAh Product the Settlement Class Member purchased, and 3 points for each 4000, 4400, or 6700 mAh Product the Settlement Class Member purchased; 3) the Remaining Class Settlement Amount will be divided by the total number of points assigned to all Claim Values to arrive at the "Award Point Value"; and 4) Settlement Class Member will receive an award equal to their Claim Value multiplied by the Award Point Value, which will constitute the Settlement Class Member Payment Amount for Approved Claimants.

> Walmart takes no position as to the allocation formula.  Further, payment of any Settlement Class Member Payment Amount shall not be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Walmart. Walmart denies liability for any alleged wrongdoing.

6.3    After the Litigation was commenced changes were implemented to the packaging of the Products including displaying the "rated capacity" and "actual capacity" of the Product. This or other similar language demonstrating a difference between the mAh of the internal capacity and the output of the Product will be incorporated into future packaging of the Product. It is Plaintiff's position that these changes provide ongoing benefits to the Settlement Class Members. This Agreement does not prohibit Walmart selling any remaining inventory of the Product with the prior packaging, and the Parties contemplate and expressly agreed that all remaining inventory of the Product with the prior packaging can be sold by Walmart pursuant to this Agreement. If Class Counsel or any Settlement Class Member believes at any point in time that Walmart's packaging of the Product does not comply with this Section 6.3, they shall provide Walmart with written notice of the specific facts and circumstances of any alleged non-compliance; Walmart will thereafter have 90 days after notice to bring its practices in compliance with this Section 6.3 and will not be deemed to be in breach of this Agreement if it does so within that 90-day period.

6.4    The Claims Administrator will manage the claims process in cooperation with Class Counsel and Walmart's counsel, and in accordance with the following parameters:

6.4.1    An Approved Claimant shall be entitled to receive the individual Settlement Class Member Payment Amount in accordance with the allocation as set forth in this Agreement. Payment of any Settlement Class Member Payment Amount shall not be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Walmart. Walmart denies liability for any alleged wrongdoing.

6.4.2    Claims shall be made by submitting a Claim Form online through the Settlement Website, provided, however, that the Claims Administrator will make an alternative Claim submission process available upon request by a Claimant as reasonably practicable, such as by way of a mailed Claim submission. Settlement Class Members who submit a claim for more than 5 Products must submit adequate written proof of purchase for any claimed Products in excess of 5.

6.4.3    A Claim Form shall be approved if timely and valid.

6.4.4    To be timely, a Claim Form must be submitted to the Claims Administrator by the Claim Filing Deadline set forth in the Notice.

6.4.5    The Claim Form shall be substantially similar to the form attached as Schedule 6.4.5 to this Agreement.

6.4.6    To be valid, the Claim Form must be completed in full and be signed under penalty of perjury. Such a signature may be submitted electronically in a manner determined by the Claims Administrator that is consistent with general claims administration practice.

6.4.7    Audit rights: Within fourteen (14) days of the Claims Filing Deadline, the Claims Administrator shall provide counsel for the Parties with a report that contains the information provided in the Claim Forms and its determination whether or not each Claim should be approved or denied. Original Claim Forms will also be made available to counsel for the parties upon request. Within thirty (30) days of having received the report of proposed approved and denied Claims from the Claims Administrator, Class Counsel and Walmart's counsel shall meet and confer regarding any issues that either Class Counsel or Walmart believes need to be raised with the Claims Administrator regarding the Claims. Class Counsel and Walmart's counsel agree to use their best efforts to resolve any disputes. If necessary, the Parties may request that the Claims Administrator conduct reasonable follow up with particular Claimants in the event of questions regarding the information provided by any Claimant or take other reasonable steps as agreed to by the Parties.

9

6.4.8    Subject to the audit rights set forth in Section 6.4.8, the Claims Administrator shall distribute Settlement Class Member Payment Amounts to Approved Claimants within a reasonable time after the Settlement Effective Date. The Claims Administrator shall cooperate with the Parties to ensure any funding or account structure is in place prior to distribution.

## 7.   NOTICE TO THE CLASS

7.1    The Claims Administrator shall provide notice of the Settlement to Settlement Class Members in accordance with the Notice Plan, including the content of advertisements and social media units, to be agreed upon by the Parties (such agreement not to be unreasonably withheld) and as approved by the Court.

7.2    Subject to Court approval, the Notice to be provided shall be in substantially the form of the attached Schedules 2.17 and 2.19.

7.3    The Notice Period, subject to Court approval, is 60 days.

7.4    Walmart may terminate this Settlement if the Court requires individual, direct notice to Settlement Class Members. If Walmart exercises its option to terminate due to the Court's requiring individual, direct notice, it shall provide Class Counsel with written notice of its election, at which point the Agreement is void in accordance with Section 18.

## 8.   CAFA NOTICE

8.1    Walmart shall provide notice to the appropriate governmental authorities in accordance with CAFA.

## 9.   OPT-OUT PROCESS

9.1    A Settlement Class Member who wishes to be excluded from this Settlement, and from the release of claims pursuant to this Settlement, shall submit an Opt-Out Letter. For an Opt-Out Letter to be accepted it must be timely and valid. To be timely it must be submitted by the Claim Filing Deadline. To be valid, the Opt-Out Letter shall contain a statement that the Settlement Class Member requests to be excluded from the Class and must also be signed by the Settlement Class Member and dated in accordance with the instructions in the Notice. The Claims Administrator may invalidate mass-generated opt outs.

9.2    Settlement Class Members may not submit both an Opt-Out Letter and a Claim Form. If a Settlement Class Member submits both an Opt-Out Letter and a Claim Form, the Claim Form will govern and the Opt-Out Letter will be considered invalid.

9.3    The Claims Administrator shall maintain a list of persons who have submitted Opt-Out Letters and shall provide such list to the Parties on a weekly basis.

9.4     Walmart shall have the right to terminate the Settlement in the event that the number of valid and timely Opt-Outs from the Settlement exceeds 750, provided that election is made, in writing, within 10 days of being advised by the Class Administrator that the number of valid and timely Opt-Outs exceeds 750.  In the event that the Settlement is terminated in accordance with this subsection, the provisions of Section 18 of this Agreement apply.

## 10. OBJECTION PROCESS

10.1     A Settlement Class Member who has not submitted an Opt-Out Letter by the Claim Filing Deadline, but who wishes to object to  the Settlement  must  notify the Court of the objection, in writing, as set forth in Section 10.2 below.

10.2     The Parties will request that the Court enter an order requiring any Settlement Class Member who wishes to be heard orally at the final approval hearing, or who wishes for any objection to be considered, to file a written notice of objection with the Court by the objection date contained in the Notice, as well as any notice of intention to appear at the final approval hearing.  The objection must also be served on counsel of record by the objection date.  To state a valid objection to the Settlement, an objecting Settlement Class Member must personally sign the objection and provide the following information in connection with and as part of any objection:  (i) full name, current address, and current telephone number; (ii) documentation sufficient to establish membership in the Settlement Class; (iii) a statement of the position the objector wishes to assert, including the factual and legal grounds for the position and objection; and (iv) copies of any other documents that the objector wishes to submit in support of his/her/its position. In addition, the objecting Settlement Class Member must identify any previously filed objections to class action settlements filed by the Settlement Class Member and his/her/its counsel in any state or federal court.  This listing must contain (i) the name of the case; (ii) the case number; (iii) the court in which the objection was filed; and (iv) the outcome of the objection.  Subject to approval of the Court, any objecting Settlement Class Member may appear in person or by counsel at the final approval hearing held by the Court to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate, or to object to any petitions for attorneys' fees, service awards, and reimbursement of reasonable litigation costs and expenses.  To appear at the final approval hearing held by the Court, the objecting Settlement Class Member must file with the clerk of the Court, and serve on all counsel designated in the Notice, a notice of intention to appear by the objection deadline or on such other date that may be set forth in the Notice.  The notice of intention to appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member (or his/her/its counsel) will present to the Court in connection with the final approval hearing. Any Settlement Class Member who does not provide a notice of intention to appear in complete accordance with the deadlines and other specifications set out in the Notice, and who has not filed an objection in complete accordance with the deadlines and other specifications set forth in this Settlement and the Notice, subject to the approval of the Court, will be deemed to have waived any objections to the Settlement and can be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

10.3   Settlement Class Members who do not file and serve timely written objections in accordance with the procedures set forth in this Agreement have waived any objections to the Settlement and are forever foreclosed from making any objection (whether by appeal or otherwise) to the settlement, or any aspect of the settlement, including, without limitation, the fairness, reasonableness, or adequacy of the proposed settlement, or any award of attorneys' fees or reimbursement of costs and expenses or service awards.

## 11. DISTRIBUTION PROCESS

11.1   The Class Settlement Amount shall be funded through a QSF in accordance with this Agreement.  The timing of the payments by Walmart to the QSF is:

11.1.1 Within ten (10) business days following the date on which the Court enters an order granting preliminary approval of the Settlement, or within ten (10) business days of the date on which Walmart received the information needed to transfer funds to the QSF, whichever is later, Walmart shall transfer the Claims Administration Costs to the QSF, which shall distribute that amount to the Claims Administrator. In the event that the Settlement Effective Date does not occur, any amounts actually used by the Claims Administrator for notice and administration shall not be refundable to Walmart.  If, however, Walmart has paid monies into the QSF for Notice and Administration Costs that have not been used by the Claims Administrator, and the Settlement Effective Date does not occur, those amounts not used by the Claims Administrator shall be refundable to Walmart.

11.1.2 Within fourteen (14) business days following the Settlement Effective Date, Walmart shall transfer to the QSF the amount of the balance of the Class Settlement Amount, as reduced by the Claims Administration Costs.  The QSF shall distribute these amounts as awarded by the Court.  Class Counsel shall provide the QSF with the information regarding to whom the Attorneys' Fees and Litigation Expenses and Class Representative Service Payments should be distributed.

## 12. QUALIFIED SETTLEMENT FUND

12.1   As required under this Agreement, Walmart shall transfer the required portions of the Class Settlement Amount to a bank account set up and administered by the Claims Administrator as a Qualified Settlement Fund as described in Treasury Regulation § l.468B-1, 26 C.F.R. § l.468B-l. The Parties jointly shall, and shall cause the Claims Administrator to, take such steps as shall be necessary to qualify the QSF under §468B of the Internal Revenue Code, 26 U.S.C. § 468B, and the regulations promulgated pursuant thereto. Walmart shall be considered the "transferor" within the meaning of Treasury Regulation §1.468B-l(d)(l). The Claims Administrator shall be the "administrator" within the meaning of Treasury Regulation § l.468B-2(k)(3). The Parties shall cooperate in securing an order of the Court to establish the QSF in accordance with the terms hereof in conjunction with

its preliminary approval of the Settlement and Notice as described in the Agreement. The Court shall retain jurisdiction over the administration of the QSF. Walmart shall supply to the Claims Administrator and to the Internal Revenue Service the statement described in Treasury Regulation § l.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Walmart makes a transfer to the QSF. It is intended that the transfers to the QSF will satisfy the "all events test" and the "economic performance" requirement of § 461(h)(1) of the Internal Revenue Code and Treasury Regulation § 1.461-l(a)(2). Accordingly, Walmart shall not include the income of the QSF in its income. Rather, the QSF shall be taxed on its modified gross income, excluding the sums transferred to it, and shall make payment of resulting taxes from its own funds. In computing the QSF's modified gross income, deductions shall be allowed for its administrative costs and other deductible expenses incurred in connection with the operation of the QSF, including, without limitation, state and local taxes and legal, accounting, and other fees relating to the operation of the QSF.

12.2    Upon establishment of the QSF, the Claims Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

12.3    If requested by either Walmart or the Claims Administrator, the Claims Administrator and Walmart shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-l(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

12.4    Following its deposits as described in this Agreement, Walmart shall have no responsibility, financial obligation, or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of Claims and Opt-Out Letters, the allowance or disallowance of claims by Claimants, payments to Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and other taxes imposed on the QSF or its disbursements, or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, because it is agreed that such deposits shall fully discharge Walmart's obligations to Settlement Class Members and Class Counsel and for expenses of administration in respect to the disposition of the Class Settlement Amount hereunder. Rather, the Claims Administrator shall have sole authority and responsibility for the administration of such funds and income thereon, disbursement to Claimants and Class Counsel, and payment of taxes and administrative costs in accordance with the provisions hereof, subject only to the rights of Walmart or Class Counsel to seek redress for any breach of the terms hereof.

12.5    The Claims Administrator shall cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § 1.468B-2(l)(2)(ii). The Claims Administrator may, at the expense of the QSF,

retain legal counsel and an independent, certified public accountant to consult with and advise the Claims Administrator with respect to the preparation and filing of such materials and the federal, state and local tax compliance of the QSF. Either Walmart or the Claims Administrator, independently or jointly, may, but are not required to, apply to the Internal Revenue Service and/or any applicable state taxing authority for an advance ruling as to any issue pertinent to the qualification of the QSF under Internal Revenue Code § 468B and Treasury Regulations promulgated thereunder, its tax status under applicable state law, and/or its tax payment, reporting and withholding duties, so long as the Parties are reasonably satisfied that such application and ruling will not compromise the confidentiality of settlement evidenced herein as required by this Agreement. Subject to any contrary holdings in any such ruling, Settlement Class Members shall be responsible for payment of appropriate federal, state, and local income taxes on any claim paid out pursuant to this Agreement. The Parties agree that no portion of any distributions from the QSF to the Settlement Class Members is made in satisfaction of any excluded liability as described in Treasury Regulation § 1.468B-1(g), related to Qualified Settlement Funds.

12.6   The taxable year of the QSF shall be the calendar year in accordance with Treasury Regulation §1.468B-2(j). The QSF shall utilize the accrual method of accounting within the meaning of § 446(c) of the Internal Revenue Code.

12.7   Based on the Claims Administrator's recommendation and approval by the Parties, the QSF may be invested in United States Treasury bills, money market funds primarily invested in the same, or certificates of deposit, provided that such portions of the QSF as may reasonably be required to pay current QSF administrative expenses, taxes or disbursements to Claimants or Class Counsel may be deposited in bank accounts which are federally insured to the greatest extent practicable. All federal, state, and local taxes imposed with respect to income earned by, or property of, the QSF, shall be paid from the QSF.

12.8   The Claims Administrator may amend, either in whole or in part, any administrative provision of this Section or the trust instrument through which the QSF is established to maintain the qualification of the QSF pursuant to the above-described authorities, provided that the rights and liabilities of the Parties hereto and the Class are not altered thereby in any material respect.

## 13.   COMPREHENSIVE WAIVER, RELEASE, AND DISMISSAL

13.1   Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, upon the Settlement Effective Date, all Releasing Settlement Class Members irrevocably release, acquit, and forever discharge the Walmart Released Parties of and from any and all claims, rights, causes of action, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and

every kind that were asserted in the Litigation, or that could have been asserted but were not asserted in the Litigation, or in any other court or forum, whether known or unknown, on the basis of any or all of the alleged acts, omissions, transactions, events, and occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the Litigation, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local.

13.2   The Settlement Class Member Released Claims also includes a release of all approved claims for Attorneys' Fees and Litigation Expenses incurred by Releasing Settlement Class Members or by Class Counsel or any other attorney in connection with the Litigation, this Settlement, and all claims related to conduct in discovery in the Litigation.

13.3   Releasing Settlement Class Members understand and agree that the release of the Settlement Class Member Released Claims is a full and final general release applying to both those Settlement Class Member Released Claims that are currently known, anticipated, or disclosed to Releasing Settlement Class Members and to all those Settlement Class Member Released Claims that are presently unknown, unanticipated, or undisclosed to any Releasing Settlement Class Members on the basis of the alleged acts, omissions, transactions, events, and occurrences underlying the claims set forth in the Litigation. Releasing Settlement Class Members acknowledge that the facts could be different than they now know or suspect to be the case, but they are nonetheless releasing all such unknown claims. In exchange for the good and valuable consideration set forth herein, all Releasing Settlement Class Members further waive any and all rights or benefits that they as individuals or the Settlement Class may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation.

13.4   The Parties acknowledge that this Settlement, including the releases provided in this Section, reflects a compromise of disputed claims.

13.5   The Final Judgment and Order of Dismissal shall dismiss the Litigation with prejudice and shall incorporate the terms of this release.

## 14.   DUTIES OF THE PARTIES WITH RESPECT TO OBTAINING PRELIMINARY COURT APPROVAL

14.1   Class Counsel shall apply to the Court for the entry of an order granting preliminary approval of the Settlement substantially in the following form:

14.1.1 Preliminarily approving the Settlement and the establishment of the QSF;

14.1.2 Approving as to form and content the proposed Notice Plan, including the proposed Notice;

14.1.3 Scheduling a Final Fairness Hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class; and,

14.1.4 Approving Angeion Group as Claims Administrator.

14.2    Walmart shall cooperate with Class Counsel to obtain preliminary approval.

14.3    The Parties shall continue to take any steps necessary to stay any pending proceedings so as to preserve the *status quo* until either the Settlement Effective Date occurs or the Settlement Agreement is voided.

## 15.    DUTIES OF THE PARTIES FOLLOWING PRELIMINARY COURT APPROVAL

15.1 Following preliminary approval by the Court of the Settlement, Class Counsel will submit, prior to the Final Fairness Hearing, a proposed Final Judgment and Order of Dismissal substantially in the form attached hereto as <u>Schedule 2.15</u>.  The proposed Final Judgment and Order of Dismissal shall:

15.1.1. Approve the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate and directing effectuation of its terms and provisions;

15.1.2. Approve Payment of the Class Settlement Amount pursuant to this Agreement;

15.1.3. Approve Class Counsel's application for an award of Attorneys' Fees and Litigation Expenses pursuant to this Agreement;

15.1.4. Approve the Settlement Class Representative Service Payment; and,

15.1.5. Dismiss this Litigation as between the Settlement Class Members, on the one hand, and Walmart, on the other hand, on the merits and with prejudice, permanently barring all Settlement Class Members (other than those who timely filed their valid Opt-Out Letters) from further prosecuting any of the Settlement Class Member Released Claims against Walmart .

15.2    Walmart shall cooperate with Class Counsel to obtain final approval and the dismissal of the Litigation as to Walmart.

15.3    The Final Judgment and Order of Dismissal shall not be considered final until the occurrence of the Settlement Effective Date.

### 16.    MUTUAL FULL COOPERATION

16.1 The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to execution of all necessary documents, to seek additional certifications if required by the Court, or to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become reasonably necessary by order of the Court or otherwise, to effectuate the terms of this Settlement. As soon as practicable after execution of this Settlement, Class Counsel, with the assistance and cooperation of Walmart and its counsel, shall take all necessary steps to secure the Court's Final Judgment and Order of Dismissal.

### 17.    STATEMENT OF NO ADMISSION

17.1    Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Walmart. Walmart denies liability for any alleged wrongdoing. Walmart expressly denies liability for the claims asserted and specifically denies and does not admit any of the pleaded facts not previously admitted in its pleadings in the Litigation. Nor shall this Agreement constitute an admission by any Party as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against them in the Litigation. Likewise, nothing in this Agreement shall be construed or deemed an admission by the Class with regard to the validity of any of Walmart's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

17.2    This Agreement, and all related documents, including any Claims, Opt-Out Letters, Objections or other materials submitted by Settlement Class Members and all other actions taken in implementation of the Settlement, including any statements, discussions, or communications, and any materials prepared, exchanged, issued, or used during the course of the negotiations leading to this Agreement, are settlement documents and shall be inadmissible in evidence and shall not be used for any purpose in this Litigation or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, or any other litigation against Walmart, for any purpose, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

17.3    The Claims Forms, Opt-Out Letters, Objections, and any other evidence produced or created by any Settlement Class Member in connection with the claims resolution procedures pursuant to this Settlement, will be kept confidential by the Parties and the Claims Administrator, except as otherwise required by law or by the Court. Any actions taken by Walmart in response to such materials do not constitute, are not intended to constitute, and will not be deemed to constitute, an admission by Walmart of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity. Notwithstanding, Class Counsel may disclose

17

Objections and Opt-Out Letters in public Court filings to the extent they deem it necessary to do so in connection with seeking final approval of the Settlement by the Court.

17.4    Neither this Agreement, nor the Court's actions with regard to this Agreement, will be deemed admissible in this Litigation, and are not intended to be admissible (and Settlement Class and Class Counsel shall not seek their admission), in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, or in any other litigation against or involving Walmart.  In the event that this Agreement is not approved by the Court or any appellate court, or otherwise fails to become effective and enforceable, or is terminated, or the Settlement Effective Date does not occur for any reason, neither the Settlement Class or Walmart will be deemed to have waived, limited, or affected in any way any of their claims or objections or defenses in the Litigation by virtue of this Agreement.

## 18.    VOIDING THE AGREEMENT

18.1    In the event that (i) this Settlement is not approved, or (ii) if for any reason the Settlement Effective Date does not occur as a result of actions beyond the control of the Parties, or (iii) if Walmart exercises its option to void the Settlement in accordance with Section 9.4, and unless otherwise agreed in writing by the Parties, this Agreement shall be deemed null, void, and unenforceable and shall not be used, nor shall it be admissible in any subsequent proceedings either in this Court or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, or other litigation against Walmart. The Parties shall return to their respective positions prior to the Court's entry of the order dated April 29, 2020.

## 19.    SIGNATORIES' AUTHORITY

19.1 The respective signatories to this Agreement each represent that they are fully authorized to enter into this Settlement on behalf of the respective Parties for submission to the Court for preliminary and final approval.

## 20.    NO PRIOR ASSIGNMENTS

20.1 The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity, any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

## 21.    NOTICES

21.1 Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given: (i) on the date given, if given by hand delivery; (ii) within one business day,

if sent by overnight delivery services such as Federal Express or similar courier; (iii) on the third business day after mailing by United States registered or certified mail, return receipt requested, or (iv) on the day received for delivery by e-mail. All notices given under this Agreement shall be addressed as follows:

21.1.1 <u>To the Class</u>:

D. Greg Blankinship, Esquire
Finkelstein, Blankinship, Frei-Person & Garber, LLP
445 Hamilton Avenue, Suite 605
White Plains, New York  10601
gblankinship@fbfglaw.com

21.1.2 <u>To Walmart</u>:

Vincent Chadick, Esquire
Quattlebaum, Grooms & Tull PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
vchadick@qgtlaw.com

## 22.   CONFIDENTIALITY

22.1 The negotiations related to this Agreement (including the negotiations related to the drafting of this Agreement and any negotiations prior to preliminary approval or between the time of preliminary and final approval) will remain strictly confidential and shall not be discussed with anyone other than the Settlement Class Representative and Walmart, their retained attorneys, their accountants and financial or tax advisers, their retained consultants, the Court and its staff, and the mediator Frank Hamlin and his staff, unless otherwise agreed to by Class Counsel and Walmart or unless otherwise ordered by the Court. Notwithstanding the other provisions of this Section, Walmart may, if necessary, disclose the settlement in filings that Walmart Stores, Inc., is required to make with the Securities and Exchange Commission, including 10-Q and 10-K filings, or in other disclosures to its investors.

## 23.   PRESS AND MEDIA

23.1 The Parties shall not make any proactive statement to the media regarding this Settlement and if contacted by the media for a comment shall only say, "We are pleased that we were able to work with [opposing party] to reach an amicable resolution," or words substantially to that effect. Notwithstanding, Class Counsel may include accurate information regarding

the Settlement as reflected in court filings on their respective firm websites. This Paragraph does not preclude appropriate notice by publication as set forth in the Notice Plan.

## 24.    DOCUMENTS AND DISCOVERY

24.1 Class Counsel will continue to maintain confidentiality of documents and data produced by Walmart in the Litigation pursuant to any protective order entered in the case.

## 25.    MISCELLANEOUS PROVISIONS

25.1    Construction. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against either Party by reason of the extent to which any Party or her/his/its counsel participated in the drafting of this Settlement.

25.2    Captions and Interpretations. Paragraph titles or captions contained in this Agreement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision of this Agreement. Each term of this Agreement is contractual.

25.3    Modification. This Agreement may not be changed, altered, or modified, except in a writing signed by the Parties and approved by the Court. Notwithstanding the foregoing, the Parties agree that any dates contained in this Agreement (other than in the Notice, once approved by the Court) may be modified by agreement of the Parties without Court approval if the Parties agree. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

25.4    Integration Clause. This Agreement, the Exhibits hereto, and any other documents delivered pursuant hereto contain the entire agreement between the Parties relating to the resolution of the Litigation. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, and whether by a Party or such Party's legal counsel, are merged into this Agreement. No rights under this Settlement may be waived except in writing and signed by the Party against whom such waiver is to be enforced.

25.5    Binding on Assigns. This Settlement shall be binding upon, and inure to the benefit of, the Parties and their respective heirs, trustees, executors, administrators, successors, attorneys, and assigns.

25.6    Class Counsel Signatories. It is agreed that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Agreement. The notice provided in accordance with the Notice Plan will provide all Settlement Class Members with a summary of the Settlement, and will advise all Settlement

DocuSign Envelope ID: 7E6C5A29-3676-4D09-8636-BC6904C739F9

Class Members of the binding nature of the release. Except for those Settlement Class Members who timely submit a valid Opt-Out Letter, such Notice shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

25.7   Counterparts. This Agreement may be executed by facsimile signature or PDF, and in any number of counterparts. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one and the same Agreement, which shall be binding upon and effective as to all Parties.

25.8   Applicable Law. This Agreement shall be governed by the laws of the State of Arkansas, without regard to its choice of law or conflicts of law principles or provisions.

For Michael Hester, on behalf of himself and all others similarly situated:

_____
Michael Hester

For WALMART INC.:

By: _____
Name:   Mehrdad Akbar
Title:   Vice President, DMM

FINKELSTEIN, BLANKINSHIP, FREI-PERSON & GARBER, LLP

By: _____
D. Greg Blankinship
Class Counsel

QUATTLEBAUM, GROOM & TULL PLLC

By: _____
Vincent Chadick
Counsel for Walmart

21

**<u>SCHEDULE 2.15</u>**
**TO CLASS ACTION SETTLEMENT AGREEMENT**

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **MICHAEL HESTER**, individually and on behalf of others similarly situated individuals,<br><br>                              Plaintiff,<br><br>              v.<br><br>**WALMART, INC.**,<br><br>                              Defendant. | Case No.  5:18-CV-05225-TLB<br><br><br>**FINAL JUDGMENT AND ORDER OF DISMISSAL** |

        This matter came before the Court on Plaintiff's Motion for Final Approval of Settlement

("Final Approval Motion") and Plaintiff's Motion for An Award of Attorneys' Fees and Expenses

("Attorneys' Fee Motion").

        WHEREAS, the above-captioned matter is a settlement class action pending before the Court;

and

        WHEREAS, the Court has received and reviewed the Settlement Agreement entered into

between the Settlement Class Representative and the Settlement Class Members on the one hand, and

Walmart Inc. ("Walmart"), on the other hand (the "Agreement"), and has considered the terms of the

proposed settlement set forth therein (the "Settlement"); and

        WHEREAS, all terms used herein shall have the same meanings as set forth in the Agreement,

unless otherwise defined herein; and

        WHEREAS, on [DATE], the Court entered its order preliminarily approving the Settlement of

this class action as set forth in the Agreement, approving the form and method of notice, and setting a

date and time for a fairness hearing to consider whether the Settlement should be finally approved by the

Court pursuant to Federal Rule of Civil Procedure 23 as fair, adequate, and reasonable (the "Preliminary Approval Order"); and

WHEREAS, the Preliminary Approval Order further directed that all Settlement Class Members be given notice of the Settlement and of the date for the final fairness hearing; and

WHEREAS, the Parties and the Class Administrator have advised and confirmed to the Court that such notice has been given; and

WHEREAS, no objections to the Settlement were filed prior to the Claim Filing Deadline, which is the last day for any objections to be considered timely **[[or objections were filed but overruled]]**; and

WHEREAS, **[[insert ##]]** Settlement Class Members opted out of the Settlement prior to the Claim Filing Deadline, which was the last day for any opt-outs to be considered timely;

WHEREAS, the Court having conducted a Final Fairness Hearing on [date] (the "Final Approval Hearing"), and having considered the arguments presented, all papers filed and all proceedings had therein;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    The Court has jurisdiction over the subject matter of this action, all Settlement Class Members, and the Defendant.

2.    In accordance with Federal Rule of Civil Procedure 23, and the requirements of due process, all members of the Settlement Class have been given proper and adequate notice of the Settlement.  Based upon the evidence submitted by the parties to the Agreement, the Agreement, the arguments of counsel, and all the files, records and proceedings in this case, the Court finds that the Notice and notice methodology implemented pursuant to the Agreement and the Court's Preliminary Approval Order (a) constituted methods that were reasonably calculated to inform the members of the Settlement Class of the Settlement and their rights thereunder; (b) constituted notice that was reasonably calculated,

SCHEDULE 2.15

under the circumstances, to apprise Settlement Class Members of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law.

3.      The Agreement in this action warrants final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure because it resulted from vigorously contested litigation, thorough discovery and motion practice, and extensive good-faith arm's length negotiations between the parties, and is it is fair, reasonable, and adequate after considering whether: (A) the Settlement Class Representative and Class Counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the Settlement Class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats Settlement Class Members equitably relative to each other.

4. The Final Approval Motion is hereby GRANTED, and the Settlement as set forth in the Agreement is hereby APPROVED as fair, reasonable, adequate, and in the public interest, and the terms of the Agreement are hereby determined to be fair, reasonable, and adequate, for the exclusive benefit of the Settlement Class Members.  The Parties are directed to consummate the Agreement in accordance with its terms.

5.      The Court APPROVES payment of a Settlement Class Representative Service Payment to Michael Hester in the amount of $_____ and as set forth in the Agreement.  In making this award, the Court has considered and found that Dr. Hester ably represented the class including through his expenditure of time and effort in representing the Class in the prosecution of the Litigation.

SCHEDULE 2.15

1.   6.   The Court APPROVES payment of Attorneys' Fees and Litigation Expenses to Class Counsel in the amount of $_____ in accordance with the terms of the Agreement and as requested in Plaintiff's Motion for Award of Attorneys' Fees and Expenses.  The Court further finds that no attorneys have asserted any attorney liens as to the Attorneys' Fees and Litigation Expenses awarded by the Court.  In making this award, the Court has considered and found that:

(a)   The Class Notice advised that Class Counsel would move for an award of attorneys' fees of no more than $366,666.00 and reimbursement of expenses of no more than $**ADD**, which Defendant would not challenge, and no objections were filed against the terms of the proposed Settlement or the award of the Attorneys' Fees and Litigation Expenses disclosed in the Class Notice;

(b)   The Action involves complex factual and legal issues, were actively prosecuted and, in the absence of the Settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(c)   D. Greg Blankinship and Todd S. Garber of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Randall K. Pulliam of Carney Bates & Pulliam PLLC skillfully and zealously pursued the Action on behalf of the Class Representative and the Class;

(d)   The hourly rates charged by Class Counsel are reasonable;

(e)   Had Class Counsel not achieved the Settlement, there would remain a significant risk that the Settlement Class Representative and the Settlement Class would recover less or nothing from the Defendant; and

(f)   The amount of attorneys' fees awarded herein are consistent with awards in similar cases.

SCHEDULE 2.15

7.      The planned distribution of the Class Settlement Amount is hereby APPROVED as fair, adequate, and reasonable.  The Class Settlement Amount shall be distributed in accordance with the terms of the Agreement.

8.      This matter is hereby deemed DISMISSED WITH PREJUDICE and without costs to any Party, other than as specified in the Agreement and this Order, or to enforce the terms of the Agreement and this Order.

9.      In consideration of the Class Settlement Amount provided under the Agreement, and for other good and valuable consideration, each of the Releasing Class Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Settlement Class Member Released Claims against Walmart in accordance with Section 13 of the Agreement the terms of which section are incorporated herein by reference, shall have covenanted not to sue Walmart with respect to all such Settlement Class Member Released Claims and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any such Settlement Class Member Released Claims against Walmart.

10.     This Judgment is the Final Judgment in the suit as to all Settlement Class Member Released Claims.

11.     Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Agreement; (b) distribution of the Class Settlement Amount, the Settlement Class Representative Service Payment and the Attorneys' Fees and Litigation Expenses Amount; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the  Agreement and the Settlement, and the administration of Claims submitted by Settlement Class Members.  The time to appeal from this Judgment shall commence upon its entry.

SCHEDULE 2.15

12.     In the event that the Settlement Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, nunc pro tunc, except insofar as expressly provided to the contrary in the Agreement or at the direction of any appellate court of competent jurisdiction, and without prejudice to the status quo ante rights of Plaintiff, the Settlement Class Members, and Walmart.

13.     This Court finds that there is no just reason for delay and expressly directs Judgment and immediate entry by the Clerk of the Court.


IT IS SO ORDERED.                    BY THE COURT:


Dated:  _____        _____


SCHEDULE 2.15

**<u>SCHEDULE 2.17</u>**
**TO CLASS ACTION SETTLEMENT AGREEMENT**

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS, FAYETTEVILLE DIVISION

**TO:**   All those persons who purchased Onn brand power banks during the Settlement Class Period.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

| Hester v. Walmart |
|---|

**Case Name:**                *Michael Hester v. Walmart, Inc.* (Case No. 5:18-cv-05225-TLB)

**Settlement Class Period:**   January 1, 2013 to the date on which the Court grants preliminary approval

**Deadlines:**

- **Objections:** _____ [15 days after end of Notice Period]
- **Exclusions:** _____ [15 days after end of Notice Period]
- **Claim Filing:** _____ [15 days after end of Notice Period]
- **Court Hearing on Fairness of Settlement:** _____

**More Information:**

[INSERT]                                    Toll Free: [INSERT]
[INSERT]                                    [INSERT WEBSITE NAME]

| Your Legal Rights and Options in this Settlement: | |
|---|---|
| **Submit an online Claim Form** | In order to receive a monetary benefit from the Settlement, you must complete and submit an online Claim Form at [INSERT WEBSITE NAME] or a mailed claim form within the time specified. |
| **Exclude Yourself** | You have the right to exclude yourself from this Settlement. If you exclude yourself you will receive no benefits, but you will not be giving up your legal claims against the defendant. |
| **Object to the Settlement** | Write to the Court about why you don't like the settlement. You may also appear at the fairness hearing. The Court will consider your objections whether or not you appear at the fairness hearing. |
| **Go to the Fairness Hearing** | Ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Get no payment. Give up rights. |

**These rights and options and the deadlines to exercise them are explained below.**

Questions? Visit [INSERT WEBSITE NAME] or call toll-free [INSERT #].                    Page 1 of 6

SCHEDULE 2.17

# Basic Information

| 1.   What is the purpose of this Notice? |
|---|

The Court has granted preliminary approval of a class action settlement.

To be a part of this settlement, you must meet the following definition of the Settlement Class:

All those persons who purchased any Onn brand power bank(s) from Walmart during the Settlement Class Period.

This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The Court in charge of the case is the United States District Court for the Western District of Arkansas, and the case is known as Hester v. Walmart, Case No. Case No. 5:18-cv-05225-TLB. The person who sued is called the Settlement Class Representative, and the company he sued, Walmart Inc., is called the Defendant.

The Court authorized this notice because Settlement Class Members have a right to know about a proposed settlement of this class action lawsuit, and about their options, before the Court decides whether to approve the settlement. If the Court approves it and after objections and appeals are resolved, an administrator appointed by the Court will disburse settlement benefits allowed under the settlement agreement between the parties.

| 2.   What is this lawsuit about? |
|---|

The lawsuit claims that the capacities of Onn brand power banks sold at Walmart were misrepresented.

Walmart denies any and all liability or wrongdoing with respect to the claims alleged in the lawsuit, but desires to settle the case because a settlement will avoid the risk, expense and distraction of continued litigation.

| 3.   Why is this a class action? |
|---|

In a class action, one or more people, called Settlement Class Representative (in this case Michael Hester), sue on behalf of people who have similar claims. All of these people are members of the Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

| 4.   Why is there a settlement? |
|---|

The Court did not decide in favor of the Settlement Class Representatives or Defendant. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial and the risk, expense and distraction of continued litigation. The Settlement Class Representative and the attorneys think the settlement is best for everyone involved.

# Who Is In The Settlement

| 5.   How do I know if I am part of the settlement? |
|---|

The Court has decided that for settlement purposes, any individual person or entity who, during the time period set forth above, purchased any Onn brand power bank from Walmart is considered a Settlement Class Member.

Questions? Visit [INSERT WEBSITE NAME] or call toll-free [INSERT #].                                    Page 2 of 6

SCHEDULE 2.17

**6.  I'm still not sure if I am included.**

If you are still not sure if you are included in the Settlement Class, you may speak with a claims specialist by calling the Claims Administrator toll-free at [INSERT PHONE #].

# The Settlement Benefits

**7.   What does the settlement provide?**

The settlement provides for the following relief:

A. Walmart will fund a Class Settlement Amount of $1,100,000. The Class Settlement Amount will be used to provide Settlement Class Members with the opportunity to apply for and receive a payment pursuant to the Settlement, to pay for administration of the settlement proceeds, to pay attorney fees and expenses, and to pay for an incentive award to the Settlement Class Representative.

B. In exchange for these settlement benefits, Plaintiff and each Settlement Class Member who has not validly and timely requested exclusion from the settlement shall be deemed to have fully, finally, and forever released any and all claims against the Defendant relating to the nature of the lawsuit.

**8.  How much will my payment be?**

Each Settlement Class Member submitting a Claim that is approved is entitled to a payment determined by deducting from the Class Settlement Amount the sum of the Reasonable Attorneys' Fees and Litigation Expenses and Reasonable Class Representative Service Payment, and then dividing that difference on a *pro rata* basis, based on the total number and model of Products submitted by Approved Claimants.

Please note that if you claim to have purchased more than 5 of the Products, you must submit a written proof of purchase, such as a receipt or other proof that you purchased more than 5 of the Products you claim to have purchased.

# How You Get A Payment

**9.   How can I get a payment?**

To qualify for a payment from the settlement, you must submit a Claim Form. To file a Claim Form, visit the settlement website, [INSERT WEB ADDRESS].   You must complete the Claim Form in full and submit to the Claims Administrator on or before [15 days after notice period].  Failure to provide complete and accurate information could result in a denial of your claim.

**10. When would I get my payment?**

The Court will hold a hearing on _____ to decide whether to approve the settlement. If the settlement receives final approval, payment will be mailed to the address provided on your Claim Form, in a timely manner, provided there are no appeals to the Court's decision.  Please be patient.

**11. What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself, you are staying in the Settlement Class, regardless of whether or not you submit a Claim Form. This means that you will be bound by the release of claims set forth in the Settlement Agreement and can't sue, continue to

Questions? Visit [INSERT WEBSITE NAME] or call toll-free [INSERT #].                                        Page 3 of 6

SCHEDULE 2.17

sue, or be part of any other lawsuit against Walmart that pertains to the same legal issues in *this* case. It also means that all of the Court's orders will apply to you and legally bind you.

# Excluding Yourself From The Settlement

### 12. How do I exclude myself from the settlement?

If you do not want a payment as part of the Settlement and do not want to be legally bound by the terms of the settlement, you must exclude yourself by sending a letter saying that you want to be excluded from *Hester v. Walmart*. The letter must contain your name, address, telephone number and your signature. Your request for exclusion must be mailed to the address below, **postmarked no later than** _____:

[INSERT CLAIMS ADMINISTRATOR ADDRESS]

You cannot exclude yourself on the phone or by e-mail. If you ask to be excluded, you are not eligible to receive any settlement payment, and you cannot object to the settlement; however you will not be legally bound by anything that happens in this lawsuit.

### 13. If I don't exclude myself, can I sue for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Walmart for the same claims that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Settlement Class to continue your own lawsuit.

### 14. If I exclude myself, can I receive payment from this settlement?

No. If you exclude yourself from the settlement, you will no longer be entitled to payment. Do not send in a Claim Form if you exclude yourself.

# The Lawyers Representing You

### 15. Do I have a lawyer in this case?

The Court has appointed the law firms of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Carney Bates & Pulliam, PLLC and their associated counsel to represent you and other members of the Settlement Class. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 16. How will the lawyers be paid?

Class Counsel will ask the Court to award them attorneys' fees up to $366,666.00 in addition to case costs and expenses of approximately $_____, and an incentive payment for the Plaintiff of $5,000.00, from the Class Settlement Amount. If approved by the Court, the Defendant will pay the attorneys' fees and expenses as part of the Class Settlement Amount.

The attorneys' fees and expenses requested will be the only payment to Class Counsel for their efforts in achieving this settlement and for their risk in undertaking this representation on a wholly contingent basis. To date, Class Counsel have not been paid for their services in conducting this litigation on behalf of the Settlement Class Representative and the Class, nor for their substantial expenses.

Questions? Visit [INSERT WEBSITE NAME] or call toll-free [INSERT #].                    Page 4 of 6

SCHEDULE 2.17

# Objecting To The Settlement

## 17. How do I tell the Court that I don't like the settlement?

If you're a Settlement Class Member, and have not excluded yourself from the settlement, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it, and the Court will consider your views. To object, you must send a letter to the Court and the Parties saying that you object to the settlement in *Michael Hester v. Walmart, Inc.* (Case No. 5:18-cv-05225-TLB). Your written objection must be personally signed and you must provide the following information in connection with and as part of any objection: (i) full name, current address, and current telephone number; (ii) documentation sufficient to establish membership in the Settlement Class; (iii) a statement of the position the objector wishes to assert, including the factual and legal grounds for the position and objection; and (iv) copies of any other documents that the objector wishes to submit in support of his/her/its position. In addition, the objecting Settlement Class Member must identify any previously filed objections filed by the Settlement Class Member and his/her/its counsel in any state or federal court. This listing must contain (i) the name of the case; (ii) the case number; (iii) the court in which the objection was filed; and (iv) the outcome of the objection. This objection ***must be received*** at these three different places and must be **post-marked no later than** _____:

| | | |
|---|---|---|
| **Clerk of the Court**<br>ATTN: Case No. 5:18-cv-05225<br>United States District Court<br>Western District of Arkansas<br>Fayetteville Division<br>John Paul Hammerschmidt<br>Federal Building<br>35 East Mountain Street<br>Room 510<br>Fayetteville, Arkansas 72701-5354 | **Class Counsel**<br>Finkelstein, Blankinship, Frei-Person & Garber, LLP<br>445 Hamilton Avenue, Suite 605<br>White Plains, New York  10601 | **Defense Counsel**<br>Quattlebaum, Grooms & Tull PLLC<br>4100 Corporate Center Drive, Suite 310<br>Springdale, Arkansas 72762 |

## 18. What's the difference between objecting and excluding myself?

Objecting is simply telling the Court that you do not like something about the settlement.  You can object only if you do not exclude yourself from the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Class or the lawsuit.  If you exclude yourself, you have no basis to object because the case no longer affects you.

# The Court's Fairness Hearing

## 19. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at __:__ a.m. on _____, in the United States District Court for the Western District of Arkansas, Fayetteville Division, John Paul Hammerschmidt Federal Building, 35 East Mountain Street, Fayetteville, Arkansas, Courtroom _____.  At this hearing, which may be held telephonically, the Court will consider whether the settlement is fair, reasonable and adequate.  If there are objections, the Court will consider them.  The Judge will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the settlement.

Questions? Visit [INSERT WEBSITE NAME] or call toll-free [INSERT #].                                    Page 5 of 6

SCHEDULE 2.17

**20. Do I have to come to the hearing?**

No. Class Counsel will answer questions the Judge may have. But, you are welcome to come at your own expense. If you submit an objection, you do not have to come to the Court to talk about it. As long as you delivered your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**21. May I speak at the hearing?**

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter saying that it is your intention to *Michael Hester v. Walmart, Inc.*, Case No. 5:18-cv-05225-TLB. Be sure to include your name, address, telephone number and your signature. Your notice of intention to appear must be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the addresses listed above, by _____. You cannot speak at the hearing if you exclude yourself from the Class.

**22. What happens if the Court does not approve the Settlement?**

If the Court does not enter an Order approving the Settlement, or if the Court enters an Order approving the Settlement but appellate review is sought and the Order is reversed and no final Order approving the settlement is entered, the Settlement shall become null and void and the case will proceed as if the settlement was never entered into.

# Getting More Information

**23. Are there more details about the settlement?**

This Notice summarizes the proposed settlement. More details are in the full version of the Settlement Agreement. You can obtain a copy of the Settlement Agreement from the settlement website, [INSERT WEB ADDRESS], or from the Clerk's office at the United States District Court, Western District of Arkansas, Fayetteville Division, John Paul Hammerschmidt Federal Building, 35 East Mountain Street, Room 510, Fayetteville, Arkansas 72701, during regular business hours.

**24. How do I get more information?**

If you would like more information about the settlement, you can visit the settlement website, [INSERT WEB ADDRESS], or call the Claims Administrator toll free at [INSERT PHONE #].

*It is your responsibility to inform the Claims Administrator of address changes until your benefit is received.*

**DO NOT CONTACT THE COURT WITH QUESTIONS ABOUT THIS NOTICE.**

Questions? Visit [INSERT WEBSITE NAME] or call toll-free [INSERT #].                    Page 6 of 6

SCHEDULE 2.17

**<u>SCHEDULE 2.19</u>**
**TO CLASS ACTION SETTLEMENT AGREEMENT**

**Specific Media Recommendations**

**TARGET AUDIENCE**

We propose to use data from 2019 GfK MRI Market-by-Market to profile the target audience for the class. The following target definition was defined to profile class members:

- Adults who have shopped at Wal-Mart
- Purchased an electronic accessory
- Own a smartphone

Based on the target definition, and the number of the potential audience size is estimated to be 30.74 million individuals, which is intentionally overinclusive and, based on objective syndicated data, will allow the parties to report the reach and frequency to the court, with the confidence that the reach within the Target Audience and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

The target group can adequately be described as having the following characteristics:



**54%**
Female Skew

**61%**
Ages 25-54

**43**
Median Age

**57.3%**
Now Married

**49%**
Have Children

**35%**
College or Postgraduate Degree

**$96K AVG**
HHI

**73% use Facebook**

© Angeion Group, LLC

**MEDIA SELECTION**

A review of media quintiles, which measure the degree to which an audience uses media relative to the general population, shows that media usage is even across most channels with digital over indexing against the overall population.

# Media Usage



84 Index            110 Index            123 Index

90 Index            117 Index            108 Index

Due to above-average usage, of digital and its ability to target prospective class members, we are recommending this be our main media outlet to effectively and efficiently reach the designated class audience.

**MEDIA GOALS AND STRATEGY**

Create a cost-effective notice plan media campaign that ensures that we are only reaching audiences who are most likely to be in the class.

The strategy will be to utilize a mix of upper and lower funnel advertising tactics. These tactics will be a blend of conversion focus media and brand awareness tactics that help to drive people into the funnel. All media will be rolled out with an eye on optimizing to the outlets delivering the lowest Cost Per Exposure. Real-time optimization techniques will be deployed to ensure we are achieving the greatest results without any lag.



## PROGRAMMATIC

A programmatic purchasing approach is recommended for digital media.  This allows us to focus on the target audience most likely to have purchased Onn Products and reach class members rather than specific websites.  Purchasing display and mobile inventory programmatically provides the highest reach, allows for multiple targeting layers, and offers the most cost-efficient rates.

Multiple targeting layers will be implemented into the programmatic buy to help ensure delivery to the most appropriate users, inclusive of look-a-like modeling, contextual, predictive targeting, and site retargeting.

- Look-a-like modeling: Using data methods, we will build a look-a-like audience against known Onn purchasers.
- Predictive Targeting (prospecting): Allows technology to "predict" which users will be served the ad
- Audience Targeting: Leverage demographic and behavioral data to find our exact audience
- Geotargeting: Only serving ads in locations where we feel is most relevant
- Retargeting: Re-message previous site visitors to drive conversion with qualified audiences

Inventory will run on desktop and mobile devices to reach the most qualified audience. Targeting users who are currently browsing or are known purchasers of Onn products will also help to qualify impressions to ensure messaging is served to the most relevant audience.

Also included with the digital recommendation will be the use of multiple data providers to help pinpoint our target audience. Oracle's BlueKai, Adobe's Audience Manager, and Lotame are example data providers we use leveraging their data management platforms (DMP). Integral Ad Science (IAS), an online ad verification and security provider, will be deployed to provide a higher quality of service to ad performance.  Using DMPS, we can learn more about the online audiences we are reaching.  Through pixels attached to the creative behind the scenes, we collect data on users who are served impressions, who click, and who convert.  Demographic profiles can be developed and leveraged for immediate changes in targeting strategies to increase the overall performance of digital campaigns.  The insights help us to understand the type of user profile that is most valuable to campaign success.  Additionally, with DMPs, we can create first-party audiences based on site traffic. We will use the audience created from the first campaign and build a look-alike audience to target with the claims message.

Integrating with IAS provides another level of safety to ad campaigns.  With the threat of bot-fraud and questions around inappropriate content, IAS, the leading company in ad verification, gives us and our

advertisers peace of mind.  IAS analyzes each impression and prevents advertisers from fraudulent activity and unsafe content.

We recommend implementing a desktop and mobile campaign, utilizing standard IAB sizes (970x250, 160x600, 300x250, 728x90, 300x600, 320x50, 300x50). A frequency cap of 3x will be imposed to maximize reach.

## FACEBOOK ADVERTISING

A Paid Facebook campaign is recommended to reach affected class members. This gives us the ability to building awareness while we give opportunities to learn more about the class and drive traffic to the class landing page.

We are recommending using static, carousel, and video units to engage with target audiences.
- A mix of news feed and stories units optimizing performance to ensure we are reaching our target audience at an efficient rate.
- Employ targeted campaign prospecting tactics, including look-alike modeling against known audiences, build segments target consumer profiles, and conquesting.

Campaign Setup: Both Awareness and Traffic campaign strategies will be deployed (50/50 initial split), and a frequency cap of 3x will be implemented.

## OPTIMIZATION AND CONVERSIONS

To track campaign success, we will implement conversion pixels throughout the case filing website to understand audience behavior better and identify those most likely to convert. The programmatic algorithm will change based on success and failure to generate conversions throughout the process. Successful conversion on the Claim Submission button will be the primary goal, driving optimizations.

## MEDIA DELIVERY



**MEDIA PLAN DELIVERY**

We will deliver over 67,187,000 targeted media impressions. That will deliver a reach of 70% with a frequency of 3.1x

**<u>SCHEDULE 6.4.5</u>**
**TO CLASS ACTION SETTLEMENT AGREEMENT**

<table>
<tr><td>Your claim must be submitted by:<br><br>XXXXXX</td><td><strong>Class Action Settlement</strong><br><em>Hester v. Walmart</em><br>Case No. 5:18-cv-05225-TLB<br>U.S. District Court, Western District of Arkansas</td><td></td></tr>
</table>

# PROOF OF CLAIM & VERIFICATION FORM

**QUALIFICATIONS & INSTRUCTIONS:**

If you purchased an Onn brand power bank (a portable charger), you may be eligible to participate in this Settlement.

Under the Settlement, eligible Settlement Class Members may receive a share of the Settlement proceeds in the form of a payment by [check]. Additional information regarding how to submit a Claim, the value of a Claim, and about the Settlement itself is provided in the Notice of Class Settlement, in the Settlement Agreement, and on the Settlement website www.[*insert*].com.

To participate in the Settlement and to submit a Claim, you must be an eligible Settlement Class Member and complete and submit this Claim Form on or before **Midnight  (Eastern Time)  __[date]____.** All of the questions and information <u>must be fully and accurately completed</u>.  Any Settlement Class Member Payment will be sent to the mailing address provided below.  Failure to provide complete and accurate information could result in the denial of your Claim.

---

## SECTION A:   CLAIMANT INFORMATION

Provide your name and contact information below. It is your responsibility to notify the Claims Administrator of any changes to your contact information after the submission of your Proof of Claim and Verification Form.

**First Name**                **M.I.**   **Last Name**

**Current Mailing Address**                                    **Unit/Apt.**

**City**                        **State**            **Zip Code**

**Telephone Number**                    **Email Address**

1

**SECTION B:   WALMART PURCHASE INFORMATION**

1.  **Did you purchase any Onn brand power bank?**

Yes ☐

No ☐

If you answered "Yes" to the preceding question, please answer the following:

2.  **Identify the Walmart location(s), including retail store or Walmart.com, where you made a purchase of an Onn brand power bank.**

Walmart.com ☐
Retail Store ☐

If you selected Retail Store above, provide the location(s) of your purchase:

| City, State: | |
|---|---|
| **City, State:** | |
| **City, State:** | |
| **City, State:** | |

3.  **Identify the year you purchased the Onn brand power bank(s). If you purchased an Onn brand power bank on more than one occasion, describe each occasion.**

| Year | Description |
|---|---|
| | |
| | |
| | |
| | |

4.  **Enter the number of Onn power banks you purchased in the box next to the applicable model(s) below. If you are claiming more than 5 purchases, you must submit written proof of purchase.**

☐  1400 mAh Power Bank

☐  1800 mAh Power Bank

☐  2000 mAh Power Bank

☐  2200 mAh Power Bank

☐  3350 mAh Power Bank

☐  4000 mAh Power Bank

☐     4400 mAh Power Bank

☐     6700 mAh Power Bank

**SECTION C:  ACKNOWLEDGEMENT**

I affirm, **under penalty of perjury**, that the information I have provided on this Claim Form is true and correct to the best of my knowledge, and that this is the only Claim Form that I have submitted.  I further understand, acknowledge, and agree that I am eligible to receive only **ONE** payment from this Settlement based on my eligibility as a Settlement Class Member.

I further understand, acknowledge, and agree that the amount I will receive shall be calculated in accordance with the terms of the Settlement Agreement, and will be subject to the terms of the Settlement Agreement, including the Release of Claims as more fully described in the Settlement Agreement.

Type name for Signature: _____  Date: _____

3

# Exhibit 2

FBFG | Finkelstein, Blankinship,
Frei-Pearson & Garber, LLP

# FIRM RESUME

**Finkelstein, Blankinship, Frei-Pearson & Garber, LLP**

The lawyers of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") have successfully litigated complex class actions in federal and state courts across the country, and have obtained successful results for clients against some of the world's largest corporations. A sampling of the Firm's more significant cases includes:

- *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-3073 (S.D.N.Y.). Class action alleging deceptive labeling in connection with Defendant's Aveeno Naturals brand of personal care products. Plaintiffs defeated Defendant's motions to dismiss and exclude Plaintiffs' expert's report, and obtained class certification and an appointment as Co-Lead Class Counsel. On November 1, 2017, the Court approved a proposed settlement valued at $6.75 million.

- *In Re: KIND LLC "Healthy and All Natural" Litigation,* Nos. 15-MD-2645, 15-MC-2645 (S.D.N.Y.). Class action alleging false advertising of Defendant KIND's snack food products. Appointed as co-lead interim class counsel on November 13, 2015.

- *Quinn v. Walgreen*, No. 12-8187 (S.D.N.Y.). Nationwide settlement valued at $2.8 million to resolve Plaintiffs' claim that Defendant's glucosamine products did not perform as represented. On March 24, 2015, the Court certified the class, appointed FBFG lawyers as Co-Lead Class Counsel and approved a nationwide $2.8 million settlement.

- *Edwards v. North American Power & Gas, LLC*, No. 14-1714 (D. Conn.). Nationwide class action alleging that North American Power charged electricity and gas rates far in excess of what it promised to charge variable rate customers. On August 2, 2018, the Court certified the class, appointed the lawyers of FBFG as co-lead class counsel, and approved the settlement valued at over $19 million.

- *Wise v. Energy Plus Holdings, LLC*, No. 11-7345 (S.D.N.Y.). Nationwide class action alleging that Energy Plus falsely claimed to offer competitive electricity rates when its prices are substantially higher than market rates in violation of New York Gen. Bus. L. § 349 and other consumer protection laws. On September 17, 2013, the Court certified the class, appointed the lawyers of FBFG as lead class counsel, and approved the settlement valued at over $11 million.

- *Chen v. Hiko Energy, LLC*, No. 14-1771 (S.D.N.Y.). Multistate class action alleging that Hiko falsely claimed to offer competitive electricity rates when its prices are substantially higher than market rates in violation of New York Gen. Bus. L. § 349 and other consumer protection laws. On May 9, 2016, the Court certified the class, appointed the lawyers of FBFG as class counsel, and approved the settlement valued at over $10 million.

- *Bellino v. JPMorgan Chase Bank, N.A.*, No. 14-3139 (S.D.N.Y.). Statewide class action on behalf of mortgagors alleging Chase's failure to comply with mortgage

recording requirements.  On November 9, 2017, the Court approved a settlement valued at $10,808,630, certifying the settlement class and appointing FBFG attorneys as class counsel.

- *Adler v. Bank of America, N.A,* No. 13-4866 (S.D.N.Y.).  Class action alleging that Bank of America failed to timely present certificates of discharge for mortgages that were satisfied in New York State.  On July 20, 2016, the Court certified the class, appointed the lawyers of FBFG as class counsel, and approved the settlement valued at over $7 million.

- *In re Michaels Stores, Inc. Zip Code Litigation*, No. 11-10920 (D. Mass.). State-wide class action alleging that Michaels Stores unlawfully collected consumers' private information.   After securing a groundbreaking decision by the Massachusetts Supreme Judicial Court, establishing that consumers whose privacy has been violated may bring consumer protection claims against companies that unlawfully collect personal identification information, the lawyers of FBFG were appointed as co-lead class counsel and negotiated a class-wide settlement, which the Court approved.

- *Saint Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct.).  Complex class action on behalf of approximately 31,800 patients who were victimized by a data breach.  An FBFG lawyer was appointed co-lead class counsel. The Court denied Saint Joseph's demurrer and the Court of Appeals upheld that ruling.  The Court certified the class and denied Saint Joseph's summary judgment motion; the Court of Appeals upheld those rulings as well.  On the eve of trial the parties reached a settlement valued at approximately $39 million and the Court granted final approval of that settlement on February 3, 2016.  This settlement provides the more money per capita to individual class members than any other known data breach settlement on record.

- *Castillo v. Seagate Technology LLC*, No. 16-1958 (N.D. Cal.).  Class action on behalf of over 12,000 individuals victimized by a data breach.  On September 19, 2016, the Court denied Seagate's motion to dismiss in part.  The Court appointed an FBFG attorney as co-lead class counsel and, on March 14, 2018, finally approved settlement valued at up to $42 million.

- *Sackin v. Transperfect Global, Inc.*, No. 17-1469 (S.D.N.Y. 2017).  Class action on behalf of over 4,000 individuals victimized by a data breach.  On June 15, 2017, the Court entirely denied Transperfect's motion to dismiss.  On March 13, 2018, the Court appointed FBFG as class counsel and preliminarily approved a settlement valued at over $40 million.

- *McLauglin v. IDT Energy* No. 14-4107 (E.D.N.Y.).  Nationwide class action alleging that IDT overcharged consumers for gas and electric supply.   On October 18, 2018, the Court certified the class, appointed the lawyers of FBFG as co-lead class counsel, and approved the settlement valued at over $54 million.

- *Reed v. Friendly's Ice Cream, LLC*, No. 15-0298 (M.D. Pa.).  Nationwide class and collective minimum wage and overtime claim on behalf of approximately 10,000 servers.  On January 31, 2017, the Court certified the class, appointed an FBFG

4

lawyer as co-lead class counsel, and approved the settlement valued at over $4.6 million.

- *Al Fata v. Pizza Hut of America, Inc.*, No. 14-376 (M.D. Fla.).  Statewide minimum wage claim on behalf of approximately 2,000 Pizza Hut delivery drivers.  On June 21, 2017, the Court certified the class and approved a settlement valued at $3.1 million that provided the then-highest per-person recovery in any delivery driver under-reimbursement class action.

- *Saint Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct.).  Complex class action on behalf of approximately 31,800 patients who were victimized by a data breach.  An FBFG lawyer was appointed co-lead class counsel.  The Court denied Saint Joseph's demurrer and the Court of Appeals upheld that ruling.  The Court certified the class and denied Saint Joseph's summary judgment motion; the Court of Appeals upheld those rulings as well.  On the eve of trial the parties reached a settlement valued at approximately $39 million and the Court granted final approval of that settlement on February 3, 2016.  This settlement provides the more money per capita to individual class members than any other known data breach settlement on record.

- *Castillo v. Seagate Technology LLC*, No. 16-1958 (N.D. Cal.).  Class action on behalf of over 12,000 individuals victimized by a data breach.  On September 19, 2016, the Court denied Seagate's motion to dismiss in part.  The Court appointed an FBFG attorney as co-lead class counsel and, on March 14, 2018, finally approved settlement valued at up to $42 million.

- *Sackin v. Transperfect Global, Inc.*, No. 17-1469 (S.D.N.Y. 2017).  Class action on behalf of over 4,000 individuals victimized by a data breach.  On June 15, 2017, the Court entirely denied Transperfect's motion to dismiss.  On March 13, 2018, the Court appointed FBFG as class counsel and preliminarily approved a settlement valued at over $40 million.

- *McLauglin v. IDT Energy* No. 14-4107 (E.D.N.Y.).  Nationwide class action alleging that IDT overcharged consumers for gas and electric supply.  On October 18, 2018, the Court certified the class, appointed the lawyers of FBFG as co-lead class counsel, and approved the settlement valued at over $54 million.

FBFG is also counsel of record in numerous class actions throughout the country, including cases pending in United States District Courts in New York, California, Massachusetts, Nevada, New Jersey, Maryland, New Mexico, Colorado, Arkansas, and Pennsylvania, as well as actions pending in the state courts of New York, California, Nebraska, and New Jersey.

FBFG also has an accomplished and successful appellate practice, having obtained numerous groundbreaking decisions from federal and state appellate courts.  Examples include: *In Re Zappos.Com, Inc., Customer Data Security Breach Litigation*, No. 16-16860, 2018 WL 1189643 (9th Cir. Mar. 8, 2018) (reversing dismissal by district court and holding that consumers whose personal identification information was stolen in a data breach have Article III standing); *Zahn v. N. Am. Power & Gas, LLC*, 2016 IL 120526, 72 N.E.3d 333 reh'g denied (Jan. 23, 2017)

(on certified question from the 7th Circuit, holding that the Illinois Commerce Commission does not have exclusive jurisdiction to hear consumer claims against alternative retail electricity suppliers); *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875 (7th Cir. 2017) (reversing dismissal of consumer's putative class action seeking redress for excessive electricity charges by alternative retail electricity supplier); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 738 (2d Cir. 2017) (reversing dismissal of consumer's putative class action seeking redress for Whole Foods' alleged practice of representing the weight of prepackaged foods); *Tyler v. Michaels Stores, Inc*., 464 Mass. 492, 984 N.E.2d 737 (2013) (on certified question from U.S. District Court for Massachusetts, finding that the collection of ZIP codes from consumers using credit cards violates Massachusetts consumer protection law).

## Attorney Profiles

## Greg Blankinship

Greg Blankinship is a founding partner of FBFG, and he specializes in class actions in state and federal courts.  Mr. Blankinship has worked on substantial class action matters representing both defendants and plaintiffs in numerous state, federal, and multi-district class actions, including wage and hour and consumer fraud matters.  Mr. Blankinship has been named class counsel by numerous courts.  Mr. Blankinship has been designated a New York Super Lawyer every year 2014 and 2015, a distinction earned by only five percent of the lawyers in the New York metro area.

Prior to joining the Firm, Mr. Blankinship was an associate with Skadden, Arps, Slate, Meagher & Flom LLP and Greenberg Traurig, LLP.  Mr. Blankinship received his B.A. from Emory University in 1991 and his M.A. from the University of North Carolina in 1995.  He attended law school at the University of Washington, where he earned his J.D. in 2003.  While in law school, Mr. Blankinship was a member of the University of Washington Law Review.

A sampling of Mr. Blankinship's successful cases includes:

- Appointed Interim Co-Lead Class Counsel in *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-3073 (S.D.N.Y.).  Class action alleging deceptive labeling in connection with Defendant's Aveeno Naturals brand of personal care products.  Plaintiffs defeated Defendant's motions to dismiss and exclude Plaintiffs' expert's report, and won class certification.  On November 1, 2017, the Court approved a proposed settlement valued at $6.75 million.

- Appointed to the Plaintiffs' Executive committee in *In Re:  Santa Fe Natural Tobacco Company Marketing and Sales Practices Litigation*, No. 16-MD-2695 (D. N.M.).  Plaintiffs in this multi-district litigation contend that Santa Fe Natural Tobacco mislead consumers into believing their cigarettes were less harmful that others because they are natural and organic.  Litigation is on-going.

- Class counsel in *McLauglin v. IDT Energy* No. 14-4107 (E.D.N.Y.). Nationwide class action alleging that IDT overcharged consumers for gas and electric supply. On October 18, 2018, the Court certified the class, appointed the lawyers of FBFG as co-lead class counsel, and approved the settlement valued at over $54 million.

- Class counsel in *Edwards v. North American Power & Gas, LLC*, No. 14-1714 (D. Conn.). Nationwide class action alleging that North American Power charged electricity and gas rates far in excess of what it promised to charge variable rate customers. On August 2, 2018, the Court certified the class, appointed the lawyers of FBFG as co-lead class counsel, and approved the settlement valued at over $19 million.

- Counsel in *Wise v. Energy Plus Holdings LLC*, No. 11-7345 (S.D.N.Y.). Plaintiffs alleged that Energy Plus, an independent electricity supplier, misrepresented that its rates were reflective of the market when they were much higher. The Court granted final approval of a settlement covering more than 400,000 consumers in eight states and valued at more than $11,000,000.

- Appointed Class Counsel in *Brenner v. J.C. Penney Company, Inc.*, No. 13-11212 (D. Mass.). Plaintiff alleged that J.C. Penney requested and recorded customers' ZIP codes, which it then used to identify consumers' mailing addresses to send them junk mail, in violation of Massachusetts law. The Court granted final approval of a settlement valued at more than $3.5 million.

- Appointed Class Counsel in *Brenner v. Kohl's Corporation*, No. 13-cv-10935 (D. Mass). State-wide class action alleging that Kohl's unlawfully collected consumers' personal identification information. On December 5, 2013, the Court granted preliminary approval to a settlement valued at $435,000 and appointed lawyers of FBFG class counsel.

- Appointed Interim Co-Lead Class Counsel in *Chen v. HikoEnergy, LLC*, No. 14-cv-01771 (S.D.N.Y.). State-wide class action alleging that Hiko charged deceptively high electricity and natural gas rates.

- Appointed Interim Co-Lead Class Counsel in *Tyler v. Bed Bath & Beyond, Inc.*, No. 13-10639 (D. Mass.). Plaintiff alleged that Bed, Bath & Beyond illegally requested and recorded customers' ZIP codes.

Mr. Blankinship's broad experience as a litigator has also exposed him to a wide variety of substantive business and consumer issues. He also has substantial experience with the issues and procedural aspects of large class action and complex cases, including those brought against power bank manufacturers for misrepresentations

Mr. Blankinship, along with other attorneys at FBFG, currently serve as counsel on multiple actions around the country alleging similar claims premised on misrepresentations regarding the mAh capacity of power banks from manufacturers. *See Mancuso v. RFA Brands*, No. 18-0687 (W.D.N.Y.); *Burgos, et al. v. Sunvalleytek Int'l, Inc.*, No. 18-06910 (N.D. Cal.); *Brady, et al. v. Anker Innovations Limited, et al.*, No. 18-11396 (S.D.N.Y.); *Young, et al. v. Mophie, Inc.*, 18-00827 (C.D. Cal.); *Geske v. PNY Technologies, Inc.*, 19-05170 (N.D. Il.).

Mr. Blankinship is admitted to practice in New York and Massachusetts and is a member of the bars of the U.S. District Courts for the Eastern, Western, Northern, and Southern Districts of New York, the District of Connecticut, the District of Massachusetts, and the First, Second, Third, Seventh, and Ninth Circuit Courts of Appeals.

## Jeremiah Frei-Pearson

Jeremiah Frei-Pearson is a founding partner of Finkelstein, Blankinship, Frei-Pearson & Garber. He is a passionate advocate and an experienced litigator who represents consumers and employees in complex class actions. As a result of the victories he has won for his clients, the National Trial Lawyers Association selected Mr. Frei-Pearson as a member of the Top 100 Trial Lawyers from 2014 to 2018. Mr. Frei-Pearson is a member of the Best Attorneys of America, a distinction that is limited to less than 1% of attorneys, and he is also designated as Super Lawyer, a distinction awarded to only 5% of the New York Metro Area. Mr. Frei-Pearson practices in federal and state courts throughout the country and his areas of expertise include class actions, privacy, consumer fraud, employment law, and civil rights.

Prior to joining the Firm, Mr. Frei-Pearson was an associate with Kaye Scholer LLP, a multinational law firm, and a staff attorney with Children's Rights, a national public interest law firm representing children in foster care in class action reform lawsuits. Mr. Frei-Pearson received his B.A. from Skidmore College, Magna Cum Laude, Phi Beta Kappa in 2000 and he earned his J.D. in 2003 from Stanford Law School. While in law school, Mr. Frei-Pearson was a Public Interest Fellow and served as Senior Symposium Editor of the Stanford Law & Policy Review.

A sampling of Mr. Frei-Pearson's significant cases includes:

- Appointed co-class counsel in *Saint Joseph Health System Medical Information Cases*, JCCP No. 4716 (Cal. Sup. Ct.). The Court denied Saint Joseph's demurrer and the Court of Appeals upheld that ruling. After more than two years of litigation, the Court granted Plaintiffs' motion to certify a class of approximately 31,802 data breach victims. On January 14, 2015, the Court denied Saint Joseph's motion for summary judgment. The Court of Appeals upheld the Court's summary judgment and class certification decisions. The case was set for trial on August 24, 2015, but the parties reached a settlement valued at approximately $39 million, which the Court finally approved on February 3, 2016. This settlement provides the more money per capita to individual class members than any other known data breach settlement on record.

- Appointed co-lead class counsel in *Castillo v. Seagate Technology LLC*, No. 16-02136 (N.D. Cal.). Class action on behalf of over 12,000 individuals victimized by a data breach. On September 19, 2016, the Court denied Seagate's motion to dismiss in part. On October 19, 2017, the Court granted preliminary approval of the settlement agreement valued at up to $42 million.

- Appointed class counsel in *Sackin v. Transperfect Global, Inc.*, No. 17-1469 (S.D.N.Y. 2017). Class action on behalf of over 4,000 individuals victimized by a data breach. On June 15, 2017, the Court entirely denied Transperfect's motion to

dismiss.  On March 13, 2018, the Court preliminarily approved a settlement valued at over $40 million.

- Appointed co-class counsel in *Reed v. Friendly's Ice Cream, LLC*, No. 15-cv-00298 (M.D. Pa.).  The Court denied motions to dismiss and ruled for plaintiffs on several other motions in this wage and hour class action.  On January 31, 2017, the Court certified the class, appointed an FBFG lawyer as co-lead class counsel and finally approved a settlement valued at over $4.6 million.

- Appointed co-class counsel in *Al Fata v. Pizza Hut of America, Inc.*, No. 14-cv-376 (M.D. Fla.).  The Court denied defendant's motion to compel arbitration.  While Plaintiffs' class certification motion was *sub judice*, the parties reached a class settlement on behalf of a Florida class of delivery drivers alleging minimum wage violations.  The Court granted final approval of the settlement, which is valued at $3.1 million, on June 21, 2017.

- Appointed class counsel in *Hanna v. CFL Pizza, LLC*, No. 05-2011-CA-52949 (Fl. Cir. Court).  On September 3, 2013, the Court granted final approval of a settlement that created a substantial settlement fund for under-reimbursed Pizza Hut franchisee delivery drivers who alleged violations of Florida minimum wage law.

- Appointed co-class counsel in *Bellaspica v. PJPA, LLC*, No. 13-3014 (E.D. Pa.).  On June 22, 2016, the Court granted final approval of a FLSA collective action settlement, providing a settlement fund for under-reimbursed Papa John's franchisee pizza delivery drivers.

- Appointed class counsel in *Yoeckel v. Marriott*, No. 703387 (Queens Cty. Com. Div.).  Class action alleging that Marriott violated New York wage and hour laws.  On May 3, 2017, the Court certified a class and finally approved a settlement that provided class members with 100% of their maximum compensatory damages alleged.

- Appointed co-class counsel in *Miller v. Fresh*, No. 14-0880 (Mass. Suffolk Cty.).  State-wide class action alleging that Fresh unlawfully collected consumers' personal identification information.  On July 15, 2015 the Court certified a class and granted final approval to a settlement.

- Appointed co-class counsel in *Miller v. Patagonia*, No. 14-0888 (Mass. Suffolk Cty.).  State-wide class action alleging that Patagonia unlawfully collected consumers' personal identification information.  On February 9, 2015 the Court certified a class and granted final approval to a settlement.

- Counsel to the Plaintiffs in *D.G. ex rel. Stricklin v. Henry*, No. 08-cv-074 (N.D. Okl.).  In this class action to reform Oklahoma's foster care system, the Court certified a statewide class of Oklahoma's foster children (an opinion that was affirmed by the Tenth Circuit).  As a result of this litigation, Oklahoma has

committed to restructuring its state foster care agency to eliminate dangerous practices (such as an unsafe shelter where babies in state custody disproportionately suffered fractured skulls), and improve measurable outcomes for children in state custody.

- As counsel in *Charlie and Nadine H. v. Christie*, No. 99-3678 (D.N.J.), worked with the state agencies, a federally appointed monitor, and the Court to help ensure implementation of a consent decree to reform New Jersey's foster care system. Among many other significant achievements under the consent decree, New Jersey broke a record for adoptions achieved, significantly reformed supervision procedures that were inadequate, and substantially increased the percentage of foster children who subsequently attended college. Mr. Frei-Pearson continues to be involved in this litigation in a *pro bono* capacity.

Mr. Frei-Pearson has received numerous awards for his legal work, including the New York City Bar Association's Thurgood Marshall Award for his work on death penalty cases, a citation from the New York City Council for his child advocacy work, and the 2010 Palomountain Award from Skidmore College. Mr. Frei-Pearson is also active in his community; he is a district leader in White Plains, where he serves as Chair of the Mayor's Advisory Committee For People With Disabilities and he sits on the Board of Legal Services of the Hudson Valley.

Mr. Frei-Pearson is admitted to practice in New York and is a member of the bars of the U.S. District Courts for the Eastern, Western and Southern Districts of New York.

## Todd S. Garber

Todd S. Garber is a founding partner in the Firm. Mr. Garber is an experienced litigator, who practices in state and federal courts. His areas of experience include class actions, consumer fraud, securities fraud, complex commercial disputes, business torts, antitrust, and general litigation. Mr. Garber was designated a New York Super Lawyer in 2013 and 2014, a distinction earned by only five percent of the lawyers in the New York metro area.

Prior to joining the Firm, Mr. Garber worked at Lowey Dannenberg Cohen & Hart, P.C., where he prosecuted and defended complex commercial litigation matters and class actions.

Mr. Garber's career achievements include:

- Appointed Class Counsel in *Brenner v. J.C. Penney Company, Inc.*, No. 13-11212 (D. Mass.). Plaintiff alleged that J.C. Penney requested and recorded customers' ZIP codes, which it then used to identify consumers' mailing addresses to send them junk mail, in violation of Massachusetts law. The Court granted final approval of a settlement valued at more than $3.5 million.

- Appointed Class Counsel in *Brenner v. Kohl's Corporation*, No. 13-cv-10935 (D. Mass). State-wide class action alleging that Kohl's unlawfully collected consumers' personal identification information. On March 12, 2014, the Court

10

granted final approval to a settlement valued at $425,000 and appointed lawyers of FBFG class counsel.

- Appointed Co-Lead Class Counsel in *Quinn v. Walgreen*, No. 12-8187 (S.D.N.Y.). Nationwide settlement valued at $2.8 million to resolve Plaintiffs' claim that Defendant's glucosamine products did not perform as represented. . On March 24, 2015, the Court finally approved the settlement and certified the class.

- Appointed Interim Co-Lead Class Counsel in *Chen v. HikoEnergy, LLC*, No. 14-cv-01771 (S.D.N.Y.). State-wide class action alleging that Hiko charged deceptively high electricity and natural gas rates. On May 9, 2016, the Court certified the class and approved a settlement valued at over $10 million.

- Appointed Interim Co-Lead Class Counsel in *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-3073 (S.D.N.Y.). Class action alleging deceptive labeling in connection with Defendant's Aveeno Naturals brand of personal care products. Plaintiffs defeated Defendant's motions to dismiss and exclude Plaintiffs' expert's report, and won class certification. On November 1, 2017, the Court approved a proposed settlement valued at $6.75 million.

- Appointed Co-Lead Class Counsel in *Tyler v. Bed Bath & Beyond, Inc.*, No. 13-10639 (D. Mass.). Plaintiff alleged that Bed, Bath & Beyond illegally requested and recorded customers' ZIP codes.

- Class Counsel in *Wise v. Energy Plus Holdings LLC*, No. 11-7345 (S.D.N.Y.). Plaintiffs alleged that Energy Plus, an independent electricity supplier, misrepresented that its rates were reflective of the market when they were much higher. The Court granted final approval of a settlement covering more than 400,000 consumers in eight states and valued at more than $11,000,000.

- As counsel for the New York City Pension Funds, Lead Plaintiff in *In re Juniper Networks, Inc. Sec. Litig.*, No. C-06-04327 JW (N.D. Cal 2010), helped achieve a settlement of $169.5 million, one of the largest settlements in an options backdating case, after more than three years of hard-fought litigation.

- Involvement in the prosecution of a number of high-profile cases, which have resulted in hundreds of millions of dollars in recoveries for investors, including *In re WorldCom Securities Litigation*, *In re HealthSouth Securities Litigation, In re DaimlerChrysler AG Securities Litigation*, and *In re Bayer AG Securities Litigation*.

- Representation of institutional investors in stockholder voting rights and corporate governance cases, including *Gabelli Global Multimedia v. Western Investment LLC*, 700 F. Supp. 2d 748 (D. Md. 2010); *Delcath Systems, Inc. v. Ladd*, 466 F.3d 257 (2d. Cir. 2006); *Salomon Brothers Mun. Partners Fund, Inc. v. Thornton*, 410 F. Supp. 2d 330 (S.D.N.Y. 2006); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners*, 260 F. Supp. 2d 616 (S.D.N.Y. 2003); and *Millenco L.P. v. meVC Draper Fisher Jurvetson Fund I, Inc.*, 824 A.2d 11 (Del. Ch. 2002).

Mr. Garber received his B.A. from Cornell University in 1999 and his J.D. from the Benjamin N. Cardozo School of Law in 2002, where he was articles editor for the Cardozo Journal of International and Comparative Law, and was competitively selected to work for the New York City Law Department's Corporation Counsel in its Appellate Division.

Mr. Garber co-authored "*Morrison v. National Australia Bank: The Potential Impact on Public Pension Fund Fiduciaries*," The NAPPA Report, Vol. 24, Number 3, August 2010, and "*Loss Causation in the Ninth Circuit*," New York Law Journal, September 2, 2008.

Mr. Garber is admitted to practice in New York and Connecticut and is a member of the bars of the U.S. District Courts for the Eastern, Western and Southern Districts of New York and the Second Circuit Court of Appeals.

## Andrew Finkelstein

Andrew Finkelstein is the Managing Partner of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP. He has become a noted consumer activist through his representation of injured individuals against corporate wrong doers and other irresponsible parties.

Mr. Finkelstein served as Captain of the 9/11 Victim Compensation Fund in a pro bono capacity, where he helped obtain over $10 million for victims and waived all legal fees associated with this representation. Mr. Finkelstein is also the Chairman of the Plaintiff Personal Injury Steering committee for the Neurontin Liability Multi District Litigation in Boston, Massachusetts. He has worked closely with the FDA regarding the adverse effects associated with Neurontin, having filed a Citizens Petition seeking enhanced warning of the side effects of this drug, specifically increased suicidal tendencies. Additionally, Mr. Finkelstein is a member of the Executive Steering Committee of the Hormone Replacement Therapy Multi District Litigation in both Philadelphia, Pennsylvania and Little Rock, Arkansas. He is a member of the Plaintiff Steering Committee of the Ortho Evra Birth Control Patch New Jersey Coordinated Litigation, and the Plaintiff Steering Committee of the Viagra Multi District Litigation in Minneapolis, Minnesota.

Mr. Finkelstein is a frequent lecturer at Continuing Legal Education courses. His topics include "Science in the Courtroom", "Technology in the Courtroom", "Prosecution of a Pharmaceutical Case", "The Ethics of On-line Advertising", and "Structured Settlements and the Personal Injury Settlement."

In addition to these presentations, Mr. Finkelstein volunteers his time to present his "Commit to Quit Texting While Driving" seminar to area high school students.

## Bradley F. Silverman

Mr. Silverman is a highly experienced litigator. He has represented individuals and public and private companies in courts throughout the country. He has broad experience handling numerous types of disputes. This experience includes the representation of plaintiffs and defendants in: class actions; contract disputes; employment matters; disputes relating to the management and control of closely held businesses; intellectual property and trade secret disputes; RICO actions; antitrust and unfair competition matters; real estate disputes; Title IX and other claims relating to college

disciplinary actions; challenges to local and state laws that are either unconstitutional or preempted by federal law; and actions to enforce First Amendment rights.

At FBFG, Mr. Silverman's practice focuses on class actions in which he represents individuals across the country who have been harmed by the unlawful acts of companies. Past class actions in which he has been involved include *In re: Coca-Coca Products Marketing and Sales Practices Litigation*, a multidistrict litigation where Mr. Silverman's prior firm served as co-lead counsel for all plaintiffs. In that case and in other cases, he has asserted claims against some of the largest food manufacturers in the world for placing illegal, deceptive, and false statements on product labels.

Prior to joining FBFG, Mr. Silverman practiced at several of the leading litigation firms in New York City, including the international law firm of Kaye Scholer LLP (now Arnold & Porter Kaye Scholer LLP). He received his undergraduate degree, *magna cum laude*, from Brandeis University. He received his law degree from the University of Pennsylvania Law School where he served as a member of the Moot Court Board and as Senior Editor of the Journal of International Economic Law. Born and raised in Brooklyn, New York, he and his family now reside in Westchester County.

### John Sardesai-Grant

Mr. Sardesai-Grant is of counsel at FBFG, where he specializes in class actions in state and federal courts.

Before joining FBFG, John was an associate at Baritz & Colman LLP, where he represented clients in employment discrimination and commercial disputes. As of counsel to Reese Richman LLP, John brought cases against the New York Police Department on behalf of victims of police misconduct. As an associate at Brower Piven, P.C., he prosecuted complex securities fraud class actions on behalf of shareholders. And as an associate at Bickel & Brewer, a premier commercial litigation boutique, he represented clients in a variety of regulatory and commercial matters.

John earned his B.S. in Economics from The Wharton School at the University of Pennsylvania, as well as an M.A. in Chinese from the University of Pennsylvania's Graduate School of Arts and Sciences. John received his J.D. from New York University School of Law.

John is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado. He is an active member of the New York County Lawyers Association.

### Chantal Khalil

Ms. Khalil is an associate at FBFG, where she specializes in class actions in state and federal courts. She is admitted to practice in New York and in the United States District Court for the Southern District of New York. Ms. Khalil received her J.D. from George Washington University Law School and her B.A. from New York University (*magna cum laude*). During Law School, Ms. Khalil served on *The George Washington International Law Review*, was recognized as a Thurgood Marshall Scholar, and received President Obama's Volunteer Service Award.

**Ayana McGuire**

Ms. McGuire is an associate at FBFG, where she specializes in class actions in state and federal courts. Ms. McGuire received her J.D. from University of Connecticut School of Law and her B.A. from Cornell University. She is a member of the New York bar.

**Andrew White**

Mr. White is an associate at FBFG, where he specializes in class actions in state and federal courts. Mr. White received his J.D. from New York University School of Law and his B.A. from State University of New York, College at Potsdam. During law school, Mr. White served as an editor for the Journal of Law and Liberty. Mr. White is admitted to practice in New York and in the United States District Court for the Southern District of New York.

**W. Scott Terrell**

Mr. Terrell is an associate at FBFG, where he specializes in class actions in state and federal courts. Before joining FBFG, Mr. Terrell clerked for the Honorable Dale S. Fisher and for Magistrate Judge Karen L. Stevenson, both in the Central District of California. He also worked for four years in the Bronx District Attorney's Office, serving successfully in the Trial Bureau and in the Appeals Bureau. Mr. Terrell received his J.D. from the University of Virginia School of Law and his B.A. from Morehouse College.

**Earl Kirkland**

Mr. Kirkland is an associate at FBFG, where he specializes in class actions in state and federal courts. Mr. Kirkland joined the firm from the NAACP Legal Defense and Educational Fund, Inc. (LDF), where he litigated complex civil rights matters across the country involving issues of educational equity, criminal justice, and voting rights. At LDF, he also co-drafted amicus briefs defending transgender youth rights and challenging Pennsylvania's death penalty. Mr. Kirkland previously clerked for the Honorable Damon J. Keith of the U.S. Court of Appeals for the Sixth Circuit, the Honorable Linda V. Parker of the U.S. District Court for the Eastern District of Michigan, and them Honorable Edward Ewell, Jr. of the Third Judicial Circuit of Michigan. He received his J.D. from Cornell Law School and his B.A., with honors, from the University of Michigan