## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | |
|---|---|
| **MICHAEL HESTER**, individually and on behalf of others similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**WALMART, INC.,**<br><br>Defendant. | Case No.  5:18-CV-05225-TLB<br><br>**DECLARATION OF STEVEN WEISBROT, ESQ. OF ANGEION GROUP LLC RE: THE NOTICE PLAN** |

I, Steven Weisbrot, Esq., declare under penalty of perjury as follows:

1.      I am a partner at the class action notice and settlement administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the ethics of legal notification in class action settlements, using digital media in due process notice programs, as well as claims administration generally. I am the author of multiple articles on class action notice, claims administration, and notice design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

3.      I am certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23*.

4.      I have given public comment and written testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media and print publication, in effecting due process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and suggest an educational curriculum for the judiciary concerning notice procedures.

5.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

6.      My notice work comprises a wide range of settlements that include product defect, data breach, mass disasters, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

7.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328:

> To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan…. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.
>
> The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a)      On February 24, 2017, The Honorable Ronald B. Rubin in *James Roy et al. v. Titeflex Corporation et al.*, No. 384003V (Md. Cir. Ct.), noted when granting preliminary approval to the settlement:

What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make a decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite.*** (Emphasis added).

(b)     Likewise, on July 21, 2017, The Honorable John A. Ross in *In Re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.), stated in the Court's Order granting preliminary approval of the settlement:

The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —***is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process***. (Emphasis added).

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

(c)     In the *In Re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, Case No. 17-md-02777-EMC (N.D. Cal.), in the Court's February 11, 2019 Order, the Honorable Edward M. Chen ruled:

[In addition] the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc.

Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

(d)     On June 26, 2018, in his Order granting preliminary approval of the settlement in

*Mayhew v. KAS Direct, LLC, et al.*, Case No. 16-cv-6981 (VB) (S.D.N.Y.), The Honorable

Vincent J. Briccetti ruled:

> In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

(e)     A comprehensive summary of judicial recognition Angeion has received is

attached hereto as **Exhibit A**.

8.     By way of background, Angeion is an experienced class action notice and claims

administration company formed by a team of executives that have had extensive tenures at five

other nationally recognized claims administration companies. Collectively, the management team

at Angeion has overseen more than 2,000 class action settlements and distributed over $12 billion to class members. The executive profiles as well as the company overview are available at http://www.angeiongroup.com/our_team.htm.

9.      As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of settlement and claims processing services.

10.     This declaration will describe the Notice Plan that we will implement in this matter, including the considerations that informed the development of the plan and why it will provide due process to the Settlement Class.  In my professional opinion, the Notice Plan described herein is the best practicable notice under the circumstances and fulfills all due process requirements.

## <u>SUMMARY OF THE NOTICE PLAN</u>

11.     The Notice Plan is the best notice that is practicable under the circumstances and fully comports with due process, Fed. R. Civ. P. 23. Specifically, the Notice Plan provides for a media notice campaign consisting of state-of-the-art internet advertising combined with a custom social media campaign.  The Notice Plan also includes a dedicated settlement website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.  In short, the Notice Plan is the best notice that is practicable under the circumstances and constitutes methods that are reasonably calculated to inform Settlement Class Members of this Settlement and their rights thereunder.

12.     As discussed in greater detail below, the notice plan is designed to deliver an approximate 70% reach with an average frequency of 3.1 times. What this means in practice is, separate and apart from the dedicated settlement website and toll-free telephone line (which are difficult to measure in terms of reach percentage, but will nonetheless aid in informing Settlement Class Members of their rights and options under the Settlement), 70% of our Target Audience will see a digital advertisement concerning the Settlement an average of 3.1 times each.

13.     The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm". Barbara J. Rothstein

& Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges", at 27 (3d Ed. 2010).

## CLASS DEFINITION

14.     The "Settlement Class" means the following: all Persons who purchased any Product during the Settlement Class Period. Excluded from the Settlement Class are Walmart, including any parent, subsidiary, affiliate or controlled person of Walmart; Walmart's officers, directors, agents, employees, and their immediate family members, as well as the judicial officers assigned to the Litigation and members of their staffs and immediate families.

## ONLINE NOTICE

15.     Angeion will utilize a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States.  It is estimated that U.S. advertisers spent nearly $60 billion on programmatic display advertising in 2019 and by 2021, it is estimated that almost 88%, or $81 billion, of all U.S. digital display ad dollars will transact programmatically[1].  In laymen's terms, programmatic advertising is a method of advertising where an algorithm identifies and examines demographic profiles and uses advanced technology to place advertisements on the websites where members of the audience are predicted to visit (these websites are accessible on computers, mobile phones and tablets.)

16.     The Settlement Class definition was used as the starting point to create the media notice campaign.  To develop the media notice campaign and to verify its effectiveness, our media team analyzed data from 2019 Gfk MRI Market-by-Market to profile the class and arrive at the Target Audience.   Specifically, the following target definition was used to profile Settlement Class Members and create an appropriate Target Audience:

- Adults who have shopped at Walmart
- Purchased an electronic accessory
- Own a smartphone

---

[1] "US Programmatic Ad Spending Forecast 2019" available at https://www.emarketer.com/content/us-programmatic-ad-spending-forecast-2019.

17.    Based on the target definition, the potential audience size is estimated at 30,740,000.  The Target Audience is intentionally overinclusive and, based on objective syndicated data, will allow the parties to report the reach and frequency to the court, with the confidence that the reach within the Target Audience and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

18.    Understanding the socio-economic characteristics, interests and practices of a target group aids in the proper selection of media to reach that target.  Here, the Target Audience has the following characteristics:

- 61% are Adults between the ages of 25-54, with an average age of 43
- 54% are female
- 57.3% are married
- 49% have children
- 35% have a college or postgraduate degree
- The average household income is $96,000
- 73% use Facebook

19.    To identify the best vehicles to deliver messaging to the Target Audience, Angeion also reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population.  Here, the objective syndicated data shows that members of the Target Audience are "above average" internet users, when compared against the overall population.

20.    Given the strength of digital as well as our Target Audience's internet use, we recommend utilizing a robust internet advertising campaign to reach Settlement Class Members.  This media schedule will allow us to deliver an effective reach level and a vigorous frequency, which will provide due and proper notice to the class.

## ONLINE NOTICE

21.    Angeion utilizes a programmatic approach when purchasing digital media.  This approach allows us to focus squarely on the reaching the prototypical individual Settlement Class Member,

rather than allocating resources to determine which particular websites would be most appropriate based on a demographic profile. Programmatic media purchasing relies on advanced targeting, machine learning, and a known and verifiable Target Audience profile to ensure we are reaching members of our Target Audience online. In fact, purchasing display and mobile inventory programmatically provides the highest reach, allows for multiple advanced targeting layers, and offers the most cost-efficient rates to reach potential Settlement Class Members. Advertisements will run on desktop and mobile devices to reach the most qualified audience where they surf, shop and play. Moreover, targeting users who are currently browsing, have recently browsed, or are known purchasers of *Onn products* will also help qualify impressions to ensure messaging is served to the most relevant audience.

22.     Multiple targeting layers will be implemented into the programmatic campaign to help ensure delivery to the most appropriate users, inclusive of the following tactics:

- *Look-a-like modeling*: Using data methods, we will build a look-a-like audience against known Onn purchasers.
- *Predictive Targeting* (prospecting): Allows technology to "predict" which users will be served the ad.
- *Audience Targeting*: Leverage demographic and behavioral data to find our exact audience.
- *Geotargeting*: Only serving ads in locations where we feel is most relevant.
- *Site Retargeting*: Re-message previous site visitors to drive conversion with qualified audiences.

23.     To combat the possibility of non-human viewership of the digital advertisements and to verify effective unique placements, Angeion employs Oracle's BlueKai, Adobe's Audience Manager, and/or Lotame, which are demand management platforms ("DMP"), as well as Integral Ad Science ("IAS")[2], the leading ad verification company to prevent fraudulent activity.

---

[2] Integral Ad Science (IAS) is a global technology and data company that builds verification, optimization, and analytic solutions to empower the advertising industry to effectively influence consumers everywhere, on every device. They solve the most pressing problems for brands, agencies, publishers, and technology companies by verifying that every impression has the opportunity to be effective, optimizing towards opportunities to consistently

24.     DMPs allow Angeion to learn more about the online audiences that are being reached. Through pixels attached behind the scenes, Angeion can and will collect data on users who are served impressions, click on the banner, and visit the dedicated website. From this data, demographic profiles can be developed and leveraged for changes in targeting strategies to increase the overall performance of the digital campaign. These insights help Angeion to understand the type of user profile that is most valuable to campaign success.

25.     IAS has received the Media Rating Council ("MRC")[3] accreditation for Sophisticated Invalid Traffic (SIVT) detection for desktop and mobile web traffic, which adds a critical level of safety to the Notice Program.

26.     The internet banner notice portion will be implemented using a 4-week desktop and mobile campaign, utilizing standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50).   The internet banner notice portion is designed to serve approximately 42,187,500 impressions and is strategically designed to notify and drive Settlement Class Members to the dedicated settlement website, where they can find more information about the Settlement and are able to submit a claim form.

27.     To track campaign success, Angeion will implement conversion pixels throughout the settlement website to better understand audience behavior and identify those members who are most likely to convert.  The programmatic algorithm will change based on success and failure to generate conversions throughout the process.  Successful conversion on the claim submission

---

improve results, and analyzing digital's impact on consumer actions. Built on data science and engineering, IAS is headquartered in New York, with global operations in ten countries.

[3] The Media Rating Council was established in the early 1960's at the behest of the U.S. Congress. The objective or purpose to be promoted or carried on by Media Rating Council is: (a) to secure for the media industry and related users audience measurement services that are valid, reliable and effective; (b) to evolve and determine minimum disclosure and ethical criteria for media audience measurement services; (c) to provide and administer an audit system designed to inform users as to whether such audience measurements conform with the criteria and procedures developed.

button will be the primary goal, driving optimizations.

## SOCIAL MEDIA CAMPAIGN

28.     The Notice Plan also includes a custom social media campaign utilizing Facebook, a leading social media platform in North America. The social media campaign uses an interest-based approach which focuses on the interests that users exhibit while on the social media platform. Facebook will allow Angeion to cause ads to be delivered directly to those Target Audience members via the Facebook platform, whether on mobile device, tablet or computer.

29.     Specifically, a combination of static, carousel and video units will be utilized to engage with the Target Audience via a mix of news feed and stories units to optimize performance. Look-a-like modeling against known audiences and predictive targeting will be implemented to further qualify and deliver impressions to the Target Audience.

30.     The social media campaign will run for four (4) weeks to coincide with the programmatic display advertising portion of the Notice Plan and is designed to deliver approximately 25,000,000 impressions.

## RESPONSE MECHANISMS

31.     The Notice Plan will also implement the creation of a case-specific website, where Settlement Class Members can easily view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement.  The website will be designed to be user-friendly and make it easy for Settlement Class Members to find information about the case. The website will also have a "Contact Us" page whereby Settlement Class Members can send an email with any additional questions to a dedicated email address.  Likewise, Settlement Class Members will be able to file a claim directly on the website.

32.     A toll-free hotline devoted to this case will be implemented to further apprise Settlement Class Members of the rights and options pursuant to the terms of the Settlement.  The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Settlement Class

Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

33.     This declaration describes the reach and frequency evidence which courts systemically rely upon in reviewing class action publication notice programs for adequacy.  The reach percentage and the number of exposure opportunities meet or exceed the guidelines as set forth in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

34.     Specifically, the digital media and social media portions of the Notice Plan are designed to serve a combined 67,187,000 impressions to deliver an approximate 70% reach with an average frequency of 3.1 times each.  The 70% reach does not include the dedicated settlement website and toll-free hotline, which are not calculable in reach percentage but will nonetheless aid in informing Settlement Class Members of their rights and options under the Settlement.

## ADMINISTRATION AND DISTRIBUTION

35.     Angeion will receive, process and evaluate Claim Form submissions for timeliness and completeness to determine validity. Additionally, Angeion performs audits on all Claim Form submissions to identify duplicative and/or potentially fraudulent submissions via exact match and looser-matching algorithms, as well as IP duplication detection and IP switching detection review.

36.     Settlement Class Members who submit a timely and valid Claim Form ("Approved Claimants") will be issued Settlement Class Member Payments. Approved Claimants will have the option to receive  their Settlement Class Member Payments via printed check, ACH payment, PayPal or Venmo.

## CONCLUSION

37.     The Notice Plan outlined above includes a robust media campaign combined with a custom social media campaign.  Further, the Notice Plan includes the implementation of a dedicated settlement website and toll-free hotline to further inform Settlement Class Members of their rights and options in the litigation.

38.     In my opinion, the Notice Plan will provide full and proper notice to Settlement Class Members before the claims, opt-out, and objection deadlines.  Moreover, it is my opinion that Notice Plan is the best notice that is practicable under the circumstances, fully comports with due process and Fed. R. Civ. P. 23.  After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 15, 2020

*/s/ Steven Weisbrot*
STEVEN WEISBROT
