## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

**MICHAEL HESTER,**
**On Behalf of All Others Similarly Situated**                                    **PLAINTIFF**

**vs.**                              **CASE NO. 5:18-CV-05225-TLB**

**WALMART, INC.,**                                              **DEFENDANT**

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
### <u>MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD</u>

# TABLE OF CONTENTS

**Page No.**

Table of Authorities ....................................................................................................... ii

Introduction ....................................................................................................................1

Argument ........................................................................................................................4

I.    Plaintiff's Request For Attorneys' Fee Is Fair And Reasonable..........................4

      A.    The Court May Award Fees Based On Either A
            Percentage Of The Common Fund Or Class Counsel's Lodestar...........................5

      B.    The Requested Attorneys' Fees Are
            Justified Under The Percentage Method..................................................6

      C.    The Requested Attorneys'
            Fees Are Also Warranted Under The Lodestar Method .................................8

      D.    The Johnson Factors Favor Plaintiff's Fee Request ...............................................10

            1.    Substantial Time And Labor
                  Was Required; Class Counsel Assumed Great Risks ..............................11

            2.    The Settlement Confers
                 An Excellent Benefit on the Class ...........................................................12

            3.    The Difficulty And Novelty Of
                 The Legal And Factual Issues, And The
                 Significant Skill Of Experienced Counsel .................................................13

            4.    Reaction Of The Class ................................................................................15

            5.    Comparison To Other Fee
                 Awards In Class Action Settlements..........................................................16

II.    The Expenses Incurred Are Reasonable
      And Were Necessary To Achieve The Benefit Obtained ...................................16

III.    Dr. Hester's Service Award Request Is Reasonable ........................................17

Conclusion…………….… ..........................................................................................19

## Table of Authorities

**Page(s)**

**Cases**

*Acevedo, v. Workfit Med. LLC,*
  187 F. Supp. 3d 370 (W.D.N.Y. 2016) .............................................................. 10, 17

*Bassett v. Credit Mgmt. Servs., Inc.,*
  2019 WL 4262019 (D. Neb. Aug. 6, 2019)................................................................ 18

*Boeing Co. v. Van Gamert,*
  444 U.S. 472 (1980) ...................................................................................................... 4

*Caligiuri v. Symantec Corp.,*
  855 F.3d 860 (8th Cir. 2017)....................................................................................... 17

*Castillo v. Seagate Tech., LLC,,*
  No. 16-01958, ECF No. 85 (N.D. Cal. Mar. 14, 2018) ................................................ 9

*Cirese Inv. Co. v. Qwest Commc'ns Co., LLC,*
  2013 WL 12284915 (W.D. Mo. Jan. 18, 2013) ........................................................... 9

*Davis v. J.P. Morgan Chase & Co.,*
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...................................................................... 10

*DeBoer v. Mellon Mortg. Co.,*
  64 F.3d 1171 (8th Cir. 1995)....................................................................................... 15

*Farruggio v. 918 James Receiver,*
  No. 003831/2017, ECF No. 340 ................................................................................... 9

*Guevoura Fund Ltd. v. Sillerman,*
  2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019)................................................... 9

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ..................................................................................................... 13

*Hernandez v. Merryl Lynch & Co., Inc.,*
  2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ........................................................... 10

*Huyer v. Buckley,*
  849 F.3d 395 (8th Cir. 2017).................................................................................Passim

*Huyer v. Wells Fargo & Co.*,
   314 F.R.D. 621 (S.D. Iowa 2016) ................................................................. 10, 18

*In re Charter Communications, Inc.*,
   2005 WL 4045741 (E.D. Mo. June 30, 2005)............................................... 10

*In re Crazy Eddie Sec. Litig.*,
   824 F. Supp. 320 (E.D.N.Y. 1993)................................................................ 16

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993) ................................................................... 4

*In re Flight Transp. Corp. Sec. Litig.*,
   685 F. Supp. 1092 (D. Minn. 1987) .............................................................. 12

*In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
   847 F.3d 619 (8th Cir. 2017)...................................................................... 5, 6

*In re St. Paul Travelers Securities Litigation*,
   2006 WL 1116118 (D. Minn. April 25, 2006) ............................................. 10

*In re Terra-Drill P'Ships Sec. Litig.*,
   733 F. Supp. 1127 (S.D. Tex. 1990) ............................................................. 12

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002)................................................................ 6, 7, 16

*In re Veeco Instruments, Inc. Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................................... 17

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002)...................................................................... 4

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   2011 WL 3352460 (N.D. Cal. Aug. 2, 2011)............................................... 14

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .....................................................Passim

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
   2013 WL 716460 (D. Minn. Feb. 27, 2013) ................................................ 18

*In re: Target Corp. Customer Data Security Breach Litig.*,
   2016 WL 2757692 (D. Minn. May 12, 2016) .............................................. 18

*Jenkins v. Pech*,
  2016 WL 715780 (D. Neb. Feb. 22, 2016) .................................................................. 5

*Johnson v. Georgia Highway Express*,
  488 F.2d 714 (5th Cir. 1974) .................................................................. 10, 11

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) .................................................................. 5

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) .................................................................. 12

*Klug v. Watts Regulator Co.*,
  2017 WL 1373857 (D. Neb. April 13, 2017) ........................................... 8, 11, 17, 18

*Knutson v. Sprint Commc'ns Co.*, L.P.,
  2013 WL 2490644 (D.S.D. June 10, 2013) .................................................. 3, 15

*Kramer v. Scientific Control Corp.*,
  534 F.2d 1085 (3d Cir. 1976) .................................................................. 4

*Lees v. Anthem Ins. Companies Inc.*,
  2015 WL 3645208 (E.D. Mo. June 10, 2015) .................................................. 18

*Lilly, v. Jamba Juice Co.*,
  2015 WL 2062858 (N.D. Cal. May 4, 2015) .................................................. 19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................... 12

*Marshall v. Green Giant Co.*,
  942 F.2d 539 (8th 1991) .................................................................... 14

*Meller v. Bank of the W.*,
  2018 WL 5305562 (S.D. Iowa Sept. 10, 2018) ............................................ 6

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ........................................................................ 4

*Nelson v. Wal-Mart Stores, Inc.*,
  2009 WL 2486888 (E.D. Ark. Aug. 12, 2009) ............................................. 10

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) .............................................................. 4

*Prater v. Medicredit, Inc.*,
    2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ............................................................... 18

*Ray v. Lundstrom*,
    2012 WL 5458425 (D. Neb. Nov. 8, 2012) .................................................................. 8

*Reed v. Friendly's Ice Cream, LLC.*,
    No. 15-298, ECF No. 105 (M.D. Pa. Jan. 31, 2017) ..................................................... 9

*Roeser v. Best Buy Co.*,
    2015 WL 4094052 (D. Minn. July 7, 2015) ............................................................... 19

*Sackin v. TransPerfect Global, Inc.*,
    No. 17-01469, ECF No. 74 (S.D.N.Y. Dec. 14, 2018) ............................................... 9

*Sharp v. Watts Regulator Co.*,
    2017 WL 1373860 (D. Neb. April 13, 2017) .............................................. 11, 17, 18

*Winstead v. ComplyRight, Inc.*,
    No. 18-04990, ECF No. 101 (N.D. Ill. Oct. 7, 2019) ................................................. 9

*Yarrington v. Solvay Pharmaceuticals, Inc.*,
    697 F.Supp. 2d 1057 (D. Minn. 2010) ......................................................... 7, 11, 12

## **Rules**

Federal Rule of Civil Procedure 23(h) ............................................................... 6, 9, 10

Pursuant to Federal Rule of Civil Procedure 23(h) -- and as set forth in the settlement agreement (the "Settlement Agreement" or "Settlement") between Plaintiff Dr. Michael Hester ("Plaintiff" or "Dr. Hester") and Defendant Walmart, Inc. ("Defendant" or "Walmart") (collectively, the "Parties") -- Finkelstein, Blankinship, Frei-Pearson & Garber LLP ("FBFG") and Carney Bates & Pulliam, PLLC (collectively, "Class Counsel") respectfully request that the Court award attorneys' fees in the amount of $366,666.00, and costs in the amount of $69,624.85 for reimbursement of out-of-pocket expenses. Additionally, Class Counsel request that the Court award named Plaintiff, Dr. Hester, a service award in the amount of $5,000. Pursuant to the terms of the Settlement Agreement, Walmart does not oppose this motion.

## <u>INTRODUCTION</u>

Plaintiff alleged that Defendant Walmart ("Defendant" or "Walmart") engaged in unjust, unfair, and deceptive practices by misrepresenting the capacity of its power banks ("Power Banks") and that Walmart is necessarily liable for breach of express warranty; violation of states' deceptive trade practices acts and unfair business practices acts; violation of states' consumer protection statutes; and unjust enrichment. Settlement Agreement, ECF No. 59-1 at ¶ 3.1. Plaintiff further alleged that Walmart should be required to accurately label its Power Banks and pay restitution to the Class relating to the sale of its Power Banks, all as more particularly set forth in the First Amended Complaint ("FAC"). Settlement Agreement ¶ 3.1; FAC, ECF No. 34. Walmart denies all of Plaintiff's allegations. Settlement Agreement ¶ 3.1. After nearly two years of litigation and extensive arm's-length negotiations, the Parties were finally able to reach Settlement. The Settlement Agreement provides for, *inter alia*: (a) the establishment of a non-reversionary settlement fund by Defendant, *i.e.,* a common-fund settlement without reversion of

unclaimed funds, in the amount of $1,100,000.00; and (b) requires Defendant to substantially change the way it markets Power Banks with respect to capacity. Specifically, Defendant agreed to identify both the rated and actual capacity of its Onn Power Banks on the packaging, so that consumers will know the actual mAh that they can expect to be able to use to charge personal electronic devises ("PEDs"). *Id.* at ¶ 6.3.

That this case was able to settle is largely attributable to Class Counsel's litigation efforts. The work that led to this result included investigating, preparing and filing the initial and amended complaints (ECF Nos. 1 and 34); engaging in two years of discovery, including the drafting of interrogatories and requests for production, reviewing the resulting thousands of pages of documents, and responding to similar requests from Defendant; defending the deposition of Plaintiff and taking Defendant's Rule 30(b)(6); briefing an opposition to Defendant's motion to dismiss, which was subsequently withdrawn (ECF No. 18); retaining two experts and briefing Plaintiff's motion for class certification (ECF No. 42); and engaging in arm's-length settlement negotiations.[1]

For these efforts, Class Counsel now seek (1) $366,666.00 (one third of the $1,100,000 monetary value of the Settlement) as their reasonable attorneys' fees, (2) $69,624.85 in costs for reimbursement of out-of-pocket expenses incurred in the prosecution of this litigation; and (3) $5,000 as a service award to Plaintiff for his efforts taken on behalf of the Class. This amount will compensate Class Counsel for work already performed in this case and for all the work remaining to be performed, including making sure that the Settlement is fairly administered and implemented, preparing for and attending the final fairness hearing, and obtaining dismissal of

---

[1] For a detailed discussion of the background of this case, see Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, filed contemporaneously herewith.

this action.   Indeed, Class Counsel's lodestar is $639,785.50, which means the requested fees represent a negative multiplier of .57.  As explained below, the requested fees and expenses are in line with Eighth Circuit precedent for fees and expenses in similar cases.

Further, the Notice Plan, which was implemented in accordance with the Preliminary Approval Order, informed Class Members that Class Counsel intended to apply to the Court for award of attorneys' fees up to $366,666 in addition to case costs and expenses, and an incentive payment for the Plaintiff of $5,000.  November 16, 2020 Declaration of Steven Weisbrot ("Weisbrot Decl.") at ¶ 7.  Class Members were made aware of Class Counsel's intentions to request the fees sought in this action, and not a single Class Member objected to the Settlement or sought to be excluded from the Class.  *Id.*  Thus, the Settlement enjoys the support of the Class.  In these circumstances, it is appropriate for the Court to award the requested attorneys' fees.  *Knutson v. Sprint Commc'ns Co*, L.P., 2013 WL 2490644, at *4 (D.S.D. June 10, 2013) ("The notice also informed class members of their ability to object to the fee-and-expense request. No class member objected to it. The absence of objections by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

In sum, Class Counsel respectfully submit that their request for an award of attorneys' fees and reimbursement of expenses is fair and reasonable under the applicable legal standards, in light of Class Counsel's efforts in prosecuting this case and negotiating the Settlement, as well as the contingency risks undertaken.  Consequently, Plaintiff's Application should be granted by the Court.

## ARGUMENT

**I.    Plaintiff's Request For Attorneys' Fee Is Fair And Reasonable.**

An award of attorneys' fees is within the sound discretion of the district court.  Fed. R. Civ. P. 23(h); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).  The common fund doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts.  "[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gamert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and thereby promote private enforcement of, and compliance with, federal and state laws.  Indeed, the success of lawsuits, such as the instant case, depends on the availability and willingness of attorneys to bring them.  Substantial fee awards encourage reputable law firms with skilled, capable attorneys to take the risk of serving as "private attorneys general."  *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976) (recognizing the importance of private attorneys general in the class action context to ensure "that legislative mandates be obeyed, administrative regulations respected, and constitutional guarantees observed."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) ("A class action facilitates spreading of litigation costs among numerous litigants and encourages private attorney general enforcement of statutes."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 349 (N.D. Ga. 1993) (recognizing that "in order to encourage 'private attorney general' class actions" a "financial incentive is necessary to entice qualified

4

attorneys to devote their time to complex, time-consuming cases for which they may never be paid.").

**A.      The Court May Award Fees Based On Either
         A Percentage Of The Common Fund Or Class Counsel's Lodestar.**

"In a certified class action, a district court 'may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.'"  *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quoting Fed. R. Civ. P. 23(h)).  "In exercising its discretion to award attorneys' fees, a district court generally applies one of two methods to determine a reasonable fee amount: the lodestar method, under which the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action, or the percentage of the benefit method, under which the fee amount is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation."  *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017); *see also Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)) (same). "It is within the discretion of the district court to choose which method to apply." *Huyer*, 849 F.3d at 398; *see also Jenkins v. Pech*, 2016 WL 715780, at *1 (D. Neb. Feb. 22, 2016) (holding that district courts in the Eight Circuit utilize two main approaches for analyzing a request for attorneys' fees: "(1) the 'lodestar' methodology (multiplying the hours expended by an attorneys' reasonable hourly rate of compensation to produce a fee amount that can be adjusted to reflect the individualized characteristics of a given action); and (2) the 'percentage of the benefit' approach (permitting an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the

litigation").

While it is within the court's discretion to decide which method to apply, this case is a common-fund settlement class action, and it is a "well-established rule that a district court may use the percentage-of-the-benefit method in a common-fund settlement case[.]" *In re Life Time Fitness, Inc., TCPA Litig.*, 847 F.3d at 622.  Consistently, "[t]he percentage-of-recovery methodology has been approved in common-fund settlement class action cases." *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Petrovic*, 200 F.3d at 1157.

**B.    The Requested Attorneys' Fees Are Justified Under The Percentage Method.**

Under the percentage of the benefit methodology, "to recover fees from a common fund, attorneys must demonstrate that their services were of some benefit to the fund or that they enhanced the adversarial process." *In re U.S. Bancorp* 291 F.3d at 1038 (affirming award of 36% of the common fund).

The full amount of the common fund, not just the amount sent to class members, should be considered when awarding fees based on the percentage of the fund method.  As the Eight Circuit explained in *Huyer*, when affirming an award of one third of the total common fund:

> The objectors . . . contend that the court's decision to apply that percentage to the total settlement fund rather than the net settlement fund constitutes legal error because the total settlement fund includes administrative costs, which do not constitute a benefit to the class. We disagree. We have recently addressed this exact issue and concluded that a district court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount."  . . . [W]e agreed with the reasoning of the Ninth Circuit that "where the defendant pays the justifiable cost of notice to the class[,] . . . it is reasonable (although certainly not required) to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees."

*Huyer*, 849 F.3d at 398 (8th Cir. 2017) (qoting *In re: Life Time Fitness, Inc.*, 847 F.3d 619, slip op. at 6.  Courts routinely award one third of the common fund to class counsel for attorneys' fees.  *See Meller v. Bank of the W.*, 2018 WL 5305562, at *9 (S.D. Iowa Sept. 10, 2018), *report*

*and recommendation adopted*, WL 5305556 (S.D. Iowa Oct. 1, 2018) ("An award of 33 1/3% of the maximum settlement amount is in line with other awards in the Eighth Circuit.") (citing *Huyer* 849 F.3d at 400 (finding an award of 33 1/3% of the settlement fund to be reasonable and fair); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (concluding that a district court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F.Supp.2d 1057, 1061 (D. Minn. 2010) (finding that an award of 36% of a class action settlement fund was "in line with the range of fees approved by the Eighth Circuit"); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F.Supp.2d 980, 998 (D. Minn. 2005) ("[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions.").

The services of Class Counsel clearly benefited the class and advanced the adversarial process. Class Counsel was able to negotiate a Settlement Agreement that provides Class Members with significant financial relief. Indeed, each class member who made a claim will receive on average more than the average price of power banks. In addition to monetary relief, Defendant agreed to substantially change the way it markets Power Banks with respect to capacity. Walmart agreed to identify both the rated and actual capacity of its Onn Power Banks on the packaging, so that consumers will now know the actual mAh they can expect to be able to use to charge their personal electronic devices. This language provides significant value because it informs class members of the Power Banks' true capabilities. Providing consumers with both the rated and actual capacities of the Power Banks provide an objective measure of electrical output about which there is nothing vague or unclear. The added language offers a more concrete and truthful representation of the Power Banks' capabilities and allow consumers to make an informed decision when purchasing Defendant's Power Banks. These changes make

clear to consumers that the mAh ratings are based on the internal battery contained in each Power Bank, not the mAh the Power Bank itself is capable of producing.   These changes, coupled with the non-reversionary settlement fund of $1,100,00.00, make readily apparent to all that the efforts of Class Counsel significantly benefited the Class.

Class Counsel has also actively litigated this case for the past two years, during which FBFG has, *inter alia*, drafted an initial and subsequent amended complaint; successfully briefed and argued against Defendant's motion to dismiss the lawsuit; conducted extensive discovery, including requesting and responding to document requests and interrogatories and reviewing thousands of documents produced by Defendant; defended the deposition of Dr. Hester and took Defendant's Rule 30(b)(6) deposition; and briefed a motion for class certification accompanied by two lengthy and comprehensive expert reports.   Declaration of D. Greg Blankinship ("Blankinship Decl.") ¶¶ 4-5; ECF Nos 42-46.   District courts in this district have held that this level of involvement is sufficient under the percentage of benefit methodology.   *See e.g., Ray v. Lundstrom*, 2012 WL 5458425, at *4 (D. Neb. Nov. 8, 2012) (holding that counsel's efforts "benefit[] the fund and enhance[] the recovery" where they "competently prosecuted the litigation" since filing, and "achieved a fair and reasonable settlement.").   Moreover, courts have held that counsel "confers a substantial benefit to the settlement class," when they achieve, as is the case here, a "successful recovery."   *Sharp*, 2017 WL 1373860, at *2; *Klug v Watts Regulator Co*, 2017 WL 1373857 at *2 (same).   Class Counsel zealously advocated for Plaintiffs and the Class, which resulted in a settlement fund valued at a significant amount.

Accordingly, approval of the requested attorneys' fees is warranted under the percentage of the benefit methodology.

**C.    The Requested Attorneys' Fees Are
Also Warranted Under The Lodestar Method.**

"Use of the lodestar approach is sometimes warranted to double-check the result of the percentage of the benefit method." *Huyer*, 849 F.3d at 399 (internal citations and further quotations omitted). The fee requested in this case is more than justified under the lodestar method. Class Counsel reasonably devoted in excess of 1,091.9 hours to this action. Blankinship Decl. Exhibit 2; Declaration of Randall K. Pulliam ("Pulliam Decl.") Exhibit 2. Applying Class Counsel's hourly rates to those hours yields a lodestar of $639,785.50. *Id.* Plaintiff is thus requesting a fee equal to a negative multiplier of .57.

Class Counsel's hourly rates, which range from $300 to $850, are routinely approved by courts across the country. *See, e.g.*, *Winstead v. ComplyRight, Inc.*, No. 18-04990, ECF No. 101 (N.D. Ill. Oct. 7, 2019) (approving FBFG's hourly rates); *Sackin v. TransPerfect Global, Inc.*, No. 17-01469, ECF No. 74 (S.D.N.Y. Dec. 14, 2018) (same); *Castillo v. Seagate Tech., LLC*, No. 16-01958, ECF No. 85 at *3-*4 (N.D. Cal. Mar. 14, 2018) (same); *Farruggio v. 918 James Receiver, LLC*, No. 003831/2017, ECF No. 340 (N.Y. Sup. Ct. Dec. 11, 2018) (same); *Reed v. Friendly's Ice Cream, LLC*, No. 15-298, ECF No. 105, at 6 (M.D. Pa. Jan. 31, 2017) (same).

Comparing the lodestar with the requested fee yields a negative multiplier of .57. That multiplier is more than reasonable. *See, e.g., Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (explaining that a negative multiplier "militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risks undertaken by class counsel"); *see also Knutson*, 2013 WL 2490644, at *4 (granting attorneys' fees where "the incurred fees and expenses are subject to a *negative* multiplier – roughly .70[.]") (emphasis in original); *Cirese Inv. Co. v. Qwest Commc'ns Co., LLC*, 2013 WL 12284915, at *3 (W.D. Mo.

Jan. 18, 2013) (same).

The negative multiplier is significantly lower than what courts frequently approve in Eighth Circuit and is fully justified in light of the effort undertaken, the recovery achieved, risks involved, and the efficiency with which these cases were litigated.  "[C]ases within the Eighth Circuit approv[e] multipliers of up to 5.6[.]" *Huyer*, 849 F.3d at 400 (citing *Nelson v. Wal-Mart Stores, Inc.*, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009)); *see also, e.g., In re Xcel Energy, Inc. Securities, Derivative and "ERISA" Litigation*, 364 F.Supp.2d 980, 999 (D. Minn. 2005) (multiplier of 4.7); *In re Charter Communications, Inc.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (multiplier of 5.6); *In re St. Paul Travelers Securities Litigation*, 2006 WL 1116118, at *1 (D. Minn. April 25, 2006) (multiplier of 3.9).  Similarly, courts across the country have approved significantly higher multipliers.  *See Acevedo*, *v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 383 (W.D.N.Y. 2016) (noting that "[c]ourts regularly award lodestar multipliers from two to six times lodestar") (quoting *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011); *Hernandez v. Merryl Lynch & Co. Inc,* 2013, at *9 (awarding lodestar multiplier of 3.8 and noting that "[c]ourts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers") (collecting cases).  In sum, the negative multiplier sought here is reasonable and well within the range approved in similar cases.  Thus, the lodestar analysis confirms that the requested fee is reasonable.

**D.**     **The *Johnson* Factors Favor Plaintiff's Fee Request.**

"The Eighth Circuit has not established factors that a district court must consider when awarding fees under the percentage-of-the-fund method, however, some cases have relied on the twelve-factor test from *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974)."  *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628 (S.D. Iowa 2016).  There are 12

*Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 719–20 (internal quotations omitted). "Not all of the factors apply in every case, and the Court has broad discretion to determine which factors are relevant and the weight to assign those factors." *Huyer*, 314 F.R.D. at 628; *see gen. Sharp v. Watts Regulator Co.*, 2017 WL 1373860, at *1 (D. Neb. Apr. 13, 2017); *Klug v. Watts Regulator Co.*, 2017 WL 1373857, at *1. All such factors that are applicable in this case either counsel in favor of approval or are neutral, as described herein.

### 1. Substantial Time And Labor Was Required; Class Counsel Assumed Great Risks.

Class Counsel took this case on a fully contingent basis, investing time, effort and money with no guarantee of ever getting paid. Consideration of the efforts and time expended by Class Counsel and the risk they assumed establish that the requested fee is reasonable and fair.

As noted above, since the inception of this litigation, Class Counsel have exerted substantial efforts to move this case along expeditiously. Collectively, Class Counsel have expended 1091.9 hours to litigate and resolve this dispute. Blankinship Decl. ¶ Ex. 2; Pulliam Decl. ¶ Ex. 2. All work performed by Class Counsel was necessary, performed without duplication, and successfully advanced this litigation toward Settlement. As such, the effort and time expended by Class Counsel in navigating the complex legal and factual issues presented in

this litigation supports the requested fee. *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (finding the efforts and time of counsel, among other factors, justified an award of attorneys' fee of one-third of the settlement fund).

Similarly, consideration of the contingent nature of the representation also weighs in favor of the requested fee. *Yarrington*, 697 F. Supp. 2d at 1062 ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees.") (citation omitted). Indeed, "[t]he risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel,* 364 F. Supp. 2d at 994. Bearing the full risk of no recovery at all, Class Counsel proceeded knowing that there was a chance that Plaintiff might not prevail and that, even if Plaintiff did prevail, there was a chance that the case would take years to bring to trial and would not be resolved without a lengthy appeal. Thus, the contingent nature of the representation in this action further supports the fee award requested herein. *See Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ("Class Counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.").

2.     **The Settlement Confers an Excellent Benefit on the Class.**

Many courts consider the result achieved to be the most important factor in determining whether the fee requested is reasonable. *In re Flight Transp. Corp. Sec. Litig.,* 685 F. Supp. 1092,

1095 (D. Minn. 1987) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *In re Terra-Drill P'Ships Sec. Litig.,* 733 F. Supp. 1127, 1129 (S.D. Tex. 1990).

As explained in detail above, the results achieved by Class Counsel confer a very significant benefit upon the Class. To begin with, the Settlement provides for a $1,100,000.00 common fund settlement without reversion of unclaimed funds. In addition to the substantial monetary recovery, the Settlement requires Defendant to identify both the rated and actual capacity of its Onn Power Banks on the packaging, so that consumers will know the actual mAh that they can expect to be able to use to charge their personal electronic devices. Again, this language is extremely valuable to Class Members because it proffers the Power Banks' true capabilities. Offering the rated and actual capacities of the Power Banks provide an objective measure of electrical output about which removing any ambiguity surrounding the Power Banks' capabilities. The added language offers a more concrete and truthful representation of the Power Banks' capabilities and allow consumers to make an informed decision when purchasing Defendant's Power Banks. Accordingly, Class Counsel respectfully submit that the release and remedial measures undertaken confer benefits of comparable significance to the monetary relief and therefore should be strongly considered in determining the reasonableness of the fee percentage.

**3.    The Difficulty And Novelty Of The Legal And Factual Issues, And The Significant Skill Of Experienced Counsel.**

Class actions, by nature, are inherently complex and time-consuming. *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th 1991) ("It goes without saying that class actions are very complex and represent a significant drain on the court in terms of time and management."). This case is no different.

13

The novel nature of this litigation renders Plaintiffs' case all the more challenging.  This case is among the first of its kind ever filed in the Eighth Circuit.  Prior to November 2018, no consumer had ever brought a proposed class action alleging that a defendant misrepresented the mAh capacity of its Power Banks.  Courts routinely recognize that "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery."  Lilly, v. Jamba Juice Co. 2015 WL 2062858, at *3 (approving injunctive relief settlement and quoting *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011)).  To date, no fact finder has addressed whether a reasonable consumer would be deceived by mAh representations on Power Banks, and no court has addressed whether a class should be certified under Rule 23 in any class action against a power bank manufacturer, distributor, or seller (other than in connection with proposed settlements).

Notwithstanding the complexity and difficulty of the issues involved in this case, Class Counsel was able to negotiate an excellent recovery for the Class.  Class Counsel respectfully submit that the work they performed in this litigation reflect their skill and experience in complex class litigation.

Here, it is undisputed that Class Counsel are experienced in litigating similar consumer class actions.  FBFG is a leading class action law firm whose lawyers regularly prosecute consumer claims, and its attorneys are regularly appointed as class counsel in such actions.  *See* Blankinship Decl. ¶¶ 11-15, Exhibit 1.  Indeed, FBFG has and is currently prosecuting several different actions around the country alleging similar claims premised on misrepresentations regarding the mAh capacity of Power Banks from manufacturers, distributors, and sellers of Power Banks.  *See Burgos et al v. Sunvalleytek International, Inc.*, No. 18-06910 (N.D. Cal.); *Young, et al. v. Mophie, Inc.*, No. 19-00827 (C.D. Cal.); *Mancuso v. RFA Brands*, No. 18-0687

(W.D.N.Y.); *Brady, et al. v. Anker Innovations Limited, et al.*, 18-11396; *Geske v. PNY Technologies, Inc.*, 19-05170 (N.D. Ill.). Similarly, Carney Bates & Pulliam, PLLC is also a nationally recognized law firm that has extensive experience in complex class action litigation. *See* Pulliam Decl., ECF No. 59-2 ¶ 3.

Additionally, the firm resumes of Class Counsel speak to the national reputation and extensive experience of Class Counsel in the area of complex class litigation. *See* ECF Nos. 59-1 at pp. 52–64; 59-2 at pp. 4–17. Accordingly, the quality and skill involved in the services performed by Class Counsel support the requested fees. Had Class Counsel not taken a role in this litigation, they would have been free to allocate their time and resources elsewhere. Indeed, as the total number of hours expended in this litigation demonstrates, Class Counsel fully dedicated themselves to the prosecution of this litigation.

### 4.  <u>Reaction Of The Class</u>.

To date, 41,689 Class Members submitted claims forms and not a single individual: (1) requested to be excluded from the class; or (2) filed an objection with the Court. Weisbrot Decl. ¶ 11. That there are no objections to the Settlement further illustrate that the Settlement is fair, adequate and in the best interests of the Class. That no Class Members have objected to the Settlement, and specifically the fee requests, further supports the contention that the fee-expense request is reasonable. *Knutson v. Sprint Commc'ns Co*, L.P., 2013 WL 2490644, at *4 (D.S.D. June 10, 2013) ("The notice also informed class members of their ability to object to the fee-and-expense request. No class member objected to it. The absence of objections by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

Indeed, it is well settled that the absence of objections to a proposed class settlement and request for attorneys' fees is strong evidence that the fees are fair and reasonable. *DeBoer v.*

*Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The fact that only a handful of class members objected to the settlement similarly weighs in [class counsel's] favor."); *In re Xcel Energy*, 364 F. Supp. 2d at 1002 ("[S]ilence can be read as an endorsement of the results received and the services rendered by plaintiff's counsel."); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (holding that the lack of objections to the requested fee supported its reasonableness).

     **5.**    **Comparison to Other Fee Awards in Class Action Settlements.**

As explained above, the amount in attorneys' fees sought is consistent with cases in the Eight Circuit.  *C.f. Huyer*, 849 F.3d at 399 ("Under the percentage-of-the-benefit method, the [fee] award was in line with other awards in the Eighth Circuit.  Indeed, courts have frequently awarded attorneys' fees ranging up to 36% in class action settlement."); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming attorneys' fee award of 36% in class action settlement); *In re Xcel Energy*, 364 F.Supp.2d at 998 ("[C]ourts in this circuit and this district have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions.").  Plaintiff's request for attorneys' fees and costs is also consistent with the settlement in Young v. Mophie, Inc., No. 19-827, ECF No. 96 (C.D. Cal November 5, 2020) (attached as Exhibit 4 to the Blankinship Decl.).  *Mophie* is also a class action in which the plaintiff, represented by FBFG, alleged that the defendant deceptively labelled its power banks with respect to mAh.  Judge Selna approved the settlement, awarding $325,000 in attorneys' fees and costs.  *Id.* at 12.

**II.**    **The Expenses Incurred Are Reasonable And**
        **Were Necessary To Achieve The Benefit Obtained.**

FBFG incurred $69,624.85 in expenses, and Carney Bates & Pulliam, PLLC incurred $2,286.14 in expenses, for a combined total of $71,910.99.  *See* Blankinship Decl. Exhibit 3;

Pulliam Decl. Exhibit 3.  Class Counsel's litigation expenses included, *inter alia*, the costs of travel to meet with witnesses and attend hearings and mediation, transcription fees, mailing costs, expert costs, Westlaw research charges, process server fees, and mediation fees.  *Id.*  These common and reasonable expenses were all necessary to achieve a successful result for the Class and are the type of expenses that law firms typically bill to their clients and that courts typically approve for reimbursement.  *See, e.g.*, *Acevedo*, *v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 383 (W.D.N.Y. 2016) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses."); *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (awarding $774,329.29 in expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel").  Accordingly, Plaintiffs respectfully request that this Court approve reimbursement of FBFG's expenses.  As with the requested fees, the expenses to be reimbursed are consistent with precedent within the Eighth Circuit.  *See, e.g., Nelson*, 2009 WL 2486888, at *2 (awarding reimbursement of class counsel's expenses of approximately $425,000.00).

## III.    Dr. Hester's Service Award Request Is Reasonable.

Plaintiff seeks a Service Award in the amount of $5,000.00.  "Service awards to representative plaintiffs encourage members of a class to become class representatives and reward individual efforts taken on behalf of a class."  *Sharp*, 2017 WL 1373860, at *3; *Klug*, 2017 WL 1373857, at *3 (same).  Providing service awards to plaintiffs who come forward to represent a class is a necessary and important component of any class action settlement, and accordingly, courts in the Eighth Circuit "regularly grant service awards of $10,000 or greater."

*Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017). *See also Prater v. Medicredit, Inc.*, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (approving service award of $20,000.00 to the named plaintiff); *Lees v. Anthem Ins. Companies Inc.*, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving service awards of $10,000.00 to each named plaintiff); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) (approving service award of $10,000.00 to each named plaintiff); *Bassett v. Credit Mgmt. Servs., Inc.*, 2019 WL 4262019, at *1 (D. Neb. Aug. 6, 2019), *report and recommendation adopted*, 2019 WL 4261728 (D. Neb. Sept. 9, 2019) (approving service award of $7,500.00 to the named plaintiff); *In re: Target Corp. Customer Data Security Breach Litig.*, 2016 WL 2757692, at *7 (D. Minn. May 12, 2016) (awarding $20,000.00 to each class representative).

In this lawsuit, the "named individual[ ] took very real steps to advance the interests of the Settlement Class[.]" *Klug*, 2017 WL 1373857, at *1.  Throughout the duration of the litigation, Dr. Hester actively protected the claims in the interests of the class: he responded to written discovery requests, preserved his Power Bank, and sat for a deposition.  ECF No. 59-1 at ¶ 9.  Plaintiff also demonstrated an understanding of both the basis of the claims and the role of a class representative, having participated in interviews with Class Counsel regarding his experiences with Defendant's Power Bank.  *See id.*  For his essential efforts in advancing this litigation, Dr. Hester is entitled to a Service Award.  *See Klug*, 2017 WL 1373857, at *3 (granting service award where named plaintiffs  "brought their claims to the attention of [c]lass [c]ounsel"; "searched their files and produced all of the documents they had relating to this matter"; and "gave interviews concerning their experiences regarding the products to Class Counsel").  Accordingly, the award sought in this case is reasonable.  "Service award payments are regularly made to compensate class representatives for their help to a class." *Roeser v. Best*

*Buy Co.*, 2015 WL 4094052, at *8 (D. Minn. July 7, 2015); citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716460, at *2 (D. Minn. Feb.27, 2013) (further citations omitted) (internal quotations omitted). Here, Plaintiff devoted substantial time in the oversight of, and participation in, the litigation on behalf of the Class. Consequently, the requested service award of $5,000 to Dr. Hester is fair and reasonable.

## CONCLUSION

Accordingly, for the abovementioned reasons, Plaintiffs respectfully request that the Court Plaintiff's motion and award Class Counsel $366,666.00 in fees and $69,624.85 in expenses and award the named Plaintiff a Service Award in the amount of $5,000.00.

Dated:  November 16, 2020

Respectfully submitted,

/s/ D. Greg Blankinship
D. Greg Blankinship (*pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3290
gblankinship@fbfglaw.com

Randall K. Pulliam
Joseph Henry (Hank) Bates
**CARNEY BATES & PULLIAM, PLLC**
519 West 7th Street
Little Rock, Arkansas 72201
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
rpulliam@cbplaw.com
hbates@cbplaw.com